IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| AMERICAN KITCHEN CABINET ALLIANCE,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>UNITED STATES,<br><br>　　　　　　Defendant,<br><br>　　　and<br><br>SCIOTO VALLEY WOODWORKING, INC.<br>d/b/a VALLEYWOOD CABINETRY,<br><br>　　　　　　Defendant-Intervenor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Court No. 23-00140 |

## DEFENDANT'S RESPONSE TO
## PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

OF COUNSEL:
Tamari Lagvilava
Attorney
U.S. Customs and Border Protection
Office of the Chief Counsel

s/ Ashley Akers
ASHLEY AKERS
Trial Attorney
U.S. Department of Justice, Civil Division
P.O. Box 480, Ben Franklin Station
Washington D.C. 20044
Tel: (202) 353-0521
Email: Ashley.Akers@usdoj.gov

January 22, 2024

Attorneys for Defendant

## TABLE OF CONTENTS

I.    Administrative Determination Under Review ........................................................ 2

II.   Issue Presented For Review ................................................................................... 2

STATEMENTS OF FACTS ............................................................................................. 2

I.    Commerce's Antidumping Duty and Countervailing Duty Orders........................ 2

II.   Initiation of EAPA Investigation........................................................................... 2

III.  TRLED's Final Determination Finding Evasion .................................................. 4

      A.    Affiliations With China................................................................................ 4

      B.    Evidence Of Transshipment........................................................................ 5

      C.    Reliability Of [          ] Sales Documents ................................... 6

      D.    Adverse Inferences..................................................................................... 7

IV.   R&R's De Novo Administrative Review Reversing Evasion Determination......... 8

      A.    Affiliations With China................................................................................ 9

      B.    Evidence Of Transshipment........................................................................ 9

      C.    Reliability Of [          ] Sales Documents ................................... 12

      D.    Adverse Inferences..................................................................................... 13

SUMMARY OF THE ARGUMENT ................................................................................ 13

ARGUMENT ................................................................................................................... 13

I.    Enforce And Protect Act........................................................................................ 13

II.   Standard Of Review .............................................................................................. 15

III.  R&R's Reversal Of TRLED's Determination Of Evasion Is Supported By
      Substantial Evidence And Is In Accordance With Law....................................... 16

      A.    Adverse Inferences..................................................................................... 17

            1.    Warehouse .................................................................................... 18

2. Packing Lists .................................................................... 29

3. Missing Documents ........................................................... 20

4. Verification Report .......................................................... 21

5. CBP Adequately Explained Its Decision Not To Apply Adverse Inferences ...................................................................... 24

B. Evasion Determination ................................................................ 24

1. Substantial Evidence Does Not Demonstrate That Scioto Evaded The AD/CVD Orders .................................................... 25

2. R&R Did Not Arbitrarily Credit Alno's Explanation Concerning The FPIDs Or Misinterpret Evidence Regarding These Documents ............................................................................ 27

3. R&R Reasonably Disagreed With TRLED On Alleged Discrepancies In Production Documents ...................................... 27

CONCLUSION ........................................................................................ 30

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Ad Hoc Shrimp Trade Enf't Comm. v. United States*,
    632 F. Supp. 3d 1369 (Ct. Int'l Trade 2023) ............................................................. 22

*American Pac. Plywood, Inc. & LB Wood Cambodia, Co. v. United States*,
    2023 WL 4288346 ...................................................................................................... 21

*Aspects Furniture Int'l, Inc. v. United States*,
    No. 20-03824, 2023 WL 5374441 (Ct. Int'l Trade Aug. 22, 2023) ........................... 21

*Burlington Truck Lines v. United States*,
    371 U.S. 156 (1962) .................................................................................................... 16

*Camilo v. United States*,
    642 F.3d 1040 (Fed. Cir. 2011) .................................................................................. 30

*Cleo Inc. v. United States*,
    501 F.3d 1291 (Fed. Cir. 2007) .................................................................................. 17

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ............................................................................................... passim

*Nippon Steel Corp. v. United States*,
    337 F.3d 1373 (Fed. Cir. 2003) ..................................................................... 17, 18, 19

*SKF USA Inc. v. United States*,
    263 F.3d 1369 (Fed. Cir. 2001) .................................................................................. 16

*Skyview Cabinet USA, Inc. v. United States*,
    No. 1:22-cv-00080, 2023 WL 4073781 (Ct. Int'l Trade June 20, 2023).............. 19, 20

*Star Fruits S.N.C. v. United States*,
    393 F.3d 1277 (Fed. Cir. 2005) .................................................................................. 16

*Ticaret A.S. v. United States*,
    624 F. Supp. 3d 1343 (Ct. Int'l Trade 2023) ...................................................... passim

*WelCom Prods., Inc. v. United States*,
    865 F. Supp. 2d 1340 (Ct. Int'l Trade 2012) ............................................................. 15

*Wheatland Tube Co. v. United States*,
    161 F.3d 1365 (Fed. Cir. 1998) ............................................................................ 15, 16

**Statutes**

19 U.S.C. § 1517 ................................................................................................ passim
19 U.S.C. § 1517(c)(1)(A) .................................................................... 14, 15, 17
19 U.S.C. § 1517(c)(2) ...................................................................................... 15
19 U.S.C. § 1517(c)(3)(A) ................................................................................ 17
19 U.S.C. § 1517(f) ........................................................................................... 15
19 U.S.C. § 1517(g)(1) ..................................................................................... 15
19 U.S.C. § 4371 .............................................................................................. 14

**Regulations**

19 C.F.R. § 165.21 ........................................................................................... 15
19 C.F.R. § 165.22 ........................................................................................... 15
19 C.F.R. § 165.27 ........................................................................................... 15
19 C.F.R. § 165.41(a) ...................................................................................... 15
19 C.F.R. § 165.44 ........................................................................................... 15
19 C.F.R. § 165.45 ........................................................................................... 22
19 C.F.R. § 165.46(a) ...................................................................................... 15
19 C.F.R. § 165.6 ........................................................................................ passim

**Administrative Determinations**

*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 22,126 (Dep't of Commerce Apr. 21, 2020) ............... 2

*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Countervailing Duty Order*, 85 Fed. Reg. 22,134 (Dep't of Commerce Apr. 21, 2020) ........... 2

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| AMERICAN KITCHEN CABINET ALLIANCE, | ) |
| Plaintiff, | ) |
| v. | ) Court No. 23-00140 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| SCIOTO VALLEY WOODWORKING, INC. d/b/a VALLEYWOOD CABINETRY, | ) |
| Defendant-Intervenor. | ) |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Defendant, the United States, respectfully submits this response to the motion for

judgment upon the agency record filed by plaintiff American Kitchen Cabinet Alliance (AKCA),

ECF No. 29 (AKCA Br.).  As demonstrated below, U.S. Customs and Border Protection (CBP),

specifically the Trade Remedy and Law Enforcement Directorate (TRLED), lawfully conducted

its investigation of Alno Industry SDN BHD (Alno) and its affiliated importer, Scioto Valley

Woodworking, Inc., d/n/a Valleywood Cabinetry (Scioto).  Further, the final negative

determination issued by the Office of Trade, the Regulations and Rulings Directorate (R&R), is

supported by substantial evidence and is not arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with the law.  Accordingly, we respectfully request that the Court deny AKCA's motion, and sustain CBP's final negative evasion determination.

