## UNITED STATES COURT OF INTERNATIONAL TRADE

AMERICAN KITCHEN CABINET
ALLIANCE,

      Plaintiff,

  v.

UNITED STATES,

      Defendant,

  and

SCIOTO VALLEY WOODWORKING,
INC. D/B/A VALLEYWOOD
CABINETRY,

      Defendant-Intervenor.

PUBLIC VERSION

Before: Lisa W. Wang, Judge

Court No. 23-00140

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
## FOR JUDGMENT ON THE AGENCY RECORD

Roger B. Schagrin, Esq.
Luke A. Meisner, Esq.

SCHAGRIN ASSOCIATES
900 Seventh St. NW, Ste. 500
Washington, DC 20001
(202) 223-1700

*Counsel for the American
Kitchen Cabinet Alliance*

Dated: March 8, 2024

PUBLIC VERSION

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

I.    Introduction and Summary ............................................................................. 1

II.   R&R Erred in Finding that the Application of Adverse Inferences Was Unwarranted ......... 3

    A.   The Record Showed that Alno Failed to Cooperate to the Best of Its Ability During the On-Site Verification of Its Facilities .............................. 3

        1.   The Failure to Disclose an Additional Warehouse Supports a Finding that Alno Failed to Cooperate ................................... 4

        2.   R&R Arbitrarily Excused Alno for Its Failure to Provide All the Packing Check-Lists Requested by TRLED ............................. 6

        3.   R&R Failed to Account for Emails That Were Destroyed ......................... 8

        4.   R&R Failed to Account for Commercial Invoices That Were Inexplicitly Missing from Alno's Records .............................. 10

    B.   R&R Erroneously Discredited and Rejected TRLED's Findings During Verification ......................................................... 11

III.  R&R's Determination That There Was "No Evidence" of Evasion Should Be Reversed and Remanded ................................................. 17

    A.   Alno's Prior Transshipment Transgressions Were Highly Relevant Evidence ............. 17

    B.   Alno's Finished Product Inbound Delivery Sheets Were Evidence of Evasion ............. 19

    C.   R&R Erred When It Found that Alno's Documents Were Reliable Evidence that Alno Produced all the Cabinets It Shipped to Scioto ................. 22

IV.   Conclusion ................................................................................................... 25

CERTIFICATE OF COMPLIANCE

PUBLIC VERSION

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024 (Fed. Cir. 2007)................. 14

*Allied-Signal Aerospace Co. v. United States*, 996 F.2d 1185 (Fed. Cir. 1993) ........... 8

*American Pac. Plywood, Inc. v. United States*, 2023 WL 4288346, Case
No. 20-0391 (Ct. Int'l Trade June 22, 2023)............................................. 9

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, 624 F. Supp. 3d
1343 (Ct. Int'l Trade 2023)................................................................. 9, 11

*Bonney Forge Corp. v. U.S.*, 560 F. Supp. 3d 1303 (Ct. Int'l Trade 2022) ................. 15

*Changzhou Trina Solar Energy Co. v. United States*, 195 F. Supp. 3d 1334 (Ct.
Int'l Trade 2016)............................................................................... 5

*Chinsung Indus. Co. v. United States*, 705 F. Supp. 598 (Ct. Int'l Trade 1989) ....... 15

*Consol. Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003)...................... 14

*Fujian Lianfu Forestry Co., Ltd. v. United States*, 33 C.I.T. 1056 (2009) .................. 7

*Goodluck India Limited v. U.S.*, 11 F.4th 1335 (Fed. Cir. 2021) .............................. 15

*Jinko Solar Co. v. United States*, 229 F. Supp. 3d 1333 (Ct. Int'l Trade 2017) ........ 12

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003)...................... 5, 7

*SeAH Steel Corp. v. United States*, No. 22-00338, 2023 WL 6241552 (Ct. Int'l
Trade Sept. 26, 2023) ........................................................................ 5

*Tianjin Mach. Imp. & Exp. Corp. v. United States*, 28 C.I.T. 1635 (2004).............. 5, 7

*United States v. Greenlight Organic Inc.*, 586 F. Supp. 3d 1342 (Ct. Int'l Tr. 2022) .. 9

*United States v. Inn Foods, Inc.*, 560 F.3d 1340 (Fed. Cir. 2009) ............................... 9

*United States v. Myers*, 550 F.2d 1036 (5th Cir. 1977).............................................. 18

*United States v. Spanish Foods, Inc.*, 24 C.I.T. 1052 (2000)....................................... 9

*Woodford v. Ngo*, 548 U.S. 81 (2006) ....................................................................... 14

PUBLIC VERSION

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| AMERICAN KITCHEN CABINET ALLIANCE,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>SCIOTO VALLEY WOODWORKING, INC. D/B/A VALLEYWOOD CABINETRY,<br><br>    Defendant-Intervenor. | PUBLIC VERSION<br><br>Before: Lisa W. Wang, Judge<br><br>Court No. 23-00140 |

### PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD

Plaintiff, the American Kitchen Cabinet Alliance ("AKCA"), hereby submits the following reply brief in support of its motion for judgment on the agency record in the above-captioned action and in opposition to the January 22, 2024 response brief filed by Defendant United States (ECF 34, 35) and the February 9, 2024 response brief filed by Defendant-Intervenor Scioto Valley Woodworking, Inc. d/b/a Valleywood Cabinetry ("Scioto") (ECF 45, 46).

