Slip Op. 24-122

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| AMERICAN KITCHEN CABINET ALLIANCE, | |
| Plaintiff, | |
| v. | Before: Lisa W. Wang, Judge |
| United States, | Court No. 23-00140 |
| Defendant, | **PUBLIC VERSION** |
| and | |
| SCIOTO VALLEY WOODWORKING, INC. D/B/A VALLEYWOOD CABINETRY, | |
| Defendant-Intervenor. | |

## <u>OPINION AND ORDER</u>

[Remanding in part and sustaining in part the evasion determination of the U.S. Customs and Border Protection under the Enforce and Protect Act.)

Dated: October 31, 2024

<u>Luke A. Meisner,</u> Schagrin Associates, of Washington, DC, argued for plaintiff American Kitchen Cabinet Alliance. With him on the brief was <u>Roger B. Schagrin.</u>

<u>Ashley Akers,</u> Trial Attorney, Civil Division, U.S. Department of Justice, of Washington, DC, argued for the defendant. With her on the brief were <u>Brian M. Boynton,</u> Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy, Director,</u> and <u>L. Misha Preheim,</u> Assistant Director. Of counsel were <u>Tamari Lagvilava</u> and <u>John Flanagan,</u> Office of the Chief Counsel, U.S. Customs and Border Protection, of Washington, DC.

<u>Stephen Brophy,</u> Husch Blackwell, LLP, of Washington, DC, argued for defendant-intervenor Scioto Valley Woodworking, Inc. With him on the brief were <u>Jeffrey S. Neeley</u> and <u>Jamie Shookman</u>.

Wang, Judge: This action arises out of the negative evasion determination of the

**PUBLIC VERSION**

U.S. Customs and Border Protection ("CBP" or "Customs") under the antidumping duty

("AD") and countervailing duty ("CVD") orders on wooden cabinets and vanities ("WCV")

from the People's Republic of China ("China"). Customs' Final Administrative

Determination in Enforce and Protect Act (EAPA) Case No. 7705 (June 12, 2023)

("Final Administrative Determination"), Appx3915–3940 and Appx168259–168284; see

Wooden Cabinets and Vanities and Components Thereof from the People's Republic of

China: Antidumping Duty Order, 85 Fed. Reg. 22,126 (Dep't of Commerce Apr. 21,

2020); Wooden Cabinets and Vanities and Components Thereof from the People's

Republic of China: Countervailing Duty Order, 85 Fed. Reg. 22,134 (Dep't of Commerce

Apr. 21, 2020) (collectively, "AD/CVD Orders").

Plaintiff American Kitchen Cabinet Alliance ("AKCA") challenges two aspects of

Customs' Final Administrative Determination as arbitrary, capricious, and an abuse of

discretion: (1) Customs' conclusion that the "record contains no evidence that WCV

produced in China were transshipped through Malaysia"; and (2) Customs' decision to

refrain from applying adverse inferences in the proceeding. Pl.'s Mem. Supp. Mot. J.

Agency R. ("AKCA Br."), ECF No. 29 at 11, 29 (emphasis in original). The United States

("government") and Defendant-Intervenor Scioto Valley Woodworking, Inc. ("Scioto")

ask the court to sustain Customs' final determination. See Def.'s Resp. Pl.'s Mot. J.

Agency R. ("Def.'s Resp. Br."), ECF No. 34; Def.-Int.'s Resp. Pl.'s Mot. J. Agency R.

("Def.-Int.'s Resp. Br."), ECF No. 45.

## BACKGROUND

AKCA is a coalition of domestic producers of WCV. Final Administrative

Determination, Appx3917. Scioto is a U.S. importer of WCV and is wholly owned by the

Chinese company, Qingdao Haiyan Group Co. Ltd. ("Haiyan Group"). Id., Appx3933.

Alno Industry SDN BHD ("Alno") is a Malaysian company—also wholly owned by the

Haiyan Group—and a supplier of WCV to Scioto. Id.

Customs' Office of Trade, Trade Remedy Law Enforcement Directorate

("TRLED") is responsible for the investigation of allegations of evasion under the

Enforce and Protect Act ("EAPA") and for making initial determinations of evasion. See

19 U.S.C. § 4371(a)(3); 19 C.F.R. § 165.1. If TRLED makes an affirmative evasion

determination, EAPA permits an administrative appeal of that determination. See

19 U.S.C. § 1517(f)(1). Administrative appeals of EAPA determinations are

administered by Customs' Office of Regulations and Rulings ("R&R") applying a de

novo standard of review. See id.; 19 C.F.R. § 165.1. R&R has sixty days to complete its

review. See 19 U.S.C. § 1517(f)(2).

In April 2020, after petitions from AKCA, the U.S. Department of Commerce

("Commerce") issued AD and CVD orders on imports of WCV from China. See AD/CVD

Orders. On February 3, 2022, AKCA filed an EAPA allegation against Scioto alleging

that Scioto entered WCV of Chinese origin into the United States by means of

transshipment through Malaysia to evade the payment of AD and CVD duties on WCV

from China. AKCA EAPA Allegation (Feb. 3, 2022), Appx1001, Appx1006.

AKCA's allegations relied in part from information that it had received from

Cabinets to Go ("CTG"), an unaffiliated customer of Alno and an importer and distributor

of WCV in the United States. Id., Appx1007. Alno represented to CTG that the WCV

exported to CTG in the United States were manufactured in Malaysia. Id. In July 2021,

CTG conducted an independent inspection of Alno's manufacturing facilities in

Malaysia. Id., Appx1007–1008. CTG's inspection found that the WCV shipped by Alno

to CTG were manufactured in China, not Malaysia. Id. CTG subsequently filed a civil

lawsuit against Scioto, Alno, and the Haiyan Group in the United States District Court

for the Middle District of Tennessee alleging breach of contract and breach of warranty,

and requesting an award of punitive or treble damages for violations of the Tennessee

Consumer Protection Act. Id., Appx1008, Appx1034–1047. As part of this lawsuit, the

Haiyan Group provided information in court showing that Alno's shipments to CTG were

manufactured in China rather than in Malaysia, contrary to what Alno had previously

represented to CTG. Id., Appx1008, Appx80008; see Def.'s Resp. Br. at 3.

CTG subsequently shared this information with AKCA.

## I.    Trade Remedy Law Enforcement Directorate's Investigation and Initial Affirmative Evasion Determination

On March 30, 2022, Customs' TRLED initiated a formal investigation under

EAPA, 19 U.S.C. § 1517, to determine whether WCV imported by Scioto had been

entered into the United States by means of evasion. Final Administrative Determination,

Appx3918–3919. On July 6, 2022, TRLED issued a notice of initiation of its

investigation, which notified the parties that Customs had imposed interim measures on

Scioto's imports based upon reasonable suspicion that Scioto, as the U.S. importer,

entered covered merchandise into the customs territory of the United States through

evasion. Id. The entries subject to Customs' EAPA investigation were those entered for

consumption or withdrawn from a warehouse for consumption from March 9, 2021—one

year before Customs' acknowledged receipt of the allegation—through the pendency of

Customs' investigation, known as the period of investigation ("POI"). Id., Appx3919.

During this period, Scioto, entered WCV into the United States from Alno with a

declared country of origin of Malaysia and without payment of any AD/CVD duties. Id.

TRLED focused its analysis on Scioto, Scioto's relationship with Alno—its

affiliated Malaysian supplier, and Alno's non-affiliated transactions:

> The evidence demonstrates that Alno <u>can</u> produce wooden cabinets and
> vanities. However, Alno itself has admitted in court documents that it
> transshipped Chinese-origin cabinets and vanities through Malaysia to [a
> company] during the [POI] for this EAPA investigation. The questions before
> CBP, then, are whether Alno manufactured all the cabinets and vanities it
> exported to Scioto, or whether Alno exported transshipped, Chinese-origin
> cabinets and vanities to Scioto during the POI.

TRLED Notice of Determination as to Evasion ("TRLED Not. of Det."), EAPA Case No.

7705, Appx3735 (emphasis in original).

On January 31, 2023, following the submission of written arguments from

interested parties and an on-site verification of Alno's facilities in Malaysia, TRLED

issued its final determination of evasion. Id., Appx3732–3757; see TRLED Regulatory

Audit and Agency Advisory Services, On-Site Verification Report ("TRLED Verification

Rep."), EAPA Case No. 7705, Appx3605–3661. TRLED found that there was

substantial evidence that Scioto entered merchandise covered by the AD/CVD Orders

into the United States through evasion. TRLED Not. of Det., Appx3736–3742.

In making this conclusion, TRLED focused on four main considerations:

1. Common Ownership and Control of Alno and Scioto: TRLED concluded that
   "Alno is a Malaysian company owned and controlled by a Chinese company, is
   operated under Chinese management, and is supplied by Chinese suppliers."

Id., Appx3736. TRLED found that the Haiyan Group's ownership of both Scioto and Alno allowed it "discretion over the budgets for both companies' operations, production, shipping schedules for all goods produced, and the purchase prices." Id., Appx3735.

2. Contemporaneous Evidence of Transshipment by Alno: TRLED also found that "evidence on the record shows that Alno transshipped Chinese origin wooden cabinets into the United States." Id., Appx3736. TRLED's findings relied, in part, on information provided to AKCA by CTG, which included "direct admissions of facts that implicate Scioto in an evasion scheme."[1] Id. Alno admitted to Customs officials that "it transshipped to one of its customers … but claims that it produced all the cabinets and vanities in Malaysia to all the other customers." Id., Appx 3737.

3. Reliability of Documentation Submitted by Alno: TRLED found that "[e]vidence on the record shows that Alno had provided inaccurate information from [[                                                                      ]] that is unreliable."[2] TRLED Not. of Det., ECF No. 52-32, Appx168205. TRLED identified several additional discrepancies with Alno's invoice documentation, the two most significant examples involved "glass door" inputs that were "either not declared or declared as hardware/screws," TRLED Not. of Det., Appx3740–3741, and a container expressly identified as containing finished goods for "transshipment to [[        ]]" that was listed as [[                                        ]].[3] TRLED Not. of Det., ECF No. 52-32, Appx168207.

4. Adverse Inferences: TRLED found that Alno failed to cooperate to the best of its ability with TRLED's request for information during the on-site verification of Alno's facilities in Malaysia and applied adverse inferences against Alno and Scioto. TRLED Not. of Det., Appx3742.

---

[1] Specifically, TRLED cited to information that in August 2021, CTG requested the Haiyan Group to certify that the WCV products shipped to CTG were "manufactured in Malaysia, and not China. On or about August 24, 2021, Jason Delves, CEO of Cabinets to Go, received a telephone call from Amanda Li and Sabrina Lee, two Haiyan representatives, who advised they could not certify as to the country of origin because the product and/or component parts of the product, had been manufactured in China." AKCA EAPA Allegation, Appx1007–1008.

[2] Confidential information omitted.

[3] Confidential information omitted.

## II.    Administrative Review by Customs' Office of Regulations & Rulings and Reversal of TRLED's Evasion Determination

On March 15, 2023, Scioto filed a request for R&R to conduct a de novo administrative review of TRLED's affirmative evasion determination. Final Administrative Determination, Appx3919. In its request, Scioto stated that it did not enter covered merchandise into the United States through evasion because the WCV it imported during the relevant period of investigation were manufactured in Malaysia by Alno, instead of being manufactured in China. Id., Appx3920. On March 30, 2023, AKCA filed a response to Scioto's request for a review. Id., Appx3919. On June 12, 2023, R&R issued a determination in which it reversed TRLED's initial finding of evasion and found that there was no substantial evidence of evasion. Id.

Specifically, R&R concluded that "the record contains no evidence that WCV produced in China were transshipped through Malaysia and imported into the United States by Scioto." Id., Appx3925. In reaching its conclusion, R&R relied on the following findings:

1. Relevance of CTG to the Proceeding: R&R's de novo administrative review was limited to Scioto, not CTG, because the "facts related to CTG's conduct and transactions [are not] relevant to our decision as to whether Scioto engaged in evasion, given that the record is devoid of any evidence of a relationship between Scioto and CTG." Final Administrative Determination, Appx3926.

2. Adverse Inferences: R&R found that the use of adverse inferences against Alno and Scioto was not warranted because "when the record is examined as a whole, it supports a conclusion that they [Scioto and Alno] cooperated and complied with requests for information … [as] the information was ultimately provided to CBP." Id.

3. Alno's Production Capabilities: R&R found that Alno's production and employment records were direct evidence of actual production of WCV in

    Malaysia. Id. R&R further relied on Customs' on-site verification as corroboration that Alno had WCV production capabilities. Id., Appx3932–3937.

4.    Common Ownership: R&R found that evidence of common ownership of Scioto and Alno by a Chinese national does not necessarily prove that the goods associated with these entries were produced in China rather than Malaysia. Id., Appx3933.

    This appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

    The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1517(g)(1). 19 U.S.C. § 1517(g)(2) directs the court to examine "whether the Commissioner fully complied with all procedures under subsections (c) and (f)" and "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2). "While the agency bases its [subsection (c) and subsection (f)] determination[s] … on substantial evidence and the court reviews the agency's actions to assess whether they are arbitrary and capricious, 'both standards require an assessment based on a reasonableness standard.'" CEK Grp. LLC v. United States, 633 F. Supp. 3d 1369, 1373 (CIT 2023) (quoting Ad Hoc Shrimp Trade Enf't Comm. v. United States, 632 F. Supp. 3d 1369, 1374 (CIT 2023)).

    The scope of the arbitrary and capricious standard is narrow; courts are not to substitute their judgment for that of the agency. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). But Customs must have "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Id.

(quoting <u>Burlington Truck Lines v. United States</u>, 371 U.S. 156, 168 (1962)). The U.S.

Court of Appeals for the Federal Circuit has explained:

> Courts have found an agency's decision to be arbitrary and capricious when the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

<u>Ala. Aircraft Indus., Inc. v. United States</u>, 586 F.3d 1372, 1375 (Fed. Cir. 2009)

(alteration in original) (quoting <u>Motor Vehicle Mfrs. Ass'n of U.S.</u>, 463 U.S. at 43).

Under EAPA, when an interested party requests administrative review of a

TRLED determination, R&R reviews the determination de novo. 19 U.S.C. § 1517(f)(1).

R&R must "review the entire administrative record upon which the initial determination

was made...." 19 C.F.R. § 165.45. Moreover, "[a] determination not based on the whole

record should be remanded for reconsideration." <u>Ad Hoc Shrimp Trade Enf't Comm.</u>,

632 F. Supp. 3d at 1375; <u>see also</u> <u>Shanxi Hairui Trade Co. v. United States</u>, 503 F.

Supp. 3d 1307, 1311 (CIT 2021), <u>aff'd</u>, 39 F.4th 1357 (Fed. Cir. 2022) ("[W]hen

addressing a substantial evidence issue raised by a party, the court analyzes whether

the challenged agency action was reasonable given the circumstances presented by the

whole record."); <u>JSW Steel (USA) Inc. v. United States</u>, 466 F. Supp. 3d 1320, 1328–29

(CIT 2020).

## DISCUSSION

In this challenge, AKCA made an EAPA allegation of evasion against Scioto, a

U.S. importer, arguing that Scioto engaged in a transshipment scheme with its affiliated

foreign supplier, Alno, to evade the payment of AD and CVD duties on WCV from

China. Customs found in its Final Administrative Determination that there was no evidence of evasion by Scioto.

AKCA challenges two aspects of Customs' Final Administrative Determination as arbitrary, capricious, and an abuse of discretion: (1) R&R's conclusion that the "record contains <u>no evidence</u> that WCV produced in China were transshipped through Malaysia"; and (2) R&R's reversal of TRLED's application of adverse inferences. <u>See</u> AKCA Br. at 16, 29 (emphasis in original). The government and Scioto ask that the court sustain Customs' final determination. <u>See</u> Def.'s Resp. Br.; Def.-Int.'s Resp. Br.

## I.      Customs Failed to Consider Material Evidence On the Record

The first issue is whether Customs properly considered the record in making its negative evasion determination. Under EAPA, Customs is responsible for determining whether "covered merchandise" has entered the United States through "evasion." <u>See</u> 19 U.S.C. § 1517(c)(1)(A). "Covered merchandise" is merchandise that is subject to an AD or CVD order. <u>Id</u>. § 1517(a)(3). The statute defines "evasion" as:

> [E]ntering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

<u>Id</u>. § 1517(a)(5)(A). One example of evasion under EAPA is "transshipment," which includes a scheme where "goods are manufactured in one country and imported through an intermediary country to evade duties imposed on goods originating from the manufacturing country." <u>Skyview Cabinet USA, Inc. v. United States</u>, No. 2023-91, Slip Op. at 6 (CIT 2023).

Court No. 23-00140                                                          Page 11
**PUBLIC VERSION**

The statute defines evasion as <u>any</u> materially false information, data, or act, or

<u>any</u> material omission, that results in <u>any</u> cash deposit or other amount of AD or CVD

duties being reduced or not applied on covered merchandise. 19 U.S.C. § 1517(a)(5)(A)

(emphases added). The term "any" is "generally used in the sense of 'all' or 'every' and

its meaning is most comprehensive." <u>Barseback Kraft AB v. United States</u>, 121 F.3d

1475, 1481 (Fed. Cir. 1997) (quoting <u>Fleck v. KDI Sylvan Pools, Inc.</u>, 981 F.2d 107, 115

(3rd Cir. 1992)); <u>Micron Tech., Inc. v. United States</u>, 243 F.3d 1301, 1308 (Fed. Cir.

2001) (same); <u>Cook v. Wilkie</u>, 908 F.3d 813, 818 (Fed. Cir. 2018) (same); <u>see also</u>

<u>United States v. Rosenwasser</u>, 323 U.S. 360, 363 (1945) (explaining that the use of the

word "any" leaves "no doubt as to Congressional Intent[ ]"). Thus, a finding by Customs

of information, data, or an act that is material and false, or a finding by Customs of a

material omission, must result in a finding of evasion under the statute. 19 U.S.C.

§ 1517(a)(5)(A). Customs' determination for each finding of evasion must be based on

substantial evidence. <u>Id</u>. § 1517(c)(1)(A).

In this proceeding, Customs recognizes the standard required in making a

negative evasion determination because it concluded that there was "<u>no evidence</u> that

WCV produced in China were transshipped through Malaysia and imported into the

United States by Scioto." Final Administrative Determination, Appx3925 (emphasis

added). Customs came to its negative evasion determination only by making a

sweeping conclusion about evidence on the record. Despite its statement, Customs

failed to address material evidence in its analysis that detracted from its finding that no

evasion had taken place by Scioto. <u>Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.</u>,

786 F.3d 960, 970 (Fed. Cir. 2015) ("[S]ubstantial evidence review 'requires an

examination of the record as a whole, taking into account both the evidence that justifies

and detracts from an agency's opinion.'") (quoting Falkner v. Inglis, 448 F.3d 1357, 1363

(Fed. Cir. 2006)). Customs' failure to include such evidence in its analysis is

unreasonable. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951) (finding

that "[t]he substantiality of evidence must take into account whatever in the record fairly

detracts from its weight").

### A.    Customs failed to examine the extent of the Haiyan Group's operational control of Scioto and Alno

AKCA argues that "[d]ue to the Haiyan Group's ownership of Scioto and Alno, it

has total control and discretion over the companies' operations, production, shipping

schedules, purchase prices, sales prices, and profit generated." AKCA Br. at 30. TRLED

similarly addressed the Haiyan Group's financial and operational control of Alno and

Scioto in evaluating Scioto's relationship with Alno, particularly as it related to past acts

of evasion by Alno. TRLED Not. of Det., Appx3735–3736.

The government argues that AKCA's position regarding "close connections with

China" is not "conclusive evidence of transshipment" and "would require inference upon

inference for CBP to find evasion on this record." Def.'s Resp. Br. at 24–25. The

government contends it is not "dispositive that Alno has close connections with China"

and that R&R adequately addressed close connections with China because it

"determined that evidence of common ownership by a Chinese national did not

necessarily prove that the goods associated with the entries were produced in China

rather than Malaysia." Id. at 25, 31. Scioto similarly argues that "neither the existence of

a Chinese parent company, nor the purchase of Chinese raw materials, relates to where

productions of the <u>finished goods</u> occurred." Def.-Int.'s Resp. Br. at 31 (emphasis in

original).

In making its findings, Customs must examine the relevant data on the record,

and articulate a satisfactory explanation for its action, including addressing material

evidence on the record which detracts from its conclusion. <u>Motor Vehicle Mfrs. Ass'n of

U.S.</u>, 463 U.S. at 43; <u>Ala. Aircraft Indus.</u>, 586 F.3d at 1375. In the Final Administrative

Determination, R&R failed to consider the level of control that the Haiyan Group exerted

over both Scioto and Alno, and failed to consider Scioto's ownership of Alno during a

time when Alno was engaged in evasion of the AD/CVD Orders. <u>See</u> Final

Administrative Determination, Appx3933. Customs' focus only on the Haiyan Group's

ownership share of these entities renders its analysis unreasonable. <u>Id</u>.

In its administrative review, R&R treated Scioto and Alno as separate and

independent entities, but evidence obtained by TRLED during its investigation and cited

by AKCA shows that Scioto and Alno were interrelated companies operating under the

singular direction of the Haiyan Group. TRLED Not. of Det., Appx3735–3736; AKCA Br.

at 29–30. Specifically, Scioto reported in its August 25, 2022 response to Customs'

request for information ("RFI") that as "the 100% owners of Scioto, Haiyan Group has

general oversight with respect to overall business strategy and operations." Scioto Final

Response to Request for Information ("Scioto RFI Response"), Appx3260. Scioto further

described the operational control of the Haiyan Group over itself and Alno:

- "<u>Haiyan Group ultimately has final say over what products can be produced</u>

in Malaysia by Alno and in what order purchase orders are produced and shipped to Scioto from Alno, after consultation with Scioto regarding the demand for goods. Scioto can request certain SKUs in purchase orders or to request certain orders to come more quickly, but they are at Haiyan Group's discretion for this production to go as planned. Haiyan Group, Haiyan Drouot, and Alno also have other customers in the U.S. to which they have sold directly without the involvement of Scioto in the sales, production, or shipment process." Id., Appx3261 (emphasis added).

- "Haiyan Group also sets the price that goods are sold to Scioto from both Haiyan Drouot or Alno and also can make the final determinations on what goods are shipped to Scioto from Haiyan Drouot or Alno and how and when these shipments are made to Scioto from Haiyan Drouot or Alno." Id., Appx3267 (emphasis added).

- "A budget needs to be reviewed and approved by Haiyan Group biweekly or every 2 weeks and if approved, Haiyan Group is responsible for transferring the funds into the account payables bank account for any Scioto expenses to be paid." Id., Appx3260.

- "Haiyan Group is involved in setting the purchasing price for Scioto and also the terms of sale for purchases from Alno to Scioto. Haiyan Group was previously involved in setting the purchasing price for Scioto and also the terms of sale for purchases from Qingdao Haiyan Drouot to Scioto." Id. (emphasis added).

Given these admissions by Scioto and record evidence obtained by TRLED during its investigation that the Haiyan Group exercised "ultimate" operational control over Alno and Scioto, Customs' focus on only the Chinese ownership component of the relationship is unreasonable and renders its determination unsupported by substantial evidence. See Final Administrative Determination, Appx3933 (concluding that "common ownership by a Chinese national does not necessarily prove that the goods associated with these entities were produced in China rather than Malaysia").

Missing from Customs' analysis is an explanation of the Haiyan Group's decision-making authority with respect to products shipped by Alno from not only its

Malaysian WCV facilities, but from the Haiyan Group's Chinese WCV facilities that may

have been transshipped through Malaysia. That is because, "[a]s a starting point, Alno

was a known quantity for transshipment; it had admittedly engaged in a transshipment

scheme with another importer, Cabinets to Go [CTG]." Def.'s Resp. Br. at 5.

By its own admission, Alno did not make these decisions independently because

it was the Haiyan Group who had ultimate control to make the "final determinations" as

to Alno's production and shipment of WCV. See Scioto RFI Response, Appx3260–3261.

The Haiyan Group controlled decision-making as to which goods were shipped to its

U.S. subsidiary and importer, Scioto, from its Malaysian subsidiary, Alno, or from its

Chinese subsidiary, Haiyan Drouot. Id. The Haiyan Group similarly controlled decision-

making as to which goods were shipped to CTG, an unaffiliated U.S. importer, from

Alno during the time period when Alno admitted that transshipped goods were sent to

CTG. Id.; see also AKCA EAPA Allegation, Appx1008.

Further, Scioto reported that from the beginning of Customs' POI on March 9,

2021, until July 1, 2022, "Scioto owned Alno [and the] Haiyan Group still funded Alno's

operations and directed Alno on how to produce the goods made at Alno's facilities,

when and how to the [sic] ship the goods from, and how to package the goods made at

Alno." Scioto RFI Response, Appx3268 (emphasis added).

In its Final Administrative Determination, R&R failed to examine the relevance of

Scioto's ownership and control of Alno when disregarding the relevance of Alno's

behavior as a "known quantity for transshipment." See Def.'s Resp. Br. at 5.

Specifically, R&R stated in its findings that it would limit its review to transactions

involving Alno and Scioto, and not those between Alno and CTG, because no allegation

was made with respect to CTG, an unaffiliated U.S. importer. Final Administrative

Determination, Appx3926. Customs found that "given that the record is devoid of any

evidence of a relationship between Scioto and CTG," none of the facts related to "CTG's

conduct and transactions [are] relevant to our decision as to whether Scioto engaged in

evasion." Id.

      R&R, however, neglected to consider AKCA's argument that the issue is not with

"CTG's conduct," but Alno's conduct with respect to the previous transshipment

transactions. See id.; AKCA Br. at 30. Alno's past conduct is relevant to Customs'

evaluation of Scioto because Scioto owned Alno during the time when Alno "admitted"

to evading the AD/CVD Orders. Final Administrative Determination, Appx3926 ("Alno

admitted in response to CBP's RFI that it transshipped WCV to [Co.], but it did not so

admit with regards to Scioto's importations."). R&R concluded that it would not consider

Alno's past acts of evasion "given that the record is devoid of any evidence of a

relationship between Scioto and CTG," but such a conclusion should not have been the

end of R&R's analysis. Id. There may not have been a relationship between Scioto and

CTG, but as it takes two to tango, there is evidence of a relationship between Scioto

and Alno. The existence of an interrelated company relationship warrants Customs'

examination of the relevance of Alno's past acts of evasion in the context of Customs'

current examination of Scioto. See Phoenix Metal Co., Ltd. v. United States, No. 23-

00048, 2024 WL 2891503, at *4 (CIT 2024) (finding past transshipment by "interrelated"

companies a relevant consideration for an evasion determination).

In other words, it was Alno's parent companies, Scioto and the Haiyan Group, who "directed" Alno on where Alno should ship its and other manufacturers' goods during the time when Alno was engaged in transshipping goods from China through Malaysia to CTG in the United States. Scioto RFI Response, Appx3268. Evidence contained in AKCA's allegation to Customs further stated that it was "two Haiyan representatives," and not Alno representatives, who told CTG that the Haiyan Group and its subsidiaries could not certify the country of origin of the products exported to CTG "because the product and/or component parts of the product[ ] had been manufactured in China." AKCA EAPA Allegation, Appx1007–1008.

To impute operational independence between Scioto, Alno, and the Haiyan Group, as Customs has done in its Final Administrative Determination, runs counter to record evidence that: (1) the U.S. importer Scioto owned and controlled Alno for much of the POI, which includes the period when Alno was engaged in a transshipment scheme; and (2) Scioto and Alno were operationally controlled by the Haiyan Group. Given these factors, Customs' failure to examine Alno's previous acts of evasion renders its determination unreasonable. Ala. Aircraft Indus., 586 F.3d at 1375.

### B. Customs' discussion of Alno's "disclosure" of an additional warehouse failed to consider the contents inside the warehouse

AKCA argues that Customs failed to address evidence that Alno transshipped Chinese WCV to Scioto following the discovery of an "additional warehouse" during Customs' verification. AKCA Br. at 30. AKCA cites TRLED's verification findings in claiming that the warehouse "was filled with finished goods from China and Malaysia that were packaged identically and ready for shipment," and that "CBP officials had no

**PUBLIC VERSION**

way to differentiate the country of origin of these finished WCV. Id. (citing TRLED Not.

of Det., Appx3736–3737).

The government addresses the issue of an "additional warehouse" only in the

context of Customs' decision not to apply adverse inferences against Scioto.

Specifically, the government argues that while Alno did not initially disclose an

additional warehouse, "the distinction here is that R&R concluded that the

acknowledged error was not nefarious and did not amount to warranting an adverse

inference, as it has the discretion to do." Def.'s Resp. Br. at 19. Scioto similarly

contends that "the [g]overnment correctly notes" that "R&R already considered and

rejected" arguments about the disclosure of the additional warehouse, and that AKCA is

"simply asking the Court to reweigh the evidence." Def.-Int.'s Resp. Br. at 24.

AKCA's argument, however, is not rooted in the disclosure of the warehouse

itself, but the contents contained within the warehouse that should have warranted

review by R&R. On this claim, R&R failed to examine the issue except to acknowledge

that Alno "brought CBP officials to the warehouse location."[4] Final Administrative

Determination, Appx3927. R&R does not address the contents of the additional, finished

goods warehouse, concluding only that "Alno has the capability to, and likely did,

---

[4] Customs' statement was made in context of Alno's disclosure of the additional
warehouse. Final Administrative Determination, Appx3927 ("On balance, in our view,
the facts discussed above do not support a conclusion that Alno did not cooperate by
not acting to the best of its ability to comply with a request for information, especially
given that Alno did in fact disclose the additional finished goods warehouse and
subsequently brought CBP officials to the warehouse location.").

produce the WCV in Malaysia." Id., Appx3928 (emphasis added). "'Mere speculation' is

not substantial evidence." OSI Pharms., LLC v. Apotex Inc., 939 F.3d 1375, 1382 (Fed.

Cir. 2019) (quoting Intell. Ventures I LLC v. Motorola Mobility LLC, 870 F.3d 1320, 1331

(Fed. Cir. 2017)); Spurlock v. Dep't of Just., 894 F.2d 1328, 1330 (Fed. Cir. 1990)

("Exaggeration, inherent improbability, self-contradiction, omissions in a purportedly

complete account, imprecision, and errors detract from the weight to be accorded the

evidence upon which an administrative board bases its decision."); Dixon v. Dep't of

Transp., F.A.A., 8 F.3d 798, 804 (Fed. Cir. 1993) (courts "must canvas the entire

record").

　　　　Customs' reliance on speculation without an examination of AKCA's arguments

and record evidence is unreasonable. Princeton Vanguard, LLC v. Frito-Lay N. Am.,

Inc., 786 F.3d 960, 970 (Fed. Cir. 2015) ("Just as it may not short-cut its legal analysis,

the Board may not short-cut its consideration of the factual record before it."); Packard

Press, Inc. v. Hewlett-Packard Co., 227 F.3d 1352, 1357 (Fed. Cir. 2000) ("Judicial

review under the substantial evidence standard can only take place when the agency

explains its decisions with sufficient precision, including the underlying factfindings and

the agency's rationale.") (internal citations omitted).

　　　　R&R failed to examine and explain photographic and other evidence on the

record showing that the additional warehouse contained several boxes "with no

marking" of any sort, and importantly, without a country of origin marking. TRLED

Verification Rep., Attach. 7 at photos 5 and 6, Appx3648, Appx168147. Customs

investigators also found in the warehouse, stray "[c]abinet doors in box[es] with no writing on it." Id. at photo 7, Appx3649, Appx168148.

The photographic evidence obtained by TRLED supported its finding that the additional warehouse was "filled with finished goods from China and Malaysia that were packaged identically and ready for shipment," and that "CBP officials had no way to differentiate the country of origin of the finished packaged cabinets and vanities." TRLED Not. of Det., Appx3736–3737. Further, TRLED found that Alno "does not track raw materials in any way and cannot identify which raw materials go into which finished goods," and Alno "does not separate Chinese, Malaysian, or any other materials in any way." TRLED Verification Rep., Appx3609.

In sum, TRLED identified three categories of items in the additional warehouse at verification: (1) WCV goods from China; (2) WCV goods from Malaysia; and (3) WCV goods with no country of origin marking. For this third category of goods (i.e., those with no markings), even if the documentation submitted by Alno is accurate and reliable, Customs has offered no explanation as to why boxes and pieces of WCV without country of origin or other markings are considered Malaysian-origin goods when those goods are commingled with similarly unmarked Chinese-origin goods, or why such an omission is not material to Customs' evasion determination. In a warehouse where potentially transshipped goods are commingled with non-transshipped and unlabeled goods, the burden is on the warehouse owner to demonstrate to Customs a clear delineation between the three categories of goods. Customs' review of TRLED's

determination is conducted de novo, but the evidence which underpins TRLED's finding

cannot itself be summarily disregarded. See Dixon, 8 F.3d at 804.

### C. Customs' treatment of documentation submitted by Alno and Scioto was reasonable

Finally, AKCA argues that: (1) Customs "misinterpreted" evidence submitted by

Scioto for foreign product inbound delivery ("FPID") sheets; and (2) Customs erred in

finding that Alno's documentation was reliable. AKCA Br. at 34, 40. The government

and Scioto argue that (1) AKCA's arguments amount to a "mere disagreement" with

R&R's interpretation that the FPIDs adequately distinguished between WCV

manufactured in Malaysia and the "transshipped wooden cabinets"; and (2) "R&R

reviewed the record as a whole, addressed the parties' positions on all issues," and

discussed the "major" evidence in concluding that Alno's documentation was reliable.

Def.'s Resp. Br. at 27–30; Def.-Int.'s Resp. Br. at 32–33. For the reasons that follow, the

court affirms Customs' findings on these two issues.

It is not the court's role to second-guess agency decision-making so long as the

agency provides a reasoned analysis for its choices after considering the full gambit of

record evidence, including those facts that detract from its findings. See Motor Vehicle

Mfrs. Ass'n of U.S., 463 U.S. at 43; Wheatland Tube Co. v. United States, 161 F.3d

1365, 1369 (Fed. Cir. 1998); Mittal Steel Galati S.A. v. United States, 502 F. Supp. 2d

1295, 1313 (CIT 2007).

With respect to its treatment of Alno's submission of FPID sheets, Customs

addressed each of the arguments raised by AKCA and concluded that the "record

demonstrates that the FPID are used for purchased and manufactured finished goods

inventory." Final Administrative Determination, Appx3928. In making this finding,

Customs evaluated Alno's production tracking inspection reports and production

schedules, finding that "Scioto and Alno linked certain production batches in production

documentation from Alno's factory and warehouse to specific entries of WCV imported

by Scioto, which provides evidence that the WCV were produced in Malaysia." Id.,

Appx3930. AKCA would prefer Customs to find otherwise, but "the possibility of drawing

two inconsistent conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar.

Comm'n, 383 U.S. 607, 620 (1966); SeAH Steel VINA Corp. v. United States, 950 F.3d

833, 842–43 (Fed. Cir. 2020).

      Similarly, Customs' determination that Alno's documentation was reliable is

reasonable. Customs, not the court, is in the best position to determine the reliability of

the documentation and information submitted to it, and to make the appropriate

determination. Catfish Farmers of Am. v. United States, No. 2016-29, Slip Op. at 9 (CIT

2016) (where an agency "has conflicting evidence on the record and substantial

evidence exists on both sides of an issue, the standard compels deference to [the

agency], provided [the agency] has reasonably explained its determination"). AKCA lists

"myriad discrepancies" in support of its argument that Alno altered its documentation,

arguing for some of its claims that "R&R is just flatly wrong." AKCA Br. at 42. ACKA's

disagreement with Customs, however, is not a basis for disturbing the agency's

findings. Consolo v. Fed. Mar. Comm'n, 383 U.S. at 620; SeAH Steel VINA Corp, 950

F.3d at 842–43.

Despite AKCA's assertion that Customs failed to address discrepancies in Alno's submitted documentation, R&R explained its conclusions on Alno's unit transfer prices, "vague invoice descriptions", "inconsistent units" of tracking merchandise, and the overall evaluation of the reliability of Alno's documentation. Final Administrative Determination, Appx3935–3937. In doing so, Customs provided a rational connection between the facts and its conclusion. See Motor Vehicle Mfrs. Ass'n of U.S., 463 U.S. at 43.

## II. Customs Acted Within its Discretion in Finding that the Application of Adverse Inferences Was Unwarranted

The second issue is whether Customs acted within its discretion in refraining from applying adverse inferences to Scioto. AKCA argues that R&R's decision not to apply adverse inferences against Alno and Scioto was "arbitrary, capricious, and an abuse of discretion" because it "failed to address the problems that occurred during verification, failed to consider important aspects of the record evidence, and made conclusions that were simply unsupported by the record evidence." AKCA Br. at 16.

The government contends that "CBP acted well within its authority when it determined that it was inappropriate to apply adverse inferences." Def.'s Resp. Br. at 13. With respect to the additional warehouse, packing checklists, and missing emails, the government contends that "R&R considered each of these circumstances and ultimately concluded that the record 'examined as a whole' supports a conclusion that Alno 'cooperated and complied with requests for information made by CBP such that application of a wholesale adverse inference to Scioto is not justified.'" Id. at 18 (citing Final Administrative Determination, Appx168270). Scioto similarly argues that "the

record demonstrates cooperation and significant involvement by both Alno and Scioto

throughout the investigation." Def.-Int.'s Resp. Br. at 23.

EAPA permits Customs to "use an inference that is adverse to the interests of" a

party in certain circumstances:

> If [Customs] finds that a party or person ... has failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information, the Commissioner may, in making a determination [of evasion] … use an inference that is adverse to the interests of that party or person in selecting from among the facts otherwise available to make the determination.

19 U.S.C. § 1517(c)(3)(A); 19 C.F.R. § 165.6(a). The adverse inference "may be

used ... without regard to whether another person involved in the same transaction or

transactions under examination has provided the information sought by the

Commissioner, such as import or export documentation." 19 U.S.C. § 1517(c)(3)(B); 19

C.F.R. § 165.6(c).

The application of "adverse inferences" first requires Customs to make a finding

that a party failed to cooperate to the best of its abilities or failed to comply with a

request for information. 19 U.S.C. § 1517(c)(3). Even if such a finding is made, Customs

has discretion to choose whether to use an adverse inference in making an evasion

determination given the permissive language of the statute (i.e., "may"). Id.; see also

Assan Aluminyum Sanayi v. Ticaret A.S., 624 F. Supp. 3d 1343, 1378 (CIT 2023)

(discussing the use of the "permissive term 'may,' which stands in contraposition to [a

statute's] use of the mandatory term 'shall'"); Dorbest Ltd. V. United States, 462 F.

Supp. 2d 1262, 1318 (same).

In this challenge, Customs did not make a finding that Scioto and Alno failed to act to the best of its abilities or failed to comply with a request for information:

> [W]hile Alno and Scioto may not have acted perfectly in responding to information requests by CBP, in our view, when the record is examined as a whole, it supports a conclusion that they cooperated and complied with requests for information made by CBP such that application of a wholesale adverse inference to Scioto is not justified. This is especially so given there is record evidence that the information requested was ultimately provided to CBP.

Final Administrative Determination, Appx3926.

So long as the agency's findings are not arbitrary, capricious, or an abuse of discretion, and the agency includes a reasoned analysis or explanation for its choice, the court may not second-guess its decision. Motor Vehicle Mfrs. Ass'n of U.S., 463 U.S. at 43; Wheatland Tube Co., 161 F.3d at 1369. In other words, if Customs provides an analysis which has a rational connection to the facts found, the court must sustain its decision.

Under this standard, the court can find no error with Customs' determination that adverse inferences were not warranted. R&R adequately explained its decision not to apply adverse inferences and based its analysis on rational, reasoned connections to the facts. AKCA argues that R&R erred in failing to consider various "problems" that occurred during verification and other important aspects of the record, including: (1) Alno's failure to disclose an additional warehouse during verification; (2) R&R "excus[ing]" Alno from its failure to provide all the packing check-lists requested by TRLED; and (3) R&R's acceptance of Alno's explanation for certain missing documentation and emails. AKCA Br. at 16–24.

Contrary to AKCA's claims, R&R addressed each of these issues in concluding that:

> [W]hile Alno and Scioto may not have acted perfectly in responding to information requests by CBP, in our view, when the record is examined as a whole, it supports a conclusion that they cooperated and complied with requests for information made by CBP such that application of a wholesale adverse inference to Scioto is not justified.

Final Administrative Determination, Appx3926.

First, despite not addressing the contents within the warehouse, Customs did address Alno's failure to initially <u>disclose</u> its additional warehouse. <u>See</u> Final Administrative Review, Appx3926–3927. Specifically, Customs determined that Alno "misunderstood" the question posed by Customs investigators, and "when Alno realized that CBP also wanted information on this warehouse, Alno disclosed the existence of the warehouse to CBP and further provided CBP with access to the warehouse." <u>Id</u>., Appx3927. Customs concluded that "[o]n balance, in our view, the facts … do not support a conclusion that Alno did not cooperate by not acting to the best of its ability ... given that Alno did disclose the additional finished goods warehouse and subsequently brought CBP officials to the warehouse location." <u>Id</u>.

Second, Customs addressed Alno's failure to provide missing packing checklists when requested to do so. <u>See</u> <u>id</u>. Customs found that although "Alno did not act perfectly, in that there were delays– of indeterminate length pursuant to the record before us– in providing certain Packing Check-Lists, but when Alno found the relevant documents, later during the course of the verification, it produced them to CBP 'unsolicited.'" <u>Id</u>. Customs found that such a delay did not warrant the application of

adverse inferences because although Alno did not act to "perfection," it did "act[ ] to the best of its ability." Id.

Third, Customs addressed Alno's failure to provide Customs with access to certain email files. Id., Appx3927–3928. Customs found that there was insufficient evidence to verify Alno's claims of "server issues," and that consequently it was difficult to draw any conclusion on this claim by AKCA. Id. While Customs officials were unable to verify the source of the email attachments provided by Alno, they explained that "[t]here is no proof on the record that the person from the parent company forwarded an email to CBP officials containing different attachments from those accompanying the original email." Id., Appx3928. Customs ultimately concluded that it would not rely on the email and attachments for purposes of a determination. Id.

Based on these findings, Customs concluded that the use of adverse inferences against Alno and Scioto was not warranted. AKCA's disagreement with Customs' findings is not a basis for disturbing the agency's conclusion.

## CONCLUSION

For the foregoing reasons, Customs' negative determination of evasion is sustained in part and remanded in part for further proceedings not inconsistent with this opinion.

Upon consideration of the papers and proceedings herein, it is hereby:

**ORDERED** that Customs' Final Determination of Evasion is remanded in part for a reconsideration not inconsistent with this opinion; it is further

Court No. 23-00140                                                                    Page 28
**PUBLIC VERSION**

      **ORDERED** that Customs shall file a remand redetermination within forty-five (45)

days following the date of this Opinion and Order; it is further

      **ORDERED** that the deadlines provided in CIT Rule 56.2(h) shall govern

thereafter.


                               /s/      Lisa W. Wang
                               Lisa W. Wang, Judge

Dated:  October 31, 2024
         New York, New York