

90 K Street NE
Washington, DC 20002

**U.S. Customs and Border Protection**

January 30, 2025

**PUBLIC VERSION**

OT:RR:BSTC:CVB H343083 LNF

Nithya Nagarajan
Stephen Brophy
Husch Blackwell, LLP
Counsel for Scioto Valley Woodworking, Inc.
1801 Pennsylvania Avenue, NW
Suite 1000
Washington, DC 20006

Luke A. Meisner
Schagrin Associates
Counsel for the American Kitchen Cabinet Alliance
900 7th Street, NW
Suite 500
Washington, DC 20001

Re:     Remand Redetermination Enforce and Protect Act ("EAPA") Case No. 7705 (Remand Case No. 8141); *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 22,126 (Dep't of Commerce Apr. 21, 2020); *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Countervailing Duty Order*, 85 Fed. Reg. 22,134 (Dep't of Commerce Apr. 21, 2020); Scioto Valley Woodworking, Inc. d/b/a Valleywood Cabinetry; 19 U.S.C. § 1517

Dear Counsel:

This is a remand redetermination made pursuant to the U.S. Court of International Trade's remand order, dated October 31, 2024, in *American Kitchen Cabinet Alliance v. United States, et al.*[1]  The Court ordered U.S. Customs and Border Protection ("CBP"), Office of Trade ("OT"), Regulations and Rulings ("R&R"), to reconsider its June 12 Final Administrative Determination[2] ("June 12 FAD"), consistent with the Order.  In the June 12 FAD, R&R found no substantial evidence of evasion by Scioto Valley Woodworking, Inc. d/b/a Valleywood Cabinetry ("Scioto") and reversed the Trade Remedy Law Enforcement Directorate's ("TRLED") determination of evasion, dated

---

[1] *See American Kitchen Cabinet Alliance v. United States*, Slip. Op. No. 24-122 (Ct. Int'l Trade Oct. 31, 2024) ("Order").
[2] *See* Final Administrative Determination, EAPA Case 7705 (June 12, 2023) (Public Version), *available at* https://www.cbp.gov/document/publications/eapa-case-7705-scioto-valley-woodworking-inc-dba-valleywood-cabinetry-final (last accessed Dec. 19, 2024).

January 31, 2023, in EAPA Case No. 7705[3] ("TRLED January 31 Determination"), pertaining to the antidumping duty ("AD") and countervailing duty ("CVD") orders on imports of wooden cabinets and vanities ("WCV") from China.[4]  The Background and Law sections in the R&R June 12 FAD are incorporated by reference as if fully set forth herein.

The Court held that R&R's finding that Scioto did not engage in evasion was unreasonable because R&R did not address record evidence that detracted from this finding.[5]  As such, the Court ordered R&R to specifically reexamine and consider the following evidence: (1) the contents of Alno Industry SDN BHD's ("Alno") — Scioto's Malaysian supplier of WCV — finished goods warehouse; and (2) the extent of operational control exercised by Scioto's and Alno's parent company, Qingdao Haiyan Group Co. Ltd. ("Haiyan Group"), as to the production and shipment of WCV.[6]  The Court upheld R&R's treatment of documentation submitted by Alno and Scioto, R&R's analysis of Alno's production capability, and R&R's finding that the application of adverse inferences was unwarranted.[7]

As the Order provides, "substantial evidence review requires an examination of the record as a whole, taking into account both the evidence that justifies and detracts from an agency's opinion."[8]  Accordingly, R&R hereby addresses the record evidence specifically cited by the Court, as well as other record evidence that R&R has considered in its reevaluation, which detracts from R&R's original finding of no substantial evidence of evasion by Scioto.[9]

The parties were afforded an opportunity to provide written comments on a draft remand redetermination, provided to the parties on January 6, 2025.  The alleger, the American Kitchen Cabinet Alliance ("AKCA"), submitted comments in support of the draft remand redetermination, concluding that CBP's findings were reasonable and in accordance with the Order.[10]  The importer, Scioto, submitted comments in opposition to the draft remand redetermination.[11]

Scioto's comments can be distilled down to four main arguments: (1) the draft remand redetermination is unsupported by substantial evidence of evasion because it relies on "innuendo" and "speculation" without citing to record evidence, amounting to an abuse of discretion and a violation of Scioto's due process rights;[12] (2) the documents produced to CBP during the investigation demonstrate that the WCV shipped to Scioto was produced in Malaysia;[13] (3) the

---

[3] *See* Notice of Determination as to Evasion, EAPA Case 7705 (Jan. 31, 2023) (Public Version), *available at* https://www.cbp.gov/document/user-documentation/eapa-case-7705-scioto-valley-woodworking-inc-notice-determination (last accessed Dec. 19, 2024).

[4] *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 22,126 (Dep't of Commerce Apr. 21, 2020); *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Countervailing Duty Order*, 85 Fed. Reg. 22,134 (Dep't of Commerce Apr. 21, 2020).

[5] *See* Order at 11.

[6] *See id.* at 12–21.

[7] *See id.* at 21–27.

[8] *Id* at 12 (quoting *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 970 (Fed. Cir. 2015) (internal quotation marks omitted); *Falkner v. Inglis*, 448 F.3d 1357, 1363 (Fed. Cir. 2006)).

[9] On November 19, 2024, TRLED issued an administrative protective order ("APO") in this remand redetermination. Accordingly, the parties to the investigation have all had access to the entire record.

[10] *See generally* Alleger's Comments on Draft Remand Redetermination (Jan. 17, 2025) (Public Document).

[11] *See generally* EAPA 8141 Remand (7705) Scioto Valley Woodworking, Inc. d/b/a Valleywood Cabinetry: Draft Remand Comments (Jan. 17, 2025) (Public Version), at 2 ("Scioto's Written Comments").

[12] *Id.* at 5–10, 16–23, 27–28.

[13] *See id.* at 10–16.

contents of the finished goods warehouse do not support a finding that Alno shipped Chinese-origin WCV to Scioto;[14] and (4) the relationship between Haiyan Group, Alno, and Scioto does not support a finding of evasion.[15]

R&R has reviewed and considered the comments of the AKCA and Scioto prior to finalizing this remand redetermination. Further review and analysis of the administrative record as transmitted by TRLED to R&R prior to the issuance of the June 12 FAD, in conjunction with the Order, as well as the written comments submitted by the AKCA and Scioto, have led R&R to continue to reach a conclusion on remand different from the conclusion reached in the June 12 FAD.[16] Accordingly, R&R reverses its original finding of no evasion in EAPA Case No. 7705 and finds that the record supports a conclusion that Scioto entered covered merchandise into the customs territory of the United States through evasion, as defined by 19 U.S.C. § 1517. The reasoning behind this reconsideration is provided below.

I.      **The Contents of Alno's Finished Goods Warehouse Support a Finding of Evasion.**

In accordance with the Order, R&R hereby addresses the contents of Alno's finished goods warehouse, including the presence of boxes without country of origin or other markings.[17]

A.      **Scioto's Malaysian supplier of WCV purchased finished merchandise that was produced in China.**

R&R does not herein disturb its earlier conclusion that Alno had the capability to manufacture WCV in Malaysia or that Alno purchased raw materials for such production.[18] Indeed, the Court upheld R&R's treatment of documents submitted by Alno and Scioto and R&R's analysis of Alno's production capability.[19] However, per further review of the administrative record, R&R has reevaluated the record evidence, and finds that, in addition to raw materials, Alno purchased finished merchandise manufactured by [                    Company                    ], a Chinese subsidiary of Haiyan Group.[20] This evidence detracts from R&R's original finding of no evasion by Scioto because: (1) it demonstrates that Alno received finished merchandise from China; (2) Alno maintained a finished goods warehouse that contained boxes of WCV, some of which were unmarked with respect to country of origin or customer; and (3) neither Alno nor Scioto has sufficient systems in place that would allow either company to confirm which customers received WCV manufactured in Malaysia versus China.[21]

R&R first reassesses the Packing Check-Lists that [    Company    ] enclosed with its shipments to Alno, referencing the stock-keeping units ("SKUs") of finished goods.[22] This evidence

---

[14] *See id.* at 23–26.
[15] *See id.* at 26–29.
[16] We note that, per the statute and regulations, R&R is required to review the record *de novo* and issue its administrative review decision within 60 business days, a very short timeframe where a voluminous record is at issue.
[17] *See* Order at 18–21.
[18] *See generally* June 12 FAD (Public Version), at 17–22.
[19] *See* Order at 21–23.
[20] *See* Verification Report (Dec. 22, 2022) (Business Confidential Version), at 14–15 (citing Alno Verification Exhibits (Nov. 3, 2022) (Business Confidential Version)).
[21] *See infra* at 3–9.
[22] *See* Alno Verification Ex. 10 (Business Confidential Version), at 19–20, 22–23, 27–28, 30–31, 33–34, 36–37.

comports with admissions made by Haiyan Group in a separate lawsuit, where Haiyan Group, Scioto, and Alno submitted information showing that Alno's shipments to another U.S. customer, Cabinets to Go ("CTG"), were manufactured in China rather than Malaysia, contrary to Alno's representations to CTG.[23]

      R&R maintains its prior conclusion that some of the Packing Check-Lists appear to pertain to Alno's shipments to CTG;[24] however, R&R now reaches a different conclusion as to the significance of this evidence, for two reasons.  First, R&R corrects its previous finding that "a review of the SKUs for the WCV imported by [ Co. ] shows that the SKUs are not the same as the SKUs for WCV imported by Scioto."[25]  While not identical, the SKUs in the Packing Check-Lists relating to [ Co. ] purchase orders correspond to several of Scioto's SKUs, with variations for color and finish.[26]  Second, during TRLED's verification in this EAPA investigation, Alno explained that CBP would be able to identify merchandise from China that was transshipped by reviewing the Packing Check-Lists and commercial invoices, which would list the terms [ Description of Goods ], [          Description of Goods          ], or [           Description  of Goods          ].[27]  These vague descriptions similarly appear on commercial invoices, Packing Check-Lists, and Packing Lists from [ Company ] to Alno that Scioto produced to CBP in this investigation.[28]  Taken together, these documents demonstrate that Alno purchased finished merchandise from China and suggest that Alno may have shipped Chinese-origin WCV to Scioto.

      In addition, upon further review, R&R has identified record evidence showing that Scioto had direct communication with [   Company   ] regarding specific [        Items       ] of WCV.  In 2021 and 2022, Scioto employees sent emails to [         Name and Email Address              ] and others with the email address [       Email Address        ], attaching numerous [Description of Items].[29]  A shipping label included in Scioto's response to a Request for Information ("RFI") identifies [     Name     ] as an employee of [   Company   ], the Chinese subsidiary of Haiyan Group that produced WCV.[30]  During the same time frame, Alno provided Scioto's [            Description of Item         ] to [  Company  ].[31]

      Further examination now leads R&R to conclude that these communications relate specifically to Scioto's purchases of finished merchandise, and not raw materials.  In fact, as stated by Scioto, "Scioto is not involved in the process of procuring raw materials, milling the raw

---

[23] *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Request for an Investigation under the Enforce and Protect Act of Scioto Valley Woodworking, Inc. d/b/a Valleywood Cabinetry* (Feb. 3, 2022) (Public Version) ("Allegation"), at 7–8; Order at 4.  Upon further review of the administrative record, R&R corrects its understanding of the anatomy of the SKUs.

[24] *See* June 12 FAD (Business Confidential Version), at 21.

[25] *Id.*

[26] *Compare* Alno Verification Ex. 10 (Business Confidential Version), at 19–20, 22–23, 27–28, 30–31, 33–34, 36–37 *with* Scioto CF-28 Response for Entry No. 791-3578142-0 (June 1, 2022) (Business Confidential Version), at Attach. 2 (providing purchase orders); *see also* Scioto Response to Request for Information (Aug. 25, 2022) (Public Version) ("Scioto RFI Response"), at 37–38 (explaining the anatomy of Scioto's SKUs).

[27] *See* Verification Report (Business Confidential Version), at 16; TRLED January 31 Determination (Business Confidential Version), at 9 (citing Alno Verification Ex. 10 (Business Confidential Version)).

[28] *See, e.g.*, Scioto CF-28 response for Entry No. 791-3578142-0 (Business Confidential Version), at Attach. 7 (providing commercial invoices, Packing Check-In Lists, and Packing Lists from [      Company      ] for invoice nos. [  Invoice Numbers      ].

[29] *See, e.g.*, Scioto RFI Response (Business Confidential Version), at Ex. II-9 (Emails 6000s), at pp. 3210, 3219, 3286.

[30] *See id.* at Ex. II-9 (Emails 1–2999), at p. 151 (packing label listing [  Name   ] at [  Company   ]).

[31] *See id.* at Ex. II-9 (Emails 6000s), at p. 3175.

materials, producing cabinetry, or scheduling the shipping aside from when they have arrived in US ports or by submitting purchase orders (POs)."[32]  Therefore, at minimum, these communications show a level of involvement by [ Company ] regarding the manufacture of WCV to be sent to Scioto.

Moreover, although the record demonstrates that Alno had manufacturing capacity in Malaysia, neither Alno nor Scioto can substantiate that only WCV that was produced in Malaysia was used for all of Alno's shipments to Scioto.  Based on the evidence of record, R&R cannot distinguish which of Alno's customers received Chinese merchandise transshipped through Malaysia.  The administrative record does not allow for accurate tracing of the exact WCV that Alno used to fulfill its purchase orders to Scioto, for the following four reasons.

First, as discussed in greater detail below, neither Alno nor Scioto can affirmatively conclude that only specific customers received transshipped WCV.  Scioto and Alno did not have sufficient tracking or accounting systems in place that would allow for such verification.[33]

Second, as TRLED recognized, Alno did not make a complete document production, despite having numerous opportunities to do so.[34]  Specifically, Alno did not provide all of the Packing Check-Lists that CBP requested.[35]  During the on-site verification, TRLED informed Alno's counsel that these documents had been requested on two separate occasions and, contrary to Alno's assertions that everything had been produced, TRLED continued to identify missing materials during the course of its review.[36]

Third, R&R has concerns about the reliability of the information Scioto produced in this investigation.  In its reevaluation of the administrative record as ordered by the Court, R&R identified instances of hidden data in Scioto's documents, where columns of information have been redacted or obscured from view.[37]

Scioto and Alno bear responsibility to ensure that the information included in their submissions to CBP is accurate and complete.[38]  As a result of these issues, R&R is unable to rely on the accuracy and completeness of Alno's and Scioto's submissions, especially considering the volume of Scioto's production (Scioto provided over 30,000 pages of emails and correspondence alone).  As such, CBP cannot confirm that Alno did not receive other shipments of WCV from [ Company ] that were subsequently transshipped to Scioto.[39]

---

[32] See Scioto RFI Response (Public Version), at 30.

[33] See infra at 7–8.

[34] See TRLED January 31 Determination (Public Version), at 11.

[35] See Verification Report (Public Version), at 16.

[36] See id.

[37] See, e.g., Scioto RFI Response (Business Confidential Version), at Ex. II-9 (Emails 6000s), at pp. 1528, 1530, 1534–38, 1545–55, 1560–79, 1625, 1644, 1649–51, 1656–58, 1661, 1666–67 (finding the hidden words, "[ Company ]").

[38] See TRLED January 31 Determination (Public Version), at 13; see also 19 C.F.R. § 165.5(b)(2)(i) (requiring a party submitting information to CBP in an EAPA investigation to certify that the information in the submission is "accurate and true" to the best of the party's knowledge and belief).

[39] In its Written Comments, Scioto stated that "{g}iven the inferences relied upon by R&R in the Draft Remand Results to reach an affirmative determination of evasion, it seems that R&R is applying adverse inferences, even though it does not claim to be doing so and provides no analysis of how adverse inferences would be appropriate under 19 U.S.C. § 1517(c)(3)(A) or 19 C.F.R. §165.6(a)."  Scioto's Written Comments (Public Version), at 7–8.  R&R need not, and did

Fourth, upon a more holistic review of all of the facts, R&R concludes that acceptance of Scioto's claim that CTG was [Description of Claim] that received transshipped merchandise is not appropriate. While this investigation involves Scioto's entries rather CTG's, the facts surrounding the CTG situation provide context that, upon reconsideration, R&R concludes should be given weight vis-à-vis this proceeding.

For example, in the case of CTG, inspectors hired by CTG discovered the transshipment while conducting an on-site inspection of Alno's facilities in Malaysia.[40] It was only after this inspection and a certification request from CTG's Chief Executive Officer, Jason Delves, that Haiyan Group, Alno's parent company, admitted that the WCV had been manufactured in China.[41] In fact, according to CTG's complaint, Alno tried to conceal the actual origin of the WCV by providing CTG with documentation showing that composite wood materials were shipped from China to Malaysia to allow for the manufacture of WCV in Malaysia.[42] By contrast, Scioto acknowledges that it "has not required periodic monitoring of overseas factories' production" and has not performed on-site inspections of Alno's facilities.[43] Instead, Scioto relies entirely on documents and assertions made by Alno and Haiyan Group, including with respect to the country of origin of the WCV that Scioto receives and its compliance with AD/CVD requirements.[44] In its RFI Response, Scioto stated that it "relies upon Alno and Qingdao Haiyan Group to provide accurate information on the manufacturer and country of origin."[45] Given the initial due diligence that CTG performed, and still did not discover the transshipment until an on-site inspection was performed, it is reasonable to conclude that similar obfuscation would have occurred with respect to Scioto, and Scioto's failure to conduct inspections or make specific inquiries cements such a conclusion.

Additionally, Scioto "does not have written policies and procedures related to AD/CVD since Qingdao Haiyan Group, Haiyan Drouot, and Alno have always handled the duties."[46] In fact, "{n}one of Scioto's employees determines whether items may be subject to AD or CVD cash deposits. This determination comes solely from Alno or Haiyan, even in the cases when Scioto was the importer of record."[47]

In its Written Comments, Scioto argued that the documents produced to CBP during the investigation demonstrate that all of the WCV that Alno shipped to Scioto was produced in Malaysia.[48] Scioto provided no support to substantiate this claim, which, as detailed herein, is belied by the record evidence.

---

not, apply adverse inferences to reach this finding. As is discussed throughout this remand redetermination, upon consideration of the record as a whole, including certain data issues and missing documents of which TRLED informed Alno during the investigation, Scioto cannot substantiate its claim that Alno shipped only WCV produced in Malaysia to Scioto.

[40] *See* Allegation (Public Version), at 6 (summarizing CTG's complaint).
[41] *See id.* at 6–7.
[42] *See id.*
[43] Scioto's RFI Response (Public Version), at 43–44.
[44] *See id.* at 45.
[45] *Id.* at 46.
[46] *Id.* at 45.
[47] *Id.*
[48] *See* Scioto's Written Comments (Public Version), at 10–16.

PUBLIC VERSION

Additionally, Scioto asserted that "{i}nstead of citing to record evidence that Scioto actually did import covered merchandise through evasion, R&R relies on speculation as to what might have occurred based solely on misreadings of the record and innuendo."[49]  However, Scioto provides no support for this claim or citations to the record evidence.  This is in contrast to the detailed analysis above (and below), which provides specific citations to the record, demonstrating that: (1) Scioto did not provide sufficient information to prove that all of its WCV imports into the United States were of Malaysian origin; (2) Scioto — through its unverified reliance on information provided by other entities — was in fact not in a position to be able to support such a claim; and (3) the assurances and controls of those other entities have been shown to be unreliable and/or unjustified.  This is not innuendo; these analyses and citations demonstrate that CBP "examine{d} the relevant data and articulate{d} a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made,'" in accordance with the Order.[50]

In sum, R&R finds that the above-described facts, in combination with the presence of commingled merchandise in Alno's warehouses and the complete control Haiyan Group exercises over the WCV production process (detailed below), undermine Scioto's claims that CTG was [Desc. of Claim] to receive transshipped WCV and that the documents produced to CBP during the investigation demonstrate that all of the WCV shipped to Scioto was produced in Malaysia.[51]

### B.    Alno fulfilled purchase orders from a warehouse that contained unmarked, commingled Chinese and Malaysian WCV.

Upon reconsideration, R&R finds that the administrative record demonstrates that Alno cannot verify that all of the WCV it sent to Scioto was manufactured in Malaysia, for two reasons. First, Alno maintained a finished goods warehouse containing boxes of merchandise, some of which were unmarked with respect to country of origin or customer.  Second, Alno did not have a production tracking system that would have allowed it to trace which customers received WCV that was produced in Malaysia versus China.

During verification, TRLED discovered that Alno maintained a finished goods warehouse containing WCV.[52]  These finished goods were specifically for [ Companies ].[53]  As discussed above, evidence in the record shows that Alno received shipments of WCV from China during the period of investigation, *i.e.*, the same time frame during which Alno sent WCV to Scioto.[54]

In addition, the verification report includes photographic evidence that the WCV stored in the finished goods warehouse was commingled.  TRLED found boxes in the finished goods warehouse with no markings to indicate the country of origin or the intended customer.[55]  Without the use of a comprehensive tracking system (which Alno neither possessed nor utilized), Alno could not have known the country of origin of the WCV it removed from the finished goods warehouse and shipped to its customers, including Scioto.

---

[49] Scioto's Written Comments (Public Version), at 2.
[50] Order at 8–9 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal citation and quotation marks omitted)).
[51] *See* Scioto's Written Comments (Public Version), at 10–16.
[52] *See* Verification Report (Public Version), at 9.
[53] *See id.*
[54] *See supra* at 3–4.
[55] *See* Verification Report (Business Confidential Version), at 43–44.

PUBLIC VERSION

The administrative record also shows that Alno does not have a tracking system in place to prevent commingling of WCV from Malaysia and China. Alno admits that it is unable to track inventory movement from raw materials through production to finished goods.[56] Specifically, Alno does not have a stock control module or enough personnel to track its production of WCV from raw materials to finished goods.[57] Additionally, according to Alno's Chief Accountant, Alno does not maintain a finished goods account.[58]

On top of the lack of a production or finished goods tracking system, Alno marked only the packaging of the WCV with the country of origin, not the WCV itself.[59] Even with this limited protocol in place, Alno's finished goods warehouse contained boxes without country of origin markings.[60] In short, the finished goods warehouse contained commingled WCV, thereby preventing Alno from determining which WCV was produced in Malaysia or China.

Furthermore, Alno did not provide CBP with records that would sufficiently connect the WCV produced at the Malaysia factory to Alno's shipments to Scioto. TRLED requested documentation for eight specific shipments of WCV.[61] Alno, however, produced the same set of raw material invoices for all eight shipments, whether or not those invoices related to each individual shipment.[62] Notably, as TRLED observed, Alno "simply selected" the same raw material invoices that were somewhat contemporaneous with the eight shipments "and copied those for all packages."[63] As a result, there was no actual tracing of the raw materials to the shipments to Scioto; rather, there simply was evidence that raw materials had been purchased for production in Malaysia, but without linkage to all of the shipments to Scioto that were claimed to be of Malaysian origin. Thus, these invoices do not verify that Scioto received only WCV that was produced in Malaysia.[64] Based on all of the facts discussed herein, R&R cannot consider the boxes and pieces of WCV without country of origin or other markings that were stored in the finished goods warehouse to be Malaysian-origin WCV.[65]

In response to this analysis, Scioto argued that "Alno was absolutely able to determine which WCV was produced in Malaysia or China."[66] Scioto then attempted to shift blame to CBP, arguing

---

[56] See Verification Report (Public Version), at 6.
[57] See id.
[58] See id. at 7.
[59] See Alno Response to Request for Information (Aug. 25, 2022) (Public Version) ("Alno RFI Response"), at 32.
[60] See Verification Report (Business Confidential Version), at 43–44.
[61] See id. at 10.
[62] See id.
[63] Id.
[64] In the June 12 FAD, R&R evaluated Alno's production reports, including foreign product inbound delivery ("FPID") sheets and production tracking inspection schedules, and found that "Scioto and Alno linked certain production batches in production documentation from Alno's factory and warehouse to specific entries of WCV imported by Scioto, which provides evidence that the WCV were produced in Malaysia." June 12 FAD (Public Version), at 15 (emphasis added). The Court upheld R&R's analysis of these documents as reasonable. See Order at 21. However, the fact that some shipments received by Scioto contained merchandise produced in Malaysia, in light of other facts discussed herein, leads R&R to conclude that these documents do not conclusively establish that Scioto received only WCV that was produced in Malaysia.
[65] See Order at 20 (stating that "Customs has offered no explanation as to why boxes and pieces of WCV without country of origin or other markings are considered Malaysian-origin goods when those goods are commingled with similarly unmarked Chinese-origin goods, or why such an omission is not material to Customs' evasion determination.").
[66] Scioto's Written Comments (Public Version), at 23.

that "{i}f the record contains any ambiguity, it is only because of CBP's investigative failure to inform Alno and Scioto of the ambiguity and ask for information to resolve the ambiguity."[67]

Scioto's contentions lack merit for two reasons. First, Scioto failed to provide sufficient evidentiary support for its assertion that Alno had a tracking system that would have allowed it to trace the country of origin of all of its shipments of WCV to its U.S. customers. As the Court stated, "{i}n a warehouse where potentially transshipped goods are commingled with non-transshipped and unlabeled goods, the burden is on the warehouse owner to demonstrate to Customs a clear delineation between the three categories of goods."[68] Contrary to Scioto's assertion in its Written Comments, Alno failed to make this delineation and, by its own admission during TRLED's on-site verification, did not have tracking systems in place that would have allowed Alno to determine the country of origin of unmarked, commingled WCV that was stored in the finished goods warehouse.[69]

Second, Scioto cannot substantiate its claim that CBP failed to request pertinent information from Alno during the investigation. As discussed above, despite TRLED's repeated requests for information, such as Packing Check-Lists and documentation for shipments of WCV, Alno failed to produce such documents.[70]

In sum, the administrative record shows commingled inventory of WCV by evidence of: Alno's purchases of WCV from China during the period of investigation, during which time Alno also sent WCV to Scioto; Alno's admitted lack of sufficient tracking capabilities to demonstrate the country of production for all of the WCV shipped to Scioto; photographs taken during TRLED's on-site verification showing unmarked WCV in Alno's finished goods warehouse; and Alno's failure to provide records tracing the production of the WCV it sent to Scioto. Accordingly, it is reasonable for R&R to conclude that Alno sent Scioto Chinese-origin WCV that was subject to the AD/CVD orders on WCV (*i.e.*, covered merchandise).

## II.    Haiyan Group Exercised Complete Control Over the Production of WCV, Including Whether Scioto Received WCV Produced in China or Malaysia.

Pursuant to the Order, R&R herein also considers the extent of Haiyan Group's control over Scioto and Alno, as well as Haiyan Group's control of the decision-making process and Scioto's ownership of Alno when Alno admitted that it sent transshipped WCV to CTG.[71]

Scioto's and Alno's parent company, Haiyan Group, exerts complete control over the production of WCV that Scioto receives. As Scioto describes in its RFI Response:

> Haiyan Group ultimately has final say over what products can be produced in Malaysia by Alno and in what order purchase orders are produced and shipped to Scioto from Alno, after consultation with Scioto regarding the demand for goods. Scioto can request certain SKUs in purchase orders or to request

---

[67] *Id.* at 26.
[68] Order at 20 (emphasis added).
[69] *See* Verification Report (Public Version), at 6–7.
[70] *See supra* at 5, 8.
[71] *See* Order at 13, 15–17.

certain orders to come more quickly, <u>but they are at Haiyan Group's discretion for this production to go as planned</u>.[72]

Importantly, Haiyan Group's control over Alno's production of WCV existed when Scioto owned Alno. According to Scioto, "{p}rior to July 1, 2022, when Scioto owned Alno, Haiyan Group still funded Alno's operations and <u>directed Alno on how to produce the goods made at Alno's facilities, when and how to the ship the goods from, and how to package the goods made at Alno</u>."[73]  Thus, while Scioto owned Alno at the time, it appears that Haiyan Group had decision-making authority as to where WCV would be manufactured and how Alno fulfilled purchase orders, including orders from CTG.

Other documents produced by Scioto during the EAPA investigation reflect Haiyan Group's involvement with the manufacture of WCV that was used to fulfill Scioto's purchases. As detailed above, in 2021 and 2022, Scioto and Alno sent emails containing Scioto's [                    Description of Items                    ] to [Company], Haiyan Group's subsidiary and a Chinese manufacturer of WCV.[74]  These emails indicate that communications regarding the manufacture of WCV to be shipped to Scioto were funneled through this same subsidiary.

In response to this record evidence, Scioto asserted in its Written Comments that "even if the Haiyan Group exerts control over the production of the WCV that Scioto receives, the evidence on the record, including all the production documents submitted by Alno, demonstrate that the Haiyan Group ensured that the WCV shipped to Scioto was produced in Malaysia."[75]  Scioto did not point to anything in the record to support this assertion.

Scioto then contended that "R&R is using the corporate structure to create innuendo about what might have happened instead of dealing with the record evidence demonstrating what did happen."[76]  Once again, Scioto's claim lacks merit as R&R cites to specific evidence in support of its conclusion, as demonstrated above.  Scioto's arguments amount to a disagreement with CBP, which, as the Court stated, "is not a basis for disturbing the agency's findings."[77]

R&R concludes that although Scioto's and Alno's ownership by a Chinese company alone is insufficient to establish transshipment or evasion, in this case, Scioto had little to no input regarding the production of WCV or the country of origin of the WCV it received.  Rather, it was Haiyan Group that decided whether the WCV sent to Scioto (and other customers) would be produced in China or Malaysia.  Therefore, Haiyan Group had the ultimate discretion to determine whether Scioto would receive Chinese-origin or Malaysia-origin WCV.  When this level of discretion is tied together with Scioto's and Alno's insufficient tracking of raw materials, inventory, and finished merchandise, it leaves Scioto with no way of knowing the country of origin of the WCV it received or for Alno to know which customer received Malaysian-origin versus Chinese-origin merchandise.

---

[72] Scioto RFI Response (Public Version), at 13 (emphases added).

[73] *Id.* at 20 (emphasis added).

[74] *See, e.g.*, Scioto RFI Response (Business Confidential Version), at Ex. II-9 (Emails 6000s), at pp. 3175, 3210, 3219, 3286.

[75] Scioto's Written Comments (Public Version), at 26.

[76] *Id.* at 27.

[77] Order at 22 (citing *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966); *SeAH Steel VINA Corp. v. United States,* 950 F.3d 833, 842–43 (Fed. Cir. 2020)).

PUBLIC VERSION

As the Court acknowledged when it affirmed certain portions of R&R's June 12 FAD, the evidence in the record is mixed.  However, as instructed by the Court, R&R has reconsidered the evidence, with a renewed focus on evidence that detracts from R&R's original conclusion.[78] Reviewing the record as a whole, and in particular, based on the evidence described above, R&R finds that the record supports a conclusion that Scioto entered covered merchandise into the customs territory of the United States through evasion, as defined by 19 U.S.C. § 1517.

### III.    Decision

Based upon its review of the administrative record on remand, for the reasons discussed above, the ultimate conclusion reached in the R&R June 12 FAD is **REVERSED**,[79] and R&R concludes that Scioto entered covered merchandise into the United States through evasion, as defined in 19 U.S.C. § 1517(a)(5).

Sincerely,

JACINTO P JUAREZ JR
Digitally signed by
JACINTO P JUAREZ JR
Date: 2025.01.30
11:42:34 -05'00'

Jacinto P. Juarez, Jr.
Supervisory Attorney-Advisor
Regulations and Rulings, Office of Trade
U.S. Customs and Border Protection

Approved by:

ALICE A KIPEL
Digitally signed
by ALICE A KIPEL
Date: 2025.01.30
12:26:17 -05'00'

Alice A. Kipel
Executive Director,
Regulations and Rulings, Office of Trade
U.S. Customs and Border Protection

---

[78] *See* Order at 12.
[79] Although the ultimate conclusion reached in the June 12 FAD is reversed, unless otherwise discussed herein, the portions of the June 12 FAD affirmed by the Court and/or not contested before the Court are left intact.