I.   **Administrative Determination Under Review**

AKCA challenges CBP's administrative review of the final determination as to a negative finding of evasion with respect to wooden cabinets and vanities and components thereof (wooden cabinets) from the People's Republic of China (China).  Final Review Determination (June 12, 2023), Appx168260-168284, Appx03916-03940.

II.   **Issue Presented For Review**

Whether CBP's determination that Alno and Scioto did not engage in evasion is supported by substantial evidence, and is not otherwise arbitrary, capricious, or contrary to law.

## STATEMENTS OF FACTS

I.   **Commerce's Antidumping Duty and Countervailing Duty Orders**

In April 2020, following petitions by AKCA, the U.S. Department of Commerce (Commerce) issued antidumping and countervailing duty orders on wooden cabinets from China. *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 22,126 (Dep't of Commerce Apr. 21, 2020); *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Countervailing Duty Order*, 85 Fed. Reg. 22, 134 (Dep't of Commerce Apr. 21, 2020) (collectively, AD/CVD Orders).

II.   **Initiation of EAPA Investigation**

On February 3, 2022, AKCA, a coalition of domestic producers of wooden cabinets and vanities, filed an EAPA allegation against Scioto.  AKCA EAPA Allegation (Feb. 3, 2022), Appx01006.  AKCA alleged that Scioto entered wooden cabinets of Chinese origin into the United States by means of transshipment through Malaysia to evade the payment of antidumping

duties and countervailing duties on wooden cabinets from the People's Republic of China

(China).  *Id.*  In support, AKCA relied on information that it had received from a U.S. importer

and distributor, Cabinets to Go, a previous customer of Alno.  *Id.*  Alno had previously exported

wooden cabinets to Cabinets to Go, and asserted that the wooden cabinets were manufactured in

Malaysia.  However, Cabinets to Go hired its own inspectors to monitor Alno's manufacturing

capabilities in Malaysia and determined that the products Alno was shipping to the United States

were actually manufactured in China, not Malaysia.  *Id.*, Appx01007-01008.  Cabinets to Go

filed a civil lawsuit against Scioto, Alno and Qingdao Haiyan Group Co. Ltd. (Haiyan Group)[1],

which owns Alno and Scioto, in the United States.  *Id.*, Appx01008, Appx01034-01057.  During

the lawsuit, the Haiyan Group provided information that proved that shipments were produced in

China rather than in Malaysia, as represented.  *Id.*, Appx01008, Appx080008.

On March 30, 2022, TRLED initiated a formal investigation under 19 U.S.C. § 1517,

commonly referred to as the "Enforce and Protect Act" or "EAPA," to determine whether

wooden cabinets had been entered into the United States by means of evasion.  Appx080114-

Appx080117, Appx03918-03919.

On July 6, 2022, CBP issued to all parties a Notice of Initiation of the investigation,

stating that the investigation had begun on March 30, 2022, and notifying the parties that based

upon reasonable suspicion that the importer, Scioto, entered covered merchandise into the

customs territory of the United States through evasion CBP imposed interim measures on

Scioto's imports.  Appx168262-168263, Appx084051-084057, Appx03918-03919.  The entries

subject to the investigation were those entered for consumption, or withdrawn from a warehouse

for consumption, from March 9, 2021, one year before CBP's acknowledgment of receipt of the

---

[1] Haiyan Group eventually acquired Alno.

allegation, through the pendency of the investigation.  Appx168263, Appx084052.  During the

period of investigation, Scioto entered merchandise (wooden cabinets) with a declared country of

origin of Malaysia.  Appx168263.

     During the investigation, CBP issued numerous requests for information (RFI) and

supplemental RFIs to Scioto and Alno.  Appx168199-168200, Appx03733-03734.  In late

October 2022, TRLED conducted an on-site verification of Alno in Malaysia.  Appx168200,

Appx03737, Appx168203.

     On January 31, 2023, following submission written arguments from the parties, TRLED

issued its final determination of evasion.  Appx168198-168223, Appx03916-03940.

## III.  TRLED's Determination Finding Evasion

     TRLED determined that Alno has manufacturing capabilities for wooden cabinets and

vanities.  Appx03735, Appx168201.  However, TRLED determined that the cabinets and vanities

exported to Scioto were not manufactured by Alno – they were manufactured in China and

transshipped through Malaysia.  Specifically, TRLED concluded that, based on the record, there

was substantial evidence that Scioto entered merchandised covered by antidumping duty and

countervailing duty orders on wooden cabinets from China into the United States through

evasion. Appx03736-03742, Appx168203, Appx168198.

     In reaching this conclusion, TRLED's analysis focused on: (1) affiliations with China,

(2) evidence of transshipment, (3) reliability of [           ] sales documents, and

(4) adverse inferences.  Appx168201-168208, Appx03735-03741.

### A.  Affiliations With China

     In support of its evasion determination, TRLED identified Alno's and Scioto's affiliations

with China.  Appx03735-03756, Appx168201-168202.  TRLED's analysis focused on financial

arrangements that confirm Haiyan Group's control over Alno and Scioto, including discretion

over both companies' budgets. Appx168201. The record evidence also demonstrated that Alno purchases supplies from Chinese suppliers, Appx168202, and, in the past – such as when the AD/CVD Orders were implemented – Haiyan Druout exported wooden cabinets and vanities from its manufacturing plant in China to Scioto, Appx168201. The primary input for cabinets and vanities – wooden boards – came from a Chinese company [▮▮▮▮▮▮▮▮]. Appx168202. TRLED concluded that these arrangements "seem{} to indicate that Alno had a more closely linked production process with the Haiyan Group than would be expected by the ownership structure in which Scioto owned Alno until July 2022." *Id.* In sum, TRLED determined that "Alno is a Malaysian company owned and controlled by a Chinese company, is operated under Chinese management, and is supplied by Chinese suppliers." *Id.*

### B. Evidence Of Transshipment

Next, TRLED concluded that "Alno transshipped Chinese origin wooden cabinets into the United States." Appx168202. As a starting point, Alno was a known quantity for transshipment; it had admittedly engaged in a transshipment scheme with another importer, Cabinets to Go. *Id.* Alno claimed, however, that this scheme was limited to Cabinets to Go, and that it manufactured all goods shipped *to* Scioto. *Id.* TRLED determined substantial evidence demonstrated that Alno transshipped "more products than it initially admitted to in both the civil suit and in Alno's 1{supplemental request for information} Response." *Id.*

In support of this determination, TRLED cited (1) an "additional warehouse" filled with finished goods from China and Malaysia that were packaged identically and ready for shipment that Alno initially failed to disclose to CBP, Appx168202; (2) Alno's failure to differentiate the country of origin of the finished packaged cabinets and vanities, *id.*; (3) Alno's failure to verify or confirm whether merchandise exported to Scioto were produced on site in Malaysia or imported from China, due to the company's vague record-keeping, Appx168203; and

(4) documents for Scioto that were identical to the documents for [⬛⬛⬛⬛⬛] transshipped goods. *id*.

Additionally, although Alno stated that it produced products in Malaysia for all customers except [⬛⬛⬛⬛⬛], TRLED determined that record evidence cast doubt on this statement. *Id*. Specifically, TRLED inquired how Alno could distinguish between transshipped goods and other goods. *Id*. Company officials stated that the "Packing Check-List" from Haiyan Drouot would confirm this information. *Id*. Alno also stated that the Finished Product Inbound Delivery (Finished Product) sheet would "clearly state" finished products were inbound delivery. *Id*. However, TRLED determined that, taken together, these documents suggest that Alno "purchased Chinese origin cabinets and vanities and had them delivered to its 'raw materials' warehouse to be later exported to Scioto in a transshipping scheme." Appx168205.

### C.   Reliability Of [⬛⬛⬛⬛⬛] Sales Documents

In reaching the evasion determination, TRLED determined that [⬛⬛⬛⬛⬛] sales documents were not reliable. In support, TRLED explained that Alno submitted to CBP "inaccurate information and documents filled with discrepancies," as well as information that is unreliable. Appx168205. For example, TRLED identified significant variation in the unit prices between [⬛⬛⬛⬛] and Alno and determined that the prices did not reflect market prices and fluctuated depending on whichever company needed more funds. *Id*. Alno justified the variation between raw materials purchased from [⬛⬛⬛⬛] and other suppliers by explaining that pricing depends on the "product mix in the container." C.R. 246 at 8. TRLED rejected this explanation, because there was no way to tell the product mix in the container was actually for [⬛⬛⬛⬛] shipments. *Id*.

TRLED also relied on [⬛⬛⬛⬛] vague invoice descriptions to support its determination that the sales documents were not reliable. TRLED could not confirm the contents

of purchases based solely on commercial invoices, packing lists, bills of lading, and the like, and thus could not determine which shipments contained transshipped goods.  Appx168206.  TRLED explained that "inconsistent ways of documenting invoice quantities, coupled with vague invoice and packing list descriptions," indicated that Alno attempted to withhold information in the investigation.  *Id*.

TRLED identified other discrepancies based on products. For example, despite references to "glass doors" on invoices to [████████████], TRLED did not find glass listed on [████████████] invoices, Appx168206, there was no record for how much glass Alno ordered, Appx168207, the glass was not separately identified on invoices, and invoices incorrectly listed it as [████████████], *id*.  Because of this discrepancy, CBP concluded that Alno was "willing to omit or obfuscate important information in paperwork," which cast doubt on the reliability of the supplier's documents with regard to the determination of transshipment. Appx168207.

### D.   Adverse Inferences

TRLED explained that, pursuant to 19 C.F.R. § 165.6 (and 19 U.S.C. § 1517(c)(e)), CBP may apply an adverse inference if the party to the investigation that filed an allegation, the importer, or the foreign producer or exporter of the covered merchandise fails to cooperate and comply to the best of its ability with a request for information made by CBP.  Appx168208.

TRLED found that Alno failed to cooperate to the best of its ability to comply with TRLED's request for information during the on-site verification of Alno's facilities in Malaysia and applied adverse inferences against Alno, the alleged manufacturer of the wooden cabinets at issue.  Appx168208, Appx03742-03744.  In doing so, TRLED determined that Alno "failed to act to the best of its ability in this EAPA investigation" and, as such, CBP could not rely on the records that Alno kept in the ordinary business.  Appx168208. In drawing adverse inferences

from the information on the administrative record, TRLED determined that *all* cabinets and

vanities exported to the United States to Scioto are manufactured in China. *Id*.  TRLED issued its

determination of evasion on January 31, 2023.

## IV.    R&R's *De Novo* Administrative Review Reversing Evasion Determination

On March 15, 2023, Scioto requested *de novo* administrative review of the TRLED

Affirmative Determination.  Appx03919, Appx168263.  In its request, Scioto argued that it did

not enter covered merchandise into the United States through evasion, because the wooden

cabinets it imported during the period of investigation were manufactured in Malaysia by Alno,

instead of being manufactured in China.  Appx168264.  Scioto argued that TRLED's

determination was arbitrary and capricious because (1) the administrative record demonstrates

that it did not engage in evasion and CBP should have examined Cabinets to Go and commenced

an EAPA investigation against Cabinets to Go; (2) the documentary evidence, including

production tracking inspection reports, demonstrate that the wooden cabinets that Scioto entered

was manufactured in Malaysia; (3) the TRLED determination proves that Alno can produce the

merchandise in Malaysia; (4) the TRLED determination is based on a misunderstanding of

company documents, including Finished Product sheets; (5) TRLED's concerns with

documentation were immaterial to the issue of evasion; (6) adverse inferences were not justified

because Alno cooperated to the best of its ability in responding to CBP; and, finally (7)  CBP's

failure to provide parties with access to confidential record information violated Scioto's due

process rights.  Appx168264-168266; *see also* Appx168240- Appx168258.

R&R reversed TRLED's determination and found that there was not substantial evidence

of evasion.  Appx168269.  Specifically, R&R explained that there was "extensive

documentation" of raw materials at Alno's warehouse in Malaysia and Alno's ability to produce,

and production of, wooden cabinets from those raw materials.  *Id*.  R&R concluded that the

record contained substantial evidence linking Alno's production records to Scioto's entries into the United States.  *Id.*  In reversing TRLED's determination, R&R addressed each of the categories of information that TRLED relied upon to support its finding of evasion.

### A.  Affiliations With China

R&R determined that evidence of common ownership by a Chinese national did not necessarily prove that the goods associated with the entries were produced in China rather than Malaysia.  Appx168277.  R&R explained that the Chinese company did own a factory in Malaysia, which CBP visited, and which was capable of producing wooden cabinets.  *Id.*  Thus, R&R determined that evidence of close affiliations with China does "not justify a conclusion of transshipment."  *Id.*

### B.  Evidence Of Transshipment

R&R concluded that Scioto and Alno provided "substantial documentary evidence to support a conclusion that the wooden cabinets Scioto imported into the United States was manufactured by Alno in Malaysia," which was supported by CBP's ability to corroborate Alno's production capabilities during the verification in Malaysia.  Appx168276.

R&R explained that TRLED disregarded record evidence supporting a conclusion that the merchandise was manufactured in Malaysia.  For example, TRLED's Affirmative Determination made "{n}o mention" of production tracking inspection reports or production schedules submitted by Alno, both of which support that Alno produced the wooden cabinets in Malaysia. Appx168273.  R&R extensively analyzed this record evidence, which demonstrated that Alno "*did* produce the wooden cabinets at issue in Malaysia."  Appx168272 (emphasis in original). For example, R&R explained that the batch number listed on Alno's Finished Product sheet matches the batch number listed on Alno's production tracking inspection sheets and the batch number listed in the production batch lot checklist for Alno's factory in Malaysia.  Appx168273.

9

The production batch checklists link the production batch number to a Scioto purchase order number and a line item on an entry number.  *Id.*  The production batch number from the production batch checklists also matches the batch number on the production schedule, which links a batch number to Scioto's purchase order numbers.  *Id*.  R&R determined that, taken together, this information supports the conclusion that Alno produced the wooden cabinets in Malaysia.  *Id*.

R&R considered AKCA's argument that these production tracking documents could have been forged, but concluded that this allegation, without support, is not a proper basis for dismissing the evidence contained in the record, particularly when there was no indication of which production documents were allegedly forged or altered, or how CBP or AKCA can discern which production documents were forged or altered.  *Id*.

R&R also determined that the TRLED determination contained certain statements at odds with the verification report.  Appx168274.  For example, TRLED's determination provides that Alno's company officials stated the Finished Product sheet is used when purchased goods are checked in, implying that "purchased goods . . . meant 'finished cabinets and vanities . . . having been purchased by Alno from [███████]." Appx168274 (citing Appx168204).  However, R&R concluded that this interpretation was inconsistent with information in the verification report and Alno's RFI responses, both of which showed that Finished Products are generated whenever a finished good, whether purchased or produced by Alno, enters the finished goods warehouse.  Appx168274-168275.  The inclusion of production batch numbers would indicate that the goods were manufactured in production batches in Malaysia.   Appx168275.

R&R also disagreed with TRLED's conclusion that Alno admitted that it purchased transshipped finished goods (wooden cabinets) from China and sent them to Scioto; R&R

determined that neither the verification report nor Alno's RFI response supports such a conclusion.  Appx168275.  R&R credited Alno's explanation that Finished Products are generated whenever a finished good enters the finished goods warehouse regardless of whether the goods were purchased or were produced by Alno.  *Id*.  R&R determined that the "inclusion or absence of production batch numbers would differentiate transshipped goods to [███████████] versus non-transshipped goods to Scioto, manufactured in production batches in Malaysia."  *Id*.

R&R determined that Alno tracked inventory after completing the production process, which meant that it did track inventory movements for finished goods, even if it did not track during the production process.  Appx168276.  Regarding the undisclosed warehouse, R&R credited Alno's explanation that it was initially confused about the question and, when Alno realized that CBP sought information about the warehouse, Alno provided it.  Appx168271.  Specifically, an Alno employee represented that Alno did not "own any other land in the area," which R&R determined to be true.  *Id.*  Although Alno did not initially disclose that it rented another facility, R&R determined that, on balance, the facts did not demonstrate that this confusion indicated that Alno did not act to the best of its ability.  *Id.*

Regarding the missing packing checklists, R&R determined that, although Alno initially failed to provide certain documents, it eventually provided those documents to CBP "unsolicited" and, therefore, acted to the best of its ability.  Appx168271.

Regarding the missing emails, R&R determined that there is insufficient evidence in the verification report or otherwise regarding the veracity of claims that Alno could not produce emails because of "server issues."  Appx168272.  R&R determined the issue was "unresolved." *Id.*  Thus, R&R did not draw any conclusion on this point.  *Id.*  The emails that were provided from the parent company were not included in the record and R&R could not review them.  *Id.*

Thus, on balance, R&R concluded that the evidence was sufficient to call into question the reliability of emails and attachments so as not to rely on them, but insufficient to warrant adverse inferences.  *Id.*

Finally, R&R determined that "the record is devoid of any evidence of shipments in the form of finished wooden cabinets from China to Malaysia, in terms of Malaysian import records, and then to the United States, to Scioto, in terms of U.S. import records."  Appx168276.  Thus, R&R determined that there was an absence of evidence of any shipments of Chinese-origin wooden cabinets covered by the Orders and transshipped to Scioto.  *Id.*

**C.    Reliability Of [███████████] Sales Documents**

R&R addressed each of the arguments raised by AKCA and found in the TRLED determination.  For example, R&R determined that, although discrepancies in sales prices of raw materials "raise{} questions," this did not establish that these raw materials were produced in China.  Appx168278.  On that note, R&R posits that the increase or decrease in sales price is likely a mechanism to transfer money between companies since Alno owes a substantial amount of money to Haiyan Group.  *Id.*

As it relates to other inconsistencies noted by TRLED, such as vague invoice descriptions, and discrepancies in terms of unit transfer prices, R&R determined that – without more – those issues were insufficient to demonstrate transshipment.  Appx168279.

**D.    Adverse Inferences**

Based on the totality of the record, R&R determined that TRLED's application of adverse inferences was not based on substantial evidence.  Specifically, R&R explained that, while Alno and Scioto did not act "perfectly," in responding to requests for information, a review of the record as a whole demonstrates that they cooperated and complied with requests to an extent that

adverse inferences were not warranted; "this is especially so given there is record evidence that the information request was ultimately provided to CBP."  Appx168270.

Therefore, R&R determined that the use of adverse inferences against Alno and Scioto was not supported by substantial evidence.  Appx168272.

* * *

Based upon its *de novo* review of the administrative record, R&R reversed the evasion determination.  Appx168283.

This action followed.

## SUMMARY OF THE ARGUMENT

CBP lawfully concluded that Alno was not evading antidumping and countervailing duties.  Substantial evidence supports CBP's determination that Alno cooperated to the best of its ability during the investigation.  Thus, CBP acted well within its authority when it determined that it was inappropriate to apply adverse inferences.

Moreover, it was not arbitrary and capricious for CBP to determine that Alno has the capability to, and likely did, produce subject merchandise in Malaysia.  CBP weighed all the record evidence—that both supports and detracts from its determination—and made a reasoned judgment based on such.  AKCA's arguments are nothing more than a disagreement with the weight of the evidence.

## ARGUMENT

### I.   Enforce And Protect Act

To help ensure a level playing field for domestic industries, the Enforce and Protect Act (EAPA), codified at 19 U.S.C. § 1517, established a new CBP administrative procedure for investigating allegations of evasion of antidumping and countervailing duty orders.  Under

EAPA, Federal agencies or interested parties—including domestic and foreign manufacturers, producers, exporters; certified unions or recognized unions or groups of workers; trade or business associations in a particular industry—may submit allegations to CBP that reasonably suggest that merchandise covered by an AD/CVD order has entered the United States through evasion.  Upon receiving an allegation, the statute mandates a formal investigation process. CBP's regulations implement the statutory requirements and set forth additional procedures in furtherance of the agency's EAPA mandate.

EAPA requires that CBP shall:

> Make a determination, based on substantial evidence, with respect to whether such covered merchandise was entered into the customs territory of the United States through evasion.

19 U.S.C. § 1517(c)(1)(A).

"Covered merchandise" is defined as merchandise which is subject to an antidumping or countervailing duty order.  *Id.* at § 1517(a)(3).  Evasion is statutorily defined as:

> Entering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

*Id.* § 1517(a)(5)(A).

In making its determination, if CBP decides that a party has not cooperated by failing to act to the best of the party's ability regarding a request for information, CBP may use an inference, selected from the facts available, adverse to that party.  *Id.* § 1517(c)(A)(3); *see also* 19 C.F.R. § 165.6.

Two CBP, Office of Trade, offices are involved in EAPA determinations.  19 U.S.C. § 4371 creates the TRLED, which directs enforcement activities concerning evasion.  *Id.*

§ 4371(a)(3)(A)-(E).  Customs regulations specify that CBP will decide based on substantial evidence whether covered merchandise was entered into the United States through evasion, 19 C.F.R. § 165.27, and that requests for administrative review of the initial determination of evasion shall be made to the Regulations and Rulings Directorate, *id.* § 165.41(a).  R&R's decision is final unless appealed to this Court. *Id.* § 165.46(a).

Finally, CBP maintains an administrative record of material obtained and considered during the investigation.  *See* 19 U.S.C. § 1517(c)(2); 19 C.F.R. § 165.21.  No later than 300 calendar days after the initiation of the investigation, CBP is normally required to decide whether substantial evidence of evasion exists based on the administrative record.  *See* 19 U.S.C. § 1517(c)(1)(A); 19 C.F.R. § 165.22.  Interested parties may request reviews of initial determinations, and CBP must complete its administrative review and issue final administrative determinations no later than 60 days after each request.  *See* 19 U.S.C. § 1517(f); *see* 19 C.F.R. § 165.44 (explaining R&R's *de novo* review of TRLED's initial determination).  EAPA permits for judicial review in this Court of CBP's final administrative determination and the original determination as to evasion.  19 U.S.C. § 1517(g)(1).

## II.   <u>Standard Of Review</u>

In reviewing CBP's evasion determinations, this Court determines whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  *Id.* § 1517(g)(2).  "Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion."  *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).  "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial

evidence, or represent an unreasonable judgment in weighing relevant factors." *WelCom Prods., Inc. v. United States*, 865 F. Supp. 2d 1340, 1341 (Ct. Int'l Trade 2012) (citing *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)). "An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001). The scope of the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). CBP "must examine the relevant data and articulate a satisfactory explanation for its action{}, including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). "Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).

III.    **R&R's Reversal Of TRLED's Determination Of Evasion Is Supported By Substantial Evidence And Is In Accordance With Law**

R&R's reversal of TRLED's determination of evasion is supported by substantial evidence and in accordance with law. After a fulsome analysis, R&R determined that the record evidence as a whole established that Alno has the capability to, and likely did, produce the wooden cabinets in Malaysia. Thus, R&R determined that there was not substantial evidence of evasion.

AKCA's assertions to the contrary amount to nothing more than disagreement with how CBP weighed and considered relevant evidence. But the "substantial evidence" standard does not mean, as AKCA appears to assert, that CBP must establish that no other conclusion could possibly be drawn from the record. Rather, "substantial evidence" requires only that an agency

enunciate a rational connection between the facts found and the choice made." *Motor Vehicles*, 463 U.S. at 43.  That another conclusion could be rationally drawn from the record evidence, as AKCA tries so very hard to demonstrate, is not sufficient to defeat an agency's determination. *Id.*; *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) ("The substantial evidence test . . . does not require that there be an absence of evidence detracting from the agency's conclusion, nor is there an absence of substantial evidence simply because the reviewing court would have reached a different conclusion based on the same record.").  AKCA's arguments are without merit, as we explain below.

 A. <u>Adverse Inferences</u>

 With respect to adverse inferences, while CBP must base its evasion determination on substantial evidence pursuant to 19 U.S.C. § 1517(c)(1)(A), CBP may "use an inference that is adverse to the interests of" the person alleged to have engaged in evasion or "a person that is a foreign producer or exporter" of the covered merchandise when "selecting from among the facts otherwise available" if that person "failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information."  19 U.S.C. § 1517(c)(3)(A).  An adverse inference "may include reliance on information derived from . . . (i) the allegation of evasion . . . ; (ii) a determination by {CBP} in another investigation, proceeding, or other action regarding evasion of the unfair trade laws; or (iii) any other available information." *Id.* § 1517(c)(3)(C).

 Using antidumping and countervailing duties case law as a guidepost with respect to application of adverse inferences, the Court of Appeals for the Federal Circuit has held that, "{b}efore making an adverse inference, Commerce must examine respondent's actions and assess the extent of respondent's abilities, efforts, and cooperation in responding to Commerce's

requests for information." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  "An adverse inference may not be drawn merely from a failure to respond, but only under circumstances in which it is reasonable for Commerce to expect that more forthcoming responses should have been made; *i.e.*, under circumstances in which it is reasonable to conclude that less than full cooperation has been shown." *Id.* at 1383.  Even so, "{w}hile the standard does not require perfection and recognizes that mistakes sometimes occur, it does not condone inattentiveness, carelessness, or inadequate record keeping." *Id.* at 1382.

Here, in its decision reversing TRLED's finding of evasion, R&R identified the bases upon which TRLED applied adverse inferences.  For example, R&R acknowledged that Alno did not initially disclose "an additional warehouse" in response to CBP's question, Appx168270; that Alno failed to provide "missing packing checklists," Appx168271; and that CBP was "unsure" whether missing emails provided to CBP at verification were original, Appx168271. R&R considered each of these circumstances, and ultimately concluded that the record "examined as a whole" supports a conclusion that Alno "cooperated and complied with requests for information made by CBP such that application of a wholesale adverse inference to Scioto is not justified."  Appx168270.

### 1.    <u>Warehouse</u>

In its brief, AKCA first argues that Alno's failure to disclose an additional warehouse supports a finding that Alno failed to cooperate because, even assuming this failure resulted from Alno's misunderstanding of CBP's questions or an ambiguity in CBP's questions, those reasons are inexcusable because it is Alno's responsibility to clarify CBP's questions.  AKCA Br. at 18-20.  AKCA ignores that R&R considered and rejected these arguments.  Specifically, CBP acknowledges that Alno claimed it misunderstood the question, considered the facts surrounding

that confusion, and determined that Alno provided information that was both "technically correct and accurate." Appx168271. After acknowledging the inconsistency in the response, R&R determined, "on balance," that the facts did not support a conclusion that Alno did not act to the best of its ability to comply with a request for information. *Id.*

AKCA also contends that R&R's findings are contradicted by the plain text of the verification report, which makes clear that Alno's failure to disclose the additional warehouse full of Chinese merchandise was not a simple misunderstanding. AKCA Br. at 16-17. Yet AKCA's argument again ignores R&R's fulsome discussion. R&R acknowledged that "Alno did not initially disclose an additional warehouse." Appx168270. The distinction here is that R&R concluded that the acknowledged error was not nefarious and did not amount to warranting an adverse inference, as it has the discretion to do. AKCA simply wishes that CBP weighed the evidence differently, but that is not a basis for overturning CBP's decision.

### 2. Packing Lists

Second, AKCA argues that Alno's failure to timely disclose "Packing Check-Lists" demonstrates that Alno did not cooperate to the best of its ability. AKCA Br. at 20-21. AKCA focuses on the fact that R&R does not hold Alno accountable for providing these documents late. *Id.* at 21. AKCA argues that the "best of its ability" standard requires prompt, careful, and comprehensive investigations of all relevant records, and Alno did not live up to this standard. *Id.* at 22. AKCA also compares the facts of this investigation to another EAPA investigation where CBP did apply an adverse inference after foreign manufacturers failed to respond to requests for information despite multiple opportunities to do so. *Id.* (citing *Skyview Cabinet USA, Inc. v. United States*, No. 1:22-cv-00080, 2023 WL 4073781, at *8 (Ct. Int'l Trade June 20, 2023)). Finally, AKCA argues that R&R failed to "explain why it excused Alno's failure." *Id.*

Again, AKCA's arguments here are nothing more than a disagreement with the weight of the evidence. As an initial matter, it is plainly false that R&R did not provide an explanation for its determination. R&R recited the relevant facts and reached a reasoned determination. Specifically, R&R explained that "during the on-site visit, company officials and Alno's counsel attempted to provide the missing {Packing Check-Lists}, unsolicited, at a time when CBP officials were focusing on obtaining other documents (commercial invoices and bills of lading)." Appx168271. R&R acknowledged that Alno "did not act perfectly, in that there were delays" in providing the documents. *Id.* However, the documents were ultimately produced, and done so unsolicited. *Id.* AKCA cites no authority to support its contention that *perfection* is required during an investigation. And here, the facts are markedly different than in *Skyview Cabinet*, where the foreign manufacturer *never* turned over requested information. *Skyview*, 2023 WL 4073781, at *8. R&R sufficiently explained why it excused Alno's "failure" – because it was not a failure to provide the documents, it was simply a delay.

### 3.    <u>Missing Documents</u>

Third, AKCA argues that CBP did not properly take into account missing emails from Alno's computer system in determining whether Alno had cooperated to the best of its ability. AKCA Br. at 23. AKCA suggests that these missing emails evinced a failure on Alno's part to cooperate to the best of its ability sufficient to warrant the application of adverse inferences. *Id.* AKCA criticizes R&R's decision to accept Alno's explanation that there were "server issues" that led to the deletion of emails. *Id.* AKCA argues that, as an importer, Alno had an obligation to "maintain full and complete records," and its failure to do so established its failure to cooperate to the best of its ability. *Id.* at 23-24. In support, AKCA argues that this Court has previously upheld the application of adverse inferences where evidence was destroyed. *Id.* at 24

(citing *Aspects Furniture Int'l, Inc. v. United States*, No. 20-03824, 2023 WL 5374441, at *5 (Ct. Int'l Trade Aug. 22, 2023)).

This argument is lacking. Just because CBP *can* apply adverse inferences, does not mean it *must* – especially in a case like here, where there is no evidence of document destruction on the administrative record. After analyzing the relevant facts on the record, R&R concluded that there was "insufficient evidence" in the verification report or record regarding the veracity of the claims made concerning server issues; the matter "was unresolved" and thus it was "difficult to draw any conclusions on this point." Appx168272. R&R acknowledged that some evidence on the record calls into question the reliability of certain emails provided to CBP. *Id.* But, when viewed as a whole, R&R determined that the record was insufficient "to draw a wholesale adverse inference against Scioto for all of its imports." *Id.* Indeed, R&R's comprehensive consideration of the evidence – that both supported and detracted from its finding – is consistent with its obligations under the statute. And, contrary to AKCA's argument, the question is "not what the agency found any one piece of the evidence to show, but what the agency found the totality of the evidence to show." *American Pac. Plywood, Inc. & LB Wood Cambodia, Co. v. United States*, 2023 WL 4288346, Case No. 20-03914 at *13 n.14 (Ct. Int'l Trade June 22, 2023).

### 4.   <u>Verification Report</u>

Next, AKCA argues that R&R "erroneously failed to credit TRLED's findings" based on the team's observations during verification. AKCA Br. at 24. AKCA contends that R&R's Final Determination was arbitrary and capricious, an abuse of discretion, and not in accordance with law, because R&R should not be able to disagree with or "reverse" TRLED's findings at

verification when those findings are based in part on the personal observations of the TRLED team members. *Id.* at 26-27.

As an initial matter, R&R reviews the evasion determination *de novo*, and thus any suggestion that R&R did not properly cite or consider TRLED's final determination should be rejected. 19 C.F.R. § 165.45. In its review of TRLED's determination, R&R does not simply defer to TRLED's review of the evidence absent error, nor does the process contemplate R&R's "credit{ing}" of TRLED's findings, as AKCA suggests. AKCA Br. at 24. Rather, both TRLED and R&R review the same record and make a determination based on the evidence gathered in the EAPA investigation. While they often align, there are certainly cases where they do not. Indeed, R&R's contrary interpretation of the investigative record has been found by this Court to be the interpretation most supported by the same evidence. *See, e.g., Ad Hoc Shrimp Trade Enf't Comm. v. United States*, 632 F. Supp. 3d 1369, 1383 (Ct. Int'l Trade 2023) (sustaining R&R's remand results as supported by substantial evidence even when conflicting with TRLED's assessment of the facts on the record). Here, R&R made no credibility evaluation or value judgment as to TRLED's determination or its process in reaching that determination; R&R simply disagreed with TRLED's analysis of the of the evidence and ultimate conclusion as to evasion.

Next, the suggestion that R&R completely ignored the verification report is plainly false. R&R cited to the verification report throughout its Final Determination. *See* Appx168271 (citing Verification Report with regard to argument on the "undisclosed" warehouse); *id.* (citing "on-site visit" with regard to the packing checklists); Appx168271-168272 (referencing the verification with regard to the "missing emails"); Appx168274 (citing the verification report and facts that occurred at verification as it relates to the Finished Product issue); Appx168275-168276

(referencing information provided during verification with regard to tracking inventory movement); Appx168276 (referencing the verification to support determination regarding Alno's production capabilities); Appx168277-168278 (relying on the verification report to support determination that raw material records, machinery, and packaging operations are direct evidence of production of wooden cabinets in Malaysia); Appx168278-168279 (referencing the verification report numerous times as it relates to manufacturing capabilities); Appx168279-168280 (citing exhibits to the verification report to analyze potential evidence of evasion); and Appx168281 (referencing verification report as it relates to employee records).

Moreover, AKCA conflates the verification process and the decision to apply adverse inferences. The purposes of verification were for CBP to validate the information and data submitted by the parties and to allow the parties to fully explain their record responses. Appx168210-168211. Those findings become part of the administrative record and are considered by R&R, as explained above. R&R reviews the record as a whole – including, but not limited to – the information gathered during verification, to determine whether a party cooperated to the best of its ability. Even if CBP had determined at verification that pieces of evidence were not verifiable, that is not the same as a determination to apply adverse inferences.

As a result, R&R properly determined that it was inappropriate to apply adverse inferences against Scioto because the record as a whole "supports a conclusion that {Scioto and Alno} cooperated and complied with requests for information made by CBP such that the application of a wholesale adverse inference to Scioto is not justified." Appx168270.

**5.    CBP Adequately Explained Its Decision Not To Apply Adverse Inferences**

AKCA's argument that a remand is warranted to require CBP to explain its decision not to apply an adverse inference lacks merit. AKCA Br. at 28. Relying on *Assan Aluminyum*

*Sanayi ve Ticaret A.S. v. United States*, 624 F. Supp. 3d 1343, 1376-1378 (Ct. Int'l Trade 2023),

AKCA incorrectly suggests that R&R failed to support its finding that Alno cooperated to the

best of its ability and failed to review evidence that detracted from its finding. *Id.* As discussed

above, however, R&R examined the record as a whole and fully explained its decision not to

apply an adverse inference. Appx168270-168272. AKCA's reliance on *Assan* is misplaced

because *Assan* is readily distinguishable. In *Assan*, the Court found that Commerce's decision

not to apply an adverse inference based on the affirmative factual finding that the respondent had

cooperated to the best of its ability was legally deficient because Commerce provided no

"reasonably discernable" rationale for such a finding. 624 F. Supp. 3d at 1376-1377. The Court

acknowledged that "Commerce <u>could</u> have declined to apply adverse facts available <u>even if</u> it

had affirmatively found that Assan failed to act to the best of its ability." *Id.* at 1377 (emphasis

in original). However, the Court remanded the case to Commerce because the Court was unable

to reasonably discern whether Commerce's determination was supported by substantial evidence

based on Commerce's failure to provide sufficient explanation. *Id.*

Here, on the other hand, CBP's determination is supported by provided ample discussion

and analysis. CBP addressed various "failures" alleged by TRLED, summarized the parties'

positions on each issue, and fully analyzed whether those issues – in isolation and as a whole –

supported the application of adverse inferences.

### B.     Evasion Determination

Finally, R&R's determination that there was no evasion is supported by substantial

evidence and otherwise in accordance with law.

AKCA argues that the Court should remand this case to CBP because the record includes

"substantial evidence" of evasion, including: (1) close connections with China, AKCA Br. At 29-

30; (2) conclusive evidence that Alno transshipped to Cabinets to Go, *id.* at 30; (3) evidence that Alno forgot to inform CBP about an "additional warehouse," *id.*; (4) that Alno did not provide Finished Product sheets during verification (even though Alno provided them in its RFI responses), *id.* at 30; and (5) that Alno submitted documents with discrepancies, *id.* at 32. AKCA argues that it is "absurd" that, despite this evidence, R&R concluded there was no evidence of evasion.  *Id.*

Contrary to AKCA's arguments, none of the issues that AKCA cites are conclusive evidence of transshipment.  In fact, it would require inference upon inference for CBP to find evasion on this record.  For example, the fact that Alno previously admitted to transshipping to another company does not "prove" that Alno transshipped here.  Nor is it dispositive that Alno has close connections with China.  Although CBP may make reasonable inferences, it is not, as AKCA appears to suggest, required to make such inferences under the facts of this case.

### 1. Substantial Evidence Does Not Demonstrate That Scioto Evaded The AD/CVD Orders

As the R&R thoroughly discussed, Alno had the factory, raw materials, machinery, and the workforce necessary to produce the wooden cabinets in Malaysia.  Appx168269, Appx168272, Appx168277-168279, Appx168281.  Alno had production documentation that linked specific production batch records from Alno's factory in Malaysia to specific purchase orders, commercial invoices, and entry numbers for the wooden cabinets that Scioto imported. Appx168273. Moreover, Alno's packaging operations provided additional evidence that Alno produced the wooden cabinets in Malaysia.  Appx168278.

As explained above, the fatal flaw in AKCA's argument is that the dispute is nothing more than a disagreement about the weight of the evidence.  AKCA fails to identify any error in R&R's final determination.  Indeed, R&R addressed each piece of evidence relied upon by

AKCA and, after analyzing this evidence, R&R concluded based on the totality of the record that there was no evidence of transshipment.

Moreover, R&R addressed the purported "close connections" with China.  R&R determined that evidence of common ownership by a Chinese national did not necessarily prove that the goods associated with the entries were produced in China rather than Malaysia. Appx168277.  R&R explained that the Chinese company did own a factory in Malaysia, which CBP visited, and which was capable of producing wooden cabinets.  *Id*.  Thus, R&R determined that evidence of close affiliations with China does "not justify a conclusion of transshipment." *Id*.

AKCA cites R&R's Final Review Determination in one unrelated, distinguishable case, EAPA Case Number 7348, to support its position that R&R's determination in this case was arbitrary.  AKCA Br. at 33-34.  In that case (EAPA 7348), R&R determined that the manufacturer *could not* have produced all of the goods it exported to the United States, and thus the strong ties the manufacturer had to China (among other factors) were relevant to explain the gaps between production and imports.  *Id.*  In this case, R&R did not have the same concerns about production and import gaps based off its review of the record, so the "close connections" to China did not warrant the same conclusion as it reached in EAPA 7348.  Appx168276-168277.  This reasoned distinction is the opposite of arbitrary.

R&R also addressed the evidence of transshipment to Cabinets to Go.  Specifically, R&R explained that there was not an EAPA investigation conducted as to Cabinets to Go, and thus no determination was made as to Cabinets to Go's imports, because "{t}he issue of whether Cabinets to Go engaged in evasion is not properly before us, . . .{n}or are facts related to Cabinets to Go's conduct and transactions relevant to our decision as to whether Scioto engaged

in evasion."  Appx168270.  Thus, although R&R acknowledged this other instance of

transshipment from Alno to [██████], R&R did not make – on this record – a similar

finding with regard to Scioto.

Moreover, as explained above and furthermore below, R&R comprehensively addressed

the "additional warehouse," Finished Product sheets, and other documents.  Appx168271-

Appx168276.

    **2.**  **R&R Did Not Arbitrarily Credit Alno's Explanation Concerning The Finished Products Or Misinterpret Evidence Regarding These Documents**

AKCA takes issue with R&R crediting Alno's explanation that Finished Products are

generated whenever a finished good enters the finished goods warehouse regardless of whether

the goods were purchased or were produced by Alno.  AKCA Br. at 35-39.  In essence, AKCA

asks this Court to accept TRLED's dismissal of the Finished Product sheets based on the view

that they are only for occasions when Alno purchased finished goods from China.  R&R,

however, thoroughly explained why the TRLED's determination that Finished Product sheets are

only for finished purchased goods from China is at odds with the verification report and Alno's

RFI responses.  Appx168273-168276.  As R&R detailed, the Finished Product sheets R&R

reviewed showed production details like batch numbers for wooden cabinets manufactured in

Malaysia and destined to Scioto, while the transshipped wooden cabinets destined to [██████

█] were missing such details.  Appx168275-168276. Accordingly, AKCA's arguments amount

to nothing but mere disagreement with the R&R's interpretation and weighing of that evidence.

    **3.**  **R&R Reasonably Disagreed With TRLED On Alleged Discrepancies In Production Documents**

AKCA argues that R&R erred when it found Alno's production documents to be reliable

given the several discrepancies that TRLED found with those documents.  AKCA Br. at 40.

AKCA enumerates four alleged discrepancies in Alno's documentation and argues that "R&R failed to address most of these discrepancies, and for the few that it did address, it made unreasonable conclusions." *Id.* at 40-44. AKCA is wrong.

First, R&R did address the alleged discrepancy in the unit transfer prices between [███████████] and Alno. Appx168278-168279. R&R noted that the difference in sales prices of raw materials (birch and hickory) does raise some questions, but Alno's Chief Accountant indicated that the difference was normal based on the volume: "The smaller the size boards, the bigger the quantity they can order and better price they can receive." Appx168278 (quoting Appx03610). There was no allegation nor any evidence in the record that prices on the importation-related documents that were submitted to CBP for Scioto's entries were inaccurate or false such that a finding of evasion could be made based on false valuation. Appx168279. Additionally, and more importantly, R&R explained that the difference in prices did not establish that these raw materials were actually finished products manufactured in China, which link to a specific entry of wooden cabinets imported by Scioto. Appx168278. Rather, as TRLED had noted, Alno owed money to the Haiyan Group, so R&R reasonably considered that the increase or decrease in sales price is likely a mechanism to transfer money between related companies to make up for debts owed between them. *Id.* (citing Appx03735-03736, Appx166049).

Furthermore, as R&R explained, regardless of the listed prices, the documentation showed sales of raw materials from [███████████] to Alno in Malaysia, which supports a conclusion that Alno manufactured the raw materials into wooden cabinets in Malaysia and then exported the finished products to Scioto. Appx168279.

Second, R&R also addressed the alleged discrepancy of invoices with "vague descriptions that do not specify or categorize different sizes of wood or specific hardware."

28

Appx168279 (quoting Appx168205).  After thoroughly discussing how CBP had verified the presence of raw materials that can be used to manufacture the goods at issue in Alno's warehouse in Malaysia, Appx168276-168277, R&R reasonably concluded that, "given the presence of actual raw materials at the factory, the vague descriptors on invoices "does not equate to a conclusion that, behind the invoice descriptions claimed to be raw materials sent to Alno, are actually finished products manufactured in China and transshipped through Malaysia," Appx168279.  This is an entirely rational connection between the facts and the conclusion reached.

Third, AKCA admits that R&R addressed the alleged discrepancy in terms of unit transfer prices.  AKCA Br. at 42; *see* Appx168279-168280.  Specifically, R&R noted that TRLED found that units of quantity were inconsistent (cartons, packages, and pallets) in the invoices for purchases of raw materials.  Appx168279.  However, R&R reasonably concluded that this did not evidence transshipment.  *Id.*  AKCA argues that R&R missed the point, because although the discrepancy may not demonstrate transshipment, it does undermine the reliability of Alno's submitted information.  AKCA Br. at 42. R&R explained why it disagreed with TRLED regarding the reliability of this information.  For example, R&R pointed out that TRLED had indicates that, in some cases, when packages or cartons were used as the quantity type, the matching Packing Check-Lists would contain SKUs of finished goods, which then also had a related Finished Product sheet.  However, based on R&R's examination of Verification Exhibit 10, which TRLED had cited in its determination, it appeared that these only pertained to purchase order numbers from [█████████], not Scioto.  Appx168280.  Evidence as to [████████], which was not part of this EAPA investigation, does not demonstrate evasion by Scioto.  *Id.*, Appx168270.

Fourth, AKCA likewise admits that R&R addressed the alleged discrepancy concerning missing invoices for raw materials needed to make glass doors.  AKCA Br. at 42; Appx168281.  R&R concluded, and AKCA does not disagree, that "this pertained to shipments to [███████ ██], not Scioto, per the verification report."  Appx168281.  Based on this, R&R reasonably concluded that the lack of invoices is of limited to no relevance here because the verification report mentions no evidence of Scioto's having ordered products with glass from Alno; the same or similar invoices for glass were lacking for Scioto's orders; and there was no reason for Alno to possess such invoices for wooden cabinets sold to Scioto because glass was not among the materials listed in Scioto's product and batch material list.  *Id.*

Finally, AKCA claims that R&R failed to account for several other discrepancies addressed by TRLED in its final determination of evasion.  AKCA Br. at 43-44.  The foregoing discussion and R&R's final determination demonstrates that R&R reviewed the record as a whole, addressed the parties' positions on all issues, and discussed the major and majority of the evidence and issues.  R&R is not required to discuss every piece of evidence.  *See e.g., Camilo v. United States*, 642 F.3d 1040, 1045 (Fed. Cir. 2011) ("an administrative board's or trial court's failure to mention specific evidence does not mean, as {appellant} contends, that it failed to consider that evidence.").

## <u>CONCLUSION</u>

For these reasons, the Court should sustain CBP's determination.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

OF COUNSEL:                          s/ Ashley Akers
Tamari Lagvilava                     ASHLEY AKERS
Attorney                             Trial Attorney
U.S. Customs and Border Protection   U.S. Department of Justice
Office of the Chief Counsel          Civil Division
                                     Commercial Litigation Branch
                                     P.O. Box 480
                                     Ben Franklin Station
                                     Washington D.C. 20044
                                     Tel: (202) 353-0521
                                     Email: Ashley.Akers@usdoj.gov

January 22, 2024                     Attorneys for Defendant

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| AMERICAN KITCHEN CABINET ALLIANCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 23-00140 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| SCIOTO VALLEY WOODWORKING, INC. ) | |
| d/b/a VALLEYWOOD CABINETRY, ) | |
| ) | |
| Defendant-Intervenor. ) | |

## PROPOSED ORDER

On consideration of plaintiff's motion for judgment on the agency record, defendant's response, and all other pertinent papers, it is hereby:

ORDERED that plaintiff's motion is denied, and it is further

ORDERED that the final determination of the U.S. Customs and Border Protection is sustained, and it is further

ORDERED that judgment is entered in favor of the United States.


Dated: _____                    _____
New York, New York                         Stephen Alexander Vaden, Judge

## <u>CERTIFICATE OF COMPLIANCE</u>

     I hereby certify that this brief contains 8,531 words and therefore complied with the word limitations set forth in the Court's Chamber's Procedures. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

*/s/ Ashley Akers*
ASHLEY AKERS