## I.    Introduction and Summary

This case presents an important issue of first impression for this Court to resolve. If officials of the Trade Remedy Law Enforcement Directorate ("TRLED") who are responsible for conducting an investigation under the Enforce and Protect

PUBLIC VERSION

Act ("EAPA") observe during an on-site verification that a foreign supplier is not cooperating to the best of its ability by failing to disclose critical aspects of its operations and failing to provide key documents that are directly relevant to whether it transshipped Chinese merchandise, can Rulings and Regulations ("R&R") arbitrarily and capriciously overturn these findings during its *de novo* review of TRLED's affirmative determination of evasion? The answer to this question must be no, especially when R&R has measured whether the foreign supplier cooperated using a standard that falls short of the "best of its ability" standard required by the statute. Any decision that upholds R&R's reversal of TRLED's findings at verification would undermine the process and standard of conduct established by Congress to ensure that TRLED has the authority to verify the accuracy and reliability of a party's submissions in an EAPA investigation in a timely manner. Accordingly, this case should be remanded with instructions that R&R properly take into account the uncooperative behavior of Alno Industry SDN BHD ("Alno") during verification in conducting its review.

In addition, this Court should find that R&R erred in concluding that there is "no evidence" of evasion by Scioto, particularly when R&R's conclusion was based on a finding that the production documents of Scioto's foreign supplier were a reliable source of information and that these documents showed that the foreign supplier "likely" produced the merchandise it exported to Scioto. Putting aside the foreign supplier's failure to cooperate to the best of its ability during verification, its production documents were unreliable because they were rife with discrepancies

that showed it was willing to omit or obfuscate important information in paperwork with the specific intent to hide its transshipment scheme. This aspect of R&R's final review determination must also, therefore, be reversed.

## II. R&R Erred in Finding that the Application of Adverse Inferences Was Unwarranted

As the AKCA demonstrated in its opening brief, there was substantial evidence supporting TRLED's initial determination that Scioto's affiliated Malaysian supplier, Alno, failed to cooperate to the best of its ability during the on-site verification process at its facilities in Malaysia. *See* AKCA Opening Brief at 12-15. Because of Alno's failure to cooperate during verification, its production records were unverifiable and unreliable such that TRLED could not determine whether Alno supplemented its Malaysian production with merchandise produced by its corporate parent in China. *Id.* TRLED thus properly applied an adverse inference to determine that Alno had transshipped Chinese merchandise to Scioto. In its review, R&R failed to address critical aspects of the record regarding Alno's conduct and misinterpreted the statutory standard when evaluating whether Alno cooperated to the "best of its ability" such that Alno's reported information was verifiable. *Id.* at 16-28. R&R's reversal of TRLED's application of adverse inferences based on its finding that Alno had fully cooperated to the best of its ability was, therefore, arbitrary, capricious, and an abuse of discretion.

### A. The Record Showed that Alno Failed to Cooperate to the Best of Its Ability During the On-Site Verification of Its Facilities

The record shows that, during the on-site verification conducted by the TRLED team in Malaysia, Alno failed to cooperate to the best of its ability. R&R

3

failed to address these problems, failed to consider important aspects of the record evidence, and made conclusions that simply were unsupported by the record evidence. Accordingly, R&R's decision was arbitrary, capricious, and an abuse of discretion. The government's and Scioto's claims to the contrary are devoid of merit and should be rejected.

### 1. The Failure to Disclose an Additional Warehouse Supports a Finding that Alno Failed to Cooperate

First, Alno failed to disclose the existence of a warehouse where it kept wooden cabinets and vanities ("WCV") produced in China that were destined for the United States. *See* Verification Report, Appx03614. In particular, TRLED stated in its verification report that "{w}e had previously specifically asked if {Alno} had any other locations other than the warehouse and factory, and Alno said no." Verification Report, Appx03614. When Alno was questioned about certain payments observed by the verification team, however, its representatives told TRLED that "they have an additional warehouse where they are storing finished goods that their customers would not accept due to the civil litigation and EAPA case against Alno." *Id.*, Appx03614. Alno's failure to disclose the existence of this warehouse to TRLED, forcing the verification team to discover the warehouse on its own through scrutiny of Alno's accounting records, cannot be chalked up to a "misunderstanding" based on the precise wording of TRLED's questions. *See* AKCA Opening Brief at 18. But even if there were any ambiguity in TRLED's questions, such ambiguity would still not excuse Alno's failure to disclose the additional warehouse, because the burden falls on a respondent to clarify its understanding of an investigative agency's

4

PUBLIC VERSION

directives and instructions rather than rely on its own interpretation. *Id.* at 18-20 (citing *Changzhou Trina Solar Energy Co. v. United States*, 195 F. Supp. 3d 1334, 1346 (Ct. Int'l Trade 2016); *SeAH Steel Corp. v. United States*, No. 22-00338, 2023 WL 6241552 (Ct. Int'l Trade Sept. 26, 2023)).

In its response brief, the government contends that R&R was correct in concluding that Alno's failure did not evince a failure to cooperate to the best of its ability because "the acknowledged error was not nefarious." Gov't Brief at 19. This contention misstates the relevant standard of conduct required by the statute. *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). As in the antidumping context, the statute requiring parties in EAPA investigations to cooperate to the "best of their ability" does not by its terms "set a 'willfulness' or 'reasonable respondent' standard, nor does it require findings of motivation or intent. Simply put, there is no *mens rea* component to the {statutory} inquiry." *Id.* at 1383. "While intentional conduct, such as deliberate concealment or inaccurate reporting, surely evinces a failure to cooperate, the statute does not contain an intent element." *Id.* Thus, "{i}nadequate inquiries may suffice. The statutory trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to the best of respondent's ability, regardless of motivation or intent." *Id.* *See also Tianjin Mach. Imp. & Exp. Corp. v. United States*, 28 C.I.T. 1635, 1645 (2004) ("Commerce is not required to show intentional noncooperation to apply AFA; it need only demonstrate that the respondent did not put forth its maximum effort possible."). The government in its response brief makes the same mistake as

R&R in its review determination – *i.e.*, incorrectly assuming that any conduct short of "nefarious" does not warrant the application of adverse inferences. Like TRLED, the government lowers the appropriate standard of conduct required under the statute.[1]

In sum, when measuring whether Alno cooperated with TRLED during verification when Alno failed to disclose the existence of an additional warehouse, R&R applied an incorrect standard of conduct that is lower than the standard required by the statute. This error requires a remand so that R&R can apply the correct standard of conduct when reviewing Alno's behavior.

### 2. R&R Arbitrarily Excused Alno for Its Failure to Provide All the Packing Check-Lists Requested by TRLED

As discussed in the AKCA's opening brief, a second example of Alno's failure to cooperate to the best of its ability involved Alno's failure to provide certain packing checklists that were probative as to whether the merchandise that Alno shipped to Scioto was produced in China or Malaysia. Verification Report, Appx03620-03621. Despite multiple delays and receiving multiple chances from the verification team to provide all of Alno's packing checklists from 2021, there continued to be missing documents that Alno failed to provide. *Id.* Alno then later attempted to provide the remaining missing packing checklists unsolicited, but

---

[1]    In *Nippon*, the Federal Circuit relied on the "plain meaning" of "best of its ability" rather than review an interpretation adopted by the agency, as there was no ambiguity in the statute regarding this phrase. *Nippon*, 337 F.3d at 1382. As a result, R&R should not be given leeway to devise its own diluted interpretation of the "best of its ability" standard when evaluating a party's conduct in an EAPA investigation.

TRLED "would not accept the unsolicited documents due to concerns about validity." *Id.*, Appx03621.

The government contends in its response brief that R&R "sufficiently explained why it excused Alno's 'failure' – because it was not a failure to provide the documents, it was simply a delay." Gov't Brief at 20. Again, however, the government, like the R&R decision it is defending, fails to apply the proper standard of conduct to Alno and, as a result, fails to account for Alno's uncooperative conduct. This is the exact mistake that the Court of International Trade made in *Nippon* when it erroneously concluded that "{t}he fact that {the respondent} did not make appropriately timely submissions as a result of inadequate inquiries" was insufficient to apply adverse inferences. *Nippon Steel*, 337 F.3d at 1382. In reversing the court's interpretation of the statute, the Federal Circuit explained that the "best of its ability" standard requires a respondent to "conduct ***prompt, careful, and comprehensive*** investigations of all relevant records" which the investigating agency has requested with respect to the imports in question "to the full extent" of its ability to do so." *Id.* (emphasis added). After *Nippon*, the Court has thus upheld the application of adverse inferences based on a respondent's delay in providing information. *See, e.g., Tianjin*, 28 C.I.T. at 1645; *Fujian Lianfu Forestry Co., Ltd. v. United States*, 33 C.I.T. 1056, 1066-1067 (2009). Indeed, the Federal Circuit has held that "{o}ne of the fundamental purposes of the rules {regarding adverse inferences} is to induce the timely submission of information." *Allied-Signal Aerospace Co. v. United States*, 996 F.2d 1185, 1192-93

(Fed. Cir. 1993). First R&R and now its counsel undermine this purpose when they excuse Alno's delay in providing relevant information.

Scioto argues that Alno's repeated delays in providing the packing checklists were excusable because these documents "were not material to whether Scioto imported any covered merchandise from Alno." Scioto Br. at 26. But according to Alno itself, it was the packing checklists that allowed it to determine which cabinets were made in Malaysia and which cabinets were made in China and transshipped to the United States. Verification Report, Appx03620-03621. It was thus imperative to provide all the packing checklists requested by TRLED so that TRLED could determine whether Alno had transshipped Chinese cabinets to Scioto. Without a complete set of documents, this task was impossible. Indeed, TRLED deemed the documents "crucial to this investigation because of the detailed information they provide" and correctly found that Alno's failure to provide them in timely manner made it impossible to verify whether Alno's responses are accurate. *Id.*, Appx03621.

By failing to recognize that Alno's repeated delays in providing critical documents fell short of the "best of its ability" standard, R&R once again diluted the applicable standard of conduct. Allowing R&R's decision to stand would encourage parties not to provide their full cooperation and weaken TRLED's ability to use the verification process to ensure that parties report accurate and reliable information in a timely manner.

### 3. *R&R Failed to Account for Emails That Were Destroyed*

A third major failure was Alno's failure to provide the original copies of certain emails due to the emails being deleted and, when questioned about this

PUBLIC VERSION

failure, its provision of explanations that made no sense. *Id.*, Appx03615-03616 and Appx168114-168115. These emails referenced two sets of documents, one for billing and one to be presented to U.S. Customs and Border Protection ("CBP"). *Id.*, Appx03614. This dual-document system raised serious questions as to the reliability of the documents being presented to CBP. *See United States v. Inn Foods, Inc.*, 560 F.3d 1340, 1341 (Fed. Cir. 2009) (discussing how a double-invoicing system was used to deceive CBP); *United States v. Greenlight Organic Inc.*, 586 F. Supp. 3d 1342 (Ct. Int'l Tr. 2022) (same); *United States v. Spanish Foods, Inc.*, 24 C.I.T. 1052, 1056 (2000) (same). TRLED correctly found that the failure to retain these emails and provide them during verification constituted substantial evidence that Alno had not cooperated to the best of its ability and, as a result, that TRLED was unable to rely on the records Alno kept in its normal course of business. *TRLED Affirmative Determination*, Appx03742.

In its response brief, the government concedes that the deleted emails referencing two sets of billing documents were troubling but argues that the question is "not what the agency found any one piece of the evidence to show, but what the agency found the totality of the evidence to show." Gov't Brief at 21 (quoting *American Pac. Plywood, Inc. v. United States*, 2023 WL 4288346, Case No. 20-0391 at *13 n. 114 (Ct. Int'l Trade June 22, 2023)). In weighing the evidence as a whole, however, R&R also had to address evidence that detracted from its conclusion. *Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, 624 F. Supp. 3d 1343, 1376-1378 (Ct. Int'l Trade 2023) (remanding Commerce's decision not to

apply adverse facts available when it was based on a factual finding that a respondent had cooperated to the best of its ability, and Commerce had failed to reconcile that factual finding with evidence that detracted from it). R&R failed to reconcile these missing emails with its determination that Alno's information was successfully verified.

### 4. *R&R Failed to Account for Commercial Invoices That Were Inexplicably Missing from Alno's Records*

A fourth and final problem involved Alno's failure to provide all commercial invoices for 2021 and 2022 that were issued by [

]. *See* Verification Report, Appx03621. TRLED discovered that these commercial invoices were missing from a binder where they were supposed to be kept, because although the invoices were kept in reverse chronological and reverse sequential order, there were particular invoice numbers that were missing from the chronology. *Id.* Of course, a full review of these commercial invoices would assist TRLED in determining [

]. Thus, TRLED found that, because of these missing documents, it was "*unable to definitively verify statements that Alno made in its first supplemental response that the company only transshipped goods to {one company} and not to other customers.*" *Id.* (emphasis added).

In its *Final Review Determination*, R&R had nothing to say about these missing commercial invoices. *See Final Review Determination*, Appx168259-168284. It never mentioned them, though it did confoundingly state that there was no

evidence that Alno altered any of its records in advance of verification. *Id.*, Appx168274. Nor has the government said anything about them in its response brief. *See generally* Gov't Brief. Scioto similarly skips right over the fact that there were commercial invoices from [               ] inexplicably missing from the binder where they were supposed to be kept. *See generally* Scioto Brief. Again, an agency conclusion that fails to address evidence that detracts from the conclusion cannot be allowed to stand. *Assan*, 624 F. Supp. 3d at 1376-1378.

**B.  R&R Erroneously Discredited and Rejected TRLED's Findings During Verification**

As TRLED explained in its affirmative determination, all seven CBP officials that attended verification agreed that the verification report "is a true and accurate account of what was observed, verified, and happened at verification." *TRLED Affirmative Determination*, Appx03745. These observations included: (1) because Alno failed to provide all the packing checklists, TRLED was unable to verify whether Alno's first supplemental response was accurate, Verification Report, Appx03621; (2) TRLED was unable to definitively verify statements that Alno made in its first supplemental response that the company only transshipped goods to [   ] and not to other customers, *id.*, Appx03622 and Appx168121; and (3) TRLED was unable to definitively verify what was in shipments that Alno received from [               ], *id.* In other words, based on their personal observations of the documents and their personal interactions with the Alno officials while on-site in Malaysia, the TRLED team was not able to verify the accuracy of Alno's reported information in numerous critical aspects. As demonstrated in the AKCA's opening

11

PUBLIC VERSION

brief, R&R's substitution of its own judgment based on the cold paper record to find that the information was, in fact, verifiable was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. AKCA Opening Brief at 24-28.

In its response brief, the government argues that R&R "made no credibility evaluation or value judgment as to TRLED's determination" but instead "simply disagreed with TRLED's analysis of the evidence." Gov't Brief at 22. Scioto similarly argues that "TRLED and R&R simply disagree about what conclusions to draw from the same pieces of evidence." Scioto Brief at 18. Nothing could be further from the truth. The team of seven CBP investigators that conducted the on-site verification specifically found that Alno's responses could not be verified as accurate and reliable because Alno had failed to cooperate to the best of its ability during the verification process.

This Court recognized in *Jinko Solar Co. v. United States* that it is not the place of a reviewing agency or court to second guess a finding as to whether a party cooperated during verification such that its responses were verifiable. *See Jinko Solar Co. v. United States*, 229 F. Supp. 3d 1333, 1358 (Ct. Int'l Trade 2017). The government does nothing to address *Jinko* in its response brief. For its part, Scioto argues that "{t}he *Jinko* case involved the Court's review of an agency determination, not an agency's *de novo* review of a determination made within the same agency." Scioto Br. at 20. But the Court's decision in *Jinko* did not turn on the standard of review being applied. It turned on the principle that it would be inappropriate to substitute the court's judgment for a factual finding made at

PUBLIC VERSION

verification that was based on in-person meetings with company officials. Here, as in *Jinko*, TRLED made specific findings as to Alno's degree of cooperation based on its interactions with Alno officials. R&R inappropriately substituted its own judgment as to whether Alno had cooperated to the best of its ability.

The Court should reject Scioto's argument that TRLED made no credibility findings that bear on Alno's cooperation during verification because the "witness testimony" at verification is "nothing more than a company official explaining how certain documents tie into the accounting system of a company." Scioto Br. at 19. The seven CBP officials listened to and observed company officials confirming that Alno had no additional warehouses, company officials stating that they had provided a complete set of documents in response to agency requests when in fact documents were missing, and company officials explaining the reason that critical documents were destroyed or otherwise missing. TRLED found that that Alno had not cooperated to the best of its ability based on these interactions – not based on bland explanations of how Alno's documents tie to its accounting system.

There is likewise no support for Scioto's assertion that the AKCA "should be precluded from raising" its argument that R&R should have accepted TRLED's findings regarding Alno's cooperation at verification because the AKCA failed to exhaust its administrative remedies by raising this argument during the review process. Scioto Brief at 21. AKCA did argue below that R&R should accept TRLED's findings at verification that Alno did not cooperate to the best of its ability. *See* AKCA Review Response, Appx03900 (arguing that R&R should reject Scioto's

request to overturn TRLED's finding that the information submitted by Alno was unreliable and unverifiable); *id.* at Appx03905 (discussing the numerous aspects of Alno's responses to TRLED's requests for information that could not be verified and thus justified TRLED's finding that Alno failed to cooperate to the best of its ability). The AKCA's written response to Scioto's review request gave R&R a full and fair opportunity to consider whether to accept or reject TRLED's finding that Alno failed to cooperate to the best of its ability. There are thus no exhaustion concerns at play here. *C.f. Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (exhaustion requirements are designed "to give the agency a fair and full opportunity" to adjudicate parties' claims).

Even if the AKCA had not actually raised this argument, however, the Court has discretion not to require exhaustion of administrative remedies where a pure legal question arises. *Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007). A pure legal question is one that does not require additional factual development or resort to agency expertise for the court to dispose of the question. *See Consol. Bearings Co. v. United States*, 348 F.3d 997, 1003–04 (Fed. Cir. 2003). The AKCA's argument that R&R cannot arbitrarily reverse findings of noncooperation made at verification fits squarely within the exception for pure legal questions. No additional factual development is required to determine whether R&R can make such a reversal. Nor is any special agency expertise required to dispose of the question. Thus, the Court can and should reach the merits of this argument.

Finally, Scioto gets the issue completely backwards when it argues that requiring R&R to accept TRLED's findings at verification "would negate the purpose of *de novo* review" because the statute and regulations do not direct R&R "to grant TRLED's findings a presumption of correctness in reaching its determination." Scioto Brief at 22. The purpose of *de novo* review is for R&R to evaluate TRLED's legal conclusions and factual findings insofar as those factual findings are based on interpretations of the record evidence. The purpose of the *de novo* review was not to second guess findings that TRLED made based on its own observations and interactions with company officials during its on-site verification. Allowing R&R to reverse TRLED's findings based on its own observations negates the purpose of verification, which is "to test information provided by a party for accuracy and completeness." *Goodluck India Limited v. U.S.*, 11 F.4th 1335, 1344 (Fed. Cir. 2021) (citing *Micron Tech.,* 117 F.3d at 1396); *see also Bonney Forge Corp. v. U.S.*, 560 F. Supp. 3d 1303, 1307 (Ct. Int'l Trade 2022) at n.2 (recognizing that "verification is the process by which Commerce probes the information it collects in its investigations. It is 'like an audit, the purpose of which is to test information provided by a party for accuracy and completeness.'") (other citation omitted).

The Court's decision in *Chinsung Indus. Co. v. United States*, 705 F. Supp. 598, 601 (Ct. Int'l Trade 1989) is instructive in this regard. In that case, Commerce found that all of a respondents' data was unverifiable based on "numerous omissions, allocation errors, oversights and miscalculations." *Chinsung*, 705 F. Supp. at 601. The respondents argued that Commerce should have nonetheless

15

accepted the data. *Id.* The Court held that "if plaintiffs' argument were to prevail the result would be to undermine the administrative process and shift the burden of creating an adequate record from respondents to Commerce." *Id.* This is exactly the danger that TRLED warned of when it found that Alno had failed to cooperate to the best of its ability in its final affirmative determination:

> CBP's verification team followed its standard practice for allowing parties to take corrective action for any deficiency or non-conforming submission found at verification. At verification, after a CBP official asked for an item or items and discovered a deficiency, CBP officials allowed Alno the opportunity to take corrective action. CBP officials only determined that anything offered after that corrective action was already taken was non-conforming. *Allowing a party to take repeated corrective actions for an identified deficiency shifts the responsibility for the accuracy and completeness of information on the record from the manufacturer to CBP, whose responsibility in the matter is to maintain the record and determine its validity.* … CBP believes that Alno was afforded sufficient time during the verification to present the information requested from it, but that Alno often failed to take the time and effort to ensure completeness, and instead relied on CBP to do it for them.

*TRLED Affirmative Determination*, Appx03745 (emphasis added).

The bottom line is that upholding R&R's reversal of TRLED's findings at verification that Alno failed to cooperate to the best of its ability would establish a dangerous precedent – *i.e.*, that a verification team's own observations regarding a respondent's degree of cooperation cannot be the basis for applying adverse inferences. Such a precedent would severely undermine the verification process and eradicate the only incentive that foreign suppliers have to provide accurate information when called upon to do so in EAPA investigations. For this reason, as well, R&R's *Final Review Determination* should be remanded.

### III.   R&R's Determination That There Was "No Evidence" of Evasion Should Be Reversed and Remanded

As demonstrated in the AKCA's opening brief, R&R's finding that were was "no evidence" that Alno transshipped Chinese WCV through Malaysia to Scioto was arbitrary and capricious because R&R ignored the vast amount of evidence on the record that did support a finding of evasion, misinterpreted evidence that was on the record, and relied on production documents and other business records that TRLED had correctly found were not a reliable source of information. *See* AKCA Opening Brief at 29-44. In its response brief, the government argues that "the dispute is nothing more than a disagreement about the weight of the evidence" and that the AKCA "fails to identify any error in R&R's final determination." Gov't Brief at 25. As discussed below, this is a gross mischaracterization of the basis for the AKCA's challenge in this action. While of course R&R has the discretion to weigh the evidence, it is not permitted to make fundamental errors as part of the weighing process, which is precisely what it did.

#### A. Alno's Prior Transshipment Transgressions Were Highly Relevant Evidence

The Court should reject Scioto's claim that the AKCA is simply trying "to distract the Court from the scope of the EAPA investigation" by discussing Alno's prior transshipment of WCV to the United States. Scioto Brief at 14. In this regard, although Alno has repeatedly conceded that it transshipped Chinese-origin WCV to its other customer, Scioto now argues that there are only "*allegations* of transshipment involving [      ]." Scioto Brief at 5, 16 (emphasis added). This attempt to minimize the evidence of prior transshipment is confounding giving that

PUBLIC VERSION

Alno has already conceded that it transshipped Chinese WCV to another customer to evade the antidumping and countervailing duty ("AD/CVD") orders on WCV from China. *TRLED Affirmative Determination*, Appx03736, Appx168202. More importantly, the fact that Alno has transshipped Chinese WCV in the past is not a distraction. It is highly relevant evidence because it shows that even if Alno is capable of producing WCV in Malaysia, it also has the means, motive, and opportunity to use its facilities in Malaysia as a cover for transshipment. It also shows Alno's characteristic modus operandi – *i.e.*, the transshipment of WCV from China that were produced by its Chinese affiliate to evade the AD/CVD order while disguising the WCV in the paperwork as mere "wooden parts" supplied by the Chinese affiliate. *See, e.g., United States v. Myers*, 550 F.2d 1036, 1045 (5th Cir. 1977) (discussing relevance of a party's prior wrong acts when the allegations of wrong acts involve the same modus operandi).

It is preposterous for Scioto to suggest that any inference that Alno transshipped merchandise to Scioto based on its prior transshipment of merchandise to [    ] is "especially egregious" because [    ] is unrelated to Scioto. Scioto Br. at 16. If Alno was able to transship merchandise to an unrelated customer that had less incentive to knowingly participate in an evasion scheme, Alno would certainly be willing to transship merchandise to its own affiliated customer in the United States, keeping its evasion scheme "in the family."

The bottom line is that Alno's prior transshipment transgressions were highly relevant evidence as to whether Alno had also transshipped Chinese WCV produced by its Chinese affiliate, [                    ], to its U.S. sales affiliate, Scioto.

### B. Alno's Finished Product Inbound Delivery Sheets Were Evidence of Evasion

As discussed in the AKCA's opening brief, the substantial evidence that Alno transshipped Chinese WCV to Scioto included: (1) the Haiyan Group's control of the Chinese WCV producer that previously exported Chinese WCV to Scioto, the Haiyan Group's control of the Malaysian company Alno, which only began exporting WCV to the United States after the AD/CVD orders were issued, and the Haiyan Group's control of Scioto, the U.S. sales affiliate; (2) Alno's prior transshipment of Chinese WCV to the United States; and (3) the discovery of an undisclosed warehouse during verification that was filled with finished goods from China and Malaysia that were packaged identically and ready for shipment. AKCA Opening Brief at 29-31. But the nail in the coffin was the Finished Product Inbound Delivery ("FPID") sheets that TRLED examined during verification. *TRLED Affirmative Determination*, Appx03738. According to Alno, these FPID sheets were only for materials that Alno "purchased" rather than materials that Alno produced itself in Malaysia. *Id.* At verification, TRLED found FPID sheets that contained SKUs and purchase orders for Scioto, and it determined that this was significant evidence that Alno had transshipped goods to Scioto. *Id.*, Appx03739. The FPID sheets showed that Alno had purchased finished goods from China and then shipped these finished goods to Alno. *See id.*

19

PUBLIC VERSION

The government claims that the FPID sheets were not evidence of transshipment because R&R properly credited Alno's explanation that the FPID sheets "showed production details like batch numbers for wooden cabinets manufactured in Malaysia and destined for Scioto, while the {FPID sheets for} transshipped wooden cabinets … were missing such details." Gov't Brief at 27. Scioto similarly claims that Alno's explanation of the FPID sheets is supported by the documents themselves because they "contain a production batch number that links to the Production Batch Inspection Reports submitted by Alno." Scioto Br. at 33. However, neither the government nor Scioto address the fact that this explanation of the FPID sheets was inexplicably offered for the first time only after TRLED had already issued an affirmative determination of evasion. *See* Scioto Review Request, Appx03865-Appx03866. The government and Scioto now insist that the production batch numbers on the FPID sheets are the easiest and most reliable manner to determine whether the WCV shipped by Alno were produced in Malaysia or produced in China and transshipped through Malaysia. But Alno never offered this explanation when the TRLED team asked Alno to explain how it was possible to determine from Alno's own documents whether shipments contained transshipped Chinese merchandise or merchandise actually produced in Malaysia. *See* Verification Report, Appx03620. In fact, Alno stated during verification that the information on the packing checklists was "the only way to see what was in the shipments Alno received" from [          ]. *Id.*, Appx03620 and Appx168119-168120.

The government's and Scioto's failure to address this elephant in the room demands a remand.

Both the government and Scioto also fail to address the fact that, in finding that FPID sheets could be both for "purchased" finished products and for "produced" finished products, R&R completely misread the record. *See* AKCA Opening Brief at 37-39. Alno was asked to explain why it had "inbound delivery" sheets for the finished products that Alno shipped out to Scioto. *See* Alno Third Supp. Resp. (Oct. 17, 2022), Appx03485. In its response, Alno claimed that inbound sheets are for materials "***purchased***" but failed to mention that inbound sheets could also be for finished products that were ***produced*** in Malaysia. *See id.* (emphasis added). TRLED relied on this response to show that Alno's statements during verification that FPID sheets are only for "purchased" goods were consistent with its earlier written statements that FPID sheets are for "purchased" goods and not "produced" goods. *TRLED Affirmative Determination*, Appx03737-03738. In reversing this finding, R&R characterizes Alno's response as stating that "the FPID sheets were also for '***{raw}*** materials purchased.'" *Final Review Determination*, Appx03931 (alteration by R&R) (emphasis added to R&R's alternation). This makes no sense for two reasons. First, TRLED was asking Alno why it had inbound delivery sheets for ***finished*** products. Second, as the name suggests, the FPID sheets are by definition for "finished" products and not for "raw" materials. R&R's interpretation of the record that FPID sheets could be for raw materials is thus flatly wrong.

Neither the government nor Scioto have any answer to this glaring error. This is another reason that its *Final Review Determination* must be remanded.

### C. R&R Erred When It Found that Alno's Documents Were Reliable Evidence that Alno Produced All the Cabinets It Shipped to Scioto

As discussed in the AKCA's opening brief, R&R's finding that Alno's production documents were reliable evidence showing that all cabinets sold to Scioto were produced in Malaysia ignores widespread discrepancies and other problems with Alno's submitted documents. AKCA Opening Brief at 40-44. None of the arguments raised in the government's and Scioto's response briefs detract from this conclusion. Accordingly, R&R's reliance on these documents should be remanded.

Putting aside that Alno's documents were unreliable because it failed to cooperate during verification, there were also numerous discrepancies that rendered them unreliable. For example, TRLED discovered that the unit transfer prices between [                ] and Alno did not reflect market prices and fluctuated substantially. *TRLED Affirmative Determination*, Appx03739, Appx168205. When asked to explain why the prices for birch and hickory from [                ] were [    ] and [    ] in [                ] on one invoice, but the prices for these same two materials were [        ] and [        ] on another invoice in [                ], Alno's Chief Accountant stated that "the pricing depends on the product mix in the container." *Id.* In its response brief, the government cites Alno's Chief Accountant that the difference was due to the fact that the "smaller the size boards, the bigger the quantity they can order and better price they can receive." Gov't Brief at 28

22

(citing Appx168278 and Appx03610). This does not explain a difference in price of

[                                        ]. In fact, smaller boards would require more cutting

and finishing operations and thus be more expensive. The government also notes

that R&R considered that "the increase or decrease in sales price is likely a

mechanism to transfer money between related companies to make up for debts owed

between them." Gov't Brief at 28. But this consideration only adds to the

unreliability of the documents, because it shows that the prices stated in the sales

documents are not a reliable reflection of the materials being sold and shipped by

the Chinese supplier to Alno. It is thus impossible to rely on the invoices to

determine whether the Chinese supplier was shipping raw materials or finished

cabinets to Alno.

The government also argues that "regardless of the listed prices, the

documentation showed sales of raw materials from {the Chinese supplier} to Alno in

Malaysia, which supports a conclusion that Alno manufactured the raw materials

into wooden cabinets in Malaysia and then exported the finished products to

Scioto." Gov't Brief at 28. This ignores the fact that the invoices from the Chinese

supplier used the [

                                        ] regardless of whether the materials were raw

wood materials or finished cabinets. *TRLED Affirmative Determination*,

Appx03739-03740, Appx168205- Appx168205. Thus, for yet another reason, it was

impossible to use documents that described a sale of raw materials to conclude that

Alno manufactured all the materials it received from its Chinese supplier into finished cabinets in Malaysia and then exported them to Scioto.

Another discrepancy that TRLED discussed was the issue of the raw materials needed to make glass doors. *TRLED Affirmative Determination*, Appx03740. Alno had sold cabinets with glass doors, but when TRLED asked for the invoices showing the purchases of glass, Alno provided documents that listed raw materials such as hardware/screws. *Id.*, Appx03740-03741. In its response brief, the government argues that the evidence related to glass materials is irrelevant "because the verification report mentions no evidence of Scioto's having ordered products with glass from Alno." Gov't Brief at 30. This argument misses the point. As TRLED correctly concluded, the fact that [                    ] listed glass doors as hardware and screws shows that it is "willing to omit or obfuscate important information in paperwork, evidence that casts doubt on the reliability of the supplier's documents to use as proof that Alno did not transship cabinets and vanities of Chinese origin." *Id.*, Appx03741, Appx168207. On the other hand, R&R failed to reconcile this discrepancy with its finding that Alno's production documents were reliable and accurate.

In response to the AKCA's arguments regarding the widespread problems in Alno's documents, the Government and Scioto argue that it would still require "inference upon inference for CBP to find evasion on this record." Gov. Brief at 25; Scioto Brief at 29. As an initial matter, these discrepancies do – in addition to the other evidence on the record – further support a finding of evasion. For example,

based on the fact that the invoices from the Chinese supplier list raw materials and finished products in the same manner, one might infer that the invoices with the higher prices actually contained finished products while the invoices with the lower prices contained raw materials. But that is not the point of discussing these discrepancies. Rather, these discrepancies show that Alno's documents are a completely unreliable source of direct evidence. Indeed, it would take a wild leap of the imagination to conclude, as R&R did, that Alno "likely did{} produce the WCV in Malaysia" because "Alno's production records are direct evidence of production of WCV in Malaysia of WCV imported by Scioto." *Final Review Determination*, Appx168272.

## IV.    Conclusion

For the foregoing reasons, as well as the reasons set forth in its opening brief, the AKCA requests that this Court: (i) hold that R&R's *Final Review Determination* is arbitrary, capricious, and an abuse of discretion; and (ii) remand R&R's *Final Review Determination* with instructions to issue a new determination consistent with the Court's decision.

Respectfully submitted,

*/s/ Luke A. Meisner*
Luke A. Meisner, Esq.
Alessandra A. Palazzolo, *Law Clerk*
SCHAGRIN ASSOCIATES
900 Seventh St. NW Ste. 500
Washington, DC 20001
(202) 223-1700

*Counsel for the American Kitchen Cabinet Alliance*

Dated: March 8, 2024

PUBLIC VERSION

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply brief contains 6,441 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth in the Court's Chamber's Procedures.

Dated: March 8, 2024                    /s/ Luke A. Meisner
                                        Luke A. Meisner