## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

_____
)
)
AMERICAN KITCHEN CABINET ALLIANCE,  )
)
              Plaintiff,  )
)
    v.  )
)
UNITED STATES,  )
)
            Defendant,  )
)
)
SCIOTO VALLEY WOODWORKING, INC.  )
d/b/a VALLEYWOOD CABINETRY,  )
)
          Defendant-Intervenor.  )
)
_____  )

Before: Hon. Lisa W. Wang, Judge

Court No. 23-00140

**<u>NON-CONFIDENTIAL VERSION</u>**

### <u>SCIOTO VALLEY WOODWORKING, INC.'S</u><br><u>COMMENTS IN OPPOSITION TO REMAND REDETERMINATION</u>

Nithya Nagarajan, Esq.
Stephen Brophy, Esq.

HUSCH BLACKWELL, LLP
1801 Pennsylvania Avenue NW
Suite 1000
Washington, DC 20006
Tel. (202) 378-2357

_Counsel for Scioto Valley Woodworking, Inc._

Dated: April 2, 2025

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  BACKGROUND ....................................................................................................1

III.  STANDARD OF REVIEW ...................................................................................5

IV.  ARGUMENT ..........................................................................................................7

  A.  CBP's Remand Determination Is Legally Deficient as It Relies on    Speculation, Not Substantial Evidence of Evasion ........................................7

  B.  CBP's Finding that Scioto Did Not Have Sufficient Controls in Place to Prove That All of Its WCV Imports were of Malaysian Origin is Not Supported by the Record, as CBP has Previously Held .........................................................................10

    1.  R&R Has Previously Found that Alno's Production Documentation Demonstrate    that the Relevant Goods Were Produced in Malaysia .........................................10

    2.  Alno and Scioto Provided All of the Production Documents Requested by CBP ........11

    3.  The Ability to Track Inventory Movement from Raw Materials is Immaterial............13

  C.  The Fact that Alno Purchased Some WCV from China Does Not Support a Finding that Any of Those Cabinets were Shipped to Scioto ....................................14

  D.  The Missing Packing Check-Lists are Immaterial to the Issue Under Investigation 17

  E.  The Information Submitted by Scioto was Complete and Reliable ...........................17

  F.  The Additional Warehouse at Issue Does Not Support a Finding that Alno Shipped Chinese-Origin Goods to Scioto...................................................................19

  G.  Neither the Relationship Amongst Haiyan Group, Alno, and Scioto Nor the Previous Issue with CTG Support an Affirmative Determination.........................22

    1.  The Level of Control by the Haiyan Group Does Not Support an Affirmative Determination........................................................................................23

    2.  Alno's Past Act of "Evasion" Cannot be Used to Impose Duties on Imports by Scioto 25

  H.  Scioto's Due Process Rights Were Violated...................................................27

  I.  CBP Cannot Impose Antidumping or Countervailing Duties on Good    Produced in Malaysia .............................................................................29

V.  CONCLUSION .....................................................................................................30

# TABLE OF AUTHORITIES
## Cases

*Ad Hoc Shrimp Trade Enf't Comm. v. United States*, 632 F. Supp. 3d 1369, 1374 (CIT 2023) .....6

*Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) ........................6

*Am. Kitchen Cabinet All. v. United States*, 745 F. Supp. 3d 1270, 1279-1282 (Ct. Int'l Trade 2024) ...............................................................................................................................23, 24

*Am. Pac. Plywood, Inc.*, 2023 WL 4288346, at *4 (Ct. Int'l Trade June 22, 2023).....................6

*American Kitchen Cabinet Alliance v. United States*, Slip. Op. No. 24-122 (Ct. Int'l Trade Oct. 31, 2024)....................................................................................................................3, 8

*Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022)..........27

*Bell Supply Co., LLC v. United States*, 83 F. Supp. 3d 1311, 1320 (Ct. Int'l Trade 2015)............29

*Bowe–Passat v. United States,* 17 CIT 335, 343 (1993) .............................................................13

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 289 n.4, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974) ..............................................................................................................28

*Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962) 6

*CEK Grp. LLC v. United States*, 633 F. Supp. 3d 1369, 1373 (CIT 2023)...................................6

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, (1938) ...........................................................6

*Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1341 (2021).........................27

*Ikadan Sys. USA, Inc. v. United States*, Ct. No. 21-00592, 2023 WL 3962058, at *9 (Ct. Int'l Trade June 13, 2023).................................................................................................................6

*Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329, 1337 (Fed. Cir. 2015).......................27

*Londoner v. Denver*, 210 U.S. 373 (1908) ...............................................................................27

*Motor Vehicle Mfrs. Ass'n of U.S.,* 463 U.S. at 43, 103 S.Ct. 2856...............................................6

*Nereida Trading Co. v. United States*, 34 C.I.T. 241, 248, 683 F. Supp. 2d 1348, 1355 (2010) ...27

*Royal Brush Mfg. v. United States*, 483 F. Supp. 3d 1294, 1305 (2020)......................................27

*Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250, 1253 (Fed. Cir. 2023) ...........................28

NON-CONFIDENTIAL VERSION

*Shanxi Hairui Trade Co. v. United States*, 503 F. Supp. 3d 1307, 1311 (CIT 2021), aff'd, 39 F.4th 1357 (Fed. Cir. 2022) ........................................................................................................7

*Skyview Cabinet USA, Inc. v. United States*, No. 1:22-CV-00080, 2023 WL 4073781, at *5 (Ct. Int'l Trade June 20, 2023) ........................................................................................................6

*Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) ...................................7

## Statutes

19 U.S.C. §1517(a)(5)(A)........................................................................................................26

19 U.S.C. §1592 ......................................................................................................................26

19 U.S.C. 1677b(a)(3) .............................................................................................................29

19 U.S.C 1677j(b) ....................................................................................................................14

19 U.S.C.  §1517(a)(3) ............................................................................................................29

19 U.S.C. § 1673 .....................................................................................................................29

19 U.S.C. §§ 1677j ..................................................................................................................29

19 U.S.C. §1517(c)(3)(A) ..........................................................................................................8

19 U.S.C. §1517(d) .............................................................................................................27, 29

19 U.S.C. 1517(b)(3) ...............................................................................................................14

19 C.F.R. §165.6(a) ...................................................................................................................8

## Other Authorities

NY N313752 (August 31, 2020)...........................................................................................14, 22

## I.    INTRODUCTION

On behalf of Defendant-Intervenor Scioto Valley Woodworking, Inc. d/b/a Valleywood Cabinetry ("Scioto" or "Valleywood" or "Defendant-Intervenor"), and pursuant to the Court's Order of October 31, 2024 (ECF No. 62), we hereby submit Scioto's comments in opposition to the Remand Redetermination ("Remand Results") filed by U.S. Customs and Border Protection ("CBP") on January 30. 2025, ECF No. 73 (RCR 3, RPR 20) Appx168333-68343 and Appx04093-04103.[1]  Commerce filed the administrative record for the Remand Redetermination on February 13, 2025 (ECF No. 75 and 76).

As argued below, the record does not support CBP's Remand Redetermination, which is arbitrary and capricious and an abuse of discretion.  Moreover, the decision was clearly not based on the substantial evidence standard as CBP cites to no actual evidence on the record supporting its conclusion that Scioto engaged in evasion.  Rather, CBP has based its decision purely on innuendo and ignored or misinterpreted record evidence to support such innuendo.  Plaintiffs respectfully request that the Court again remand this case to CBP with instructions to reconsider its Final Remand Results consistent with the findings of this Court and affirm the Office of Regulation and Rulings' ("R&R") original administrative review determination, dated June 12, 2023.

## II.    BACKGROUND

The appeal in this case stems from the administrative review determination by R&R, Office of Trade, U.S. Customs & Border Protection ("CBP") in Enforce and Protect Act ("EAPA") Case

---

[1]  References to the administrative record for the *Final Remand Results* are shown as "RCR" (remand confidential record) and "RPR" (remand public record). References to the initial administrative record submitted to the Court on August 17, 2023, ECF No. 23, are shown as "CR" (confidential record) and "PR" (public record).

Number 7705.  Appx168269.  In that decision, R&R reversed the affirmative determination of evasion found by CBP's Trade Remedy Law Enforcement Directorate ("TRLED") on January 31, 2023. Appx168198- 168223.  In its administrative review determination and based upon a review of the record evidence, R&R determined that there was "not substantial evidence in the record that covered merchandise was entered into the customs territory of the United States through evasion." *Id.* R&R thoroughly reviewed Alno's production records and confirmed goods sent to Scioto were produced in Malaysia finding that there was "substantial evidence on the record demonstrating that the WCV at issue were produced in Malaysia based upon the aforementioned production records, and the presence of ample raw materials and machinery at Alno's raw materials warehouse in Malaysia." *Id.*

R&R explained that there was "extensive documentation" of raw materials at Alno's warehouse in Malaysia and Alno's ability to produce, and production of, wooden cabinets from those raw materials. *Id.* R&R concluded that the record contained substantial evidence linking Alno's production records to Scioto's entries into the United States. *Id.*  R&R concluded that Scioto and Alno provided "substantial documentary evidence to support a conclusion that the wooden cabinets Scioto imported into the United States was manufactured by Alno in Malaysia," which was supported by CBP's ability to corroborate Alno's production capabilities during the verification in Malaysia. Appx168276.

R&R faulted TRLED for making no mention of production tracking inspection reports or production schedules submitted by Alno, both of which support that Alno produced the wooden cabinets in Malaysia. Appx168273. R&R extensively analyzed this record evidence, which demonstrated that Alno "*did* produce the wooden cabinets at issue in Malaysia." Appx168272 (emphasis in original). For example, R&R explained that the batch number listed on Alno's

Finished Product sheet matches the batch number listed on Alno's production tracking inspection sheets and the batch number listed in the production batch lot checklist for Alno's factory in Malaysia. Appx168273.  The production batch checklists link the production batch number to a Scioto purchase order number and a line item on an entry number. *Id.* The production batch number from the production batch checklists also matches the batch number on the production schedule, which links a batch number to Scioto's purchase order numbers. *Id.* R&R determined that, taken together, this information supports the conclusion that Alno produced the wooden cabinets in Malaysia. *Id.*  R&R determined that "the record is devoid of any evidence of shipments in the form of finished wooden cabinets from China to Malaysia, in terms of Malaysian import records, and then to the United States, to Scioto, in terms of U.S. import records." Appx168276. R&R determined that Alno tracked inventory after completing the production process, which meant that it did track inventory movements for finished goods, even if it did not track during the production process. Appx168276.

Overall, R&R addressed each of the issues raised by TRLED and determined that none of them, either singly or in combination, provided substantial evidence of evasion and did not support the use of adverse inferences. Appx168272.  Based upon its *de novo* review of the administrative record, R&R reversed the evasion determination. Appx168283.

This administrative review determination was subsequently appealed by the American Kitchen Cabinet Alliance, which resulted in this remand. *American Kitchen Cabinet Alliance v. United States*, Slip. Op. No. 24-122 (Ct. Int'l Trade Oct. 31, 2024).  In its decision, the Court affirmed R&R's analysis of the documents and held that Customs' determination that Alno's documentation was reliable was reasonable. *Id.* at 22.  The CIT also found no error with R&R's determination that adverse inferences were not warranted against Alno or Scioto. *Id.* at 25.

The Court only remanded two issues to CBP for further explanation because R&R did not directly address these issues in its administrative review determination:  1) the extent of operational control exercised by Scioto's and Alno's parent company, Qingdao Haiyan Group Co. Ltd. ("Haiyan Group"), as to the production and shipment of WCV and the relevance of "Alno's past acts of evasion", and (2) the contents of Alno Industry SDN BHD's ("Alno") — Scioto's Malaysian supplier of WCV — finished goods warehouse; and (2) the extent of operational control exercised by Scioto's and Alno's parent company, Qingdao Haiyan Group Co. Ltd. ("Haiyan Group"), as to the production and shipment of WCV.  *Id.* at 21-25.

Despite the limited nature of the remand, CBP has taken the Court's remand as an opportunity to reverse its previous administrative review decision in its entirety, including with respect to issues affirmed by the Court.  On January 6, 2025, CBP issued its Draft Remand Results (RCR 1, RPR 11), in which CBP reversed its previous negative determination. Appx168286- 168294 and Appx04007- 04015.  On January 17, 2025, Scioto submitted its comments to CBP in opposition to the Draft Remand Results (RCR 2, RPR 17), Appx168296- 168331 and Appx04051-04087.  On January 30. 2025, CBP filed the Remand Results with the Court, failed to adequately address Scioto's comments, and made no substantive changes to its Draft Remand Results.

In order to reach its new affirmative determination, CBP ignores record evidence.  As argued below, the remand redetermination issued by CBP is arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence, and otherwise not in accordance with law.  It suffers from the same legal flaws as TRLED's original determination that was reversed by R&R. Specifically, it relies on innuendo rather than any actual substantial evidence on the record to conclude that Scioto engaged in evasion during the period of investigation and ignores

substantial evidence that Scioto did not engage in evasion. In the final Remand Results, CBP concludes that 1) Scioto did not provide sufficient information to prove that all of its WCV imports into the United States were of Malaysian origin; (2) Scioto — through its unverified reliance on information provided by other entities — was in fact not in a position to be able to support such a claim; and (3) the assurances and controls of those other entities have been shown to be unreliable and/or unjustified.  Remand Results at 7 (Appx168339).  CBP finds that these alleged facts, in combination with the presence of commingled merchandise in Alno's warehouses and the complete control Haiyan Group exercises over the WCV production process undermine Scioto's claims that CTG was **[                              ]** to receive transshipped WCV and that the documents produced to CBP during the investigation demonstrate that all of the WCV shipped to Scioto was produced in Malaysia. *Id.*

The Court remanded this case for the limited purpose of clarifying two discrete factual issues: the contents of the finished goods warehouse and the operational control of Haiyan Group. CBP's Remand Results far exceed this mandate by reopening and reversing prior findings affirmed by the Court, including its approval of R&R's analysis and rejection of adverse inferences. This exceeds CBP's authority on remand and should be reversed.

## III.    STANDARD OF REVIEW

The statute directs the court to examine "whether the Commissioner fully complied with all procedures under the statute and "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2). "While the agency bases its determination on substantial evidence and the court reviews the agency's actions to assess whether they are arbitrary and capricious, 'both standards require an assessment based on a reasonableness standard.'" *CEK Grp. LLC v. United States*, 633

5

F. Supp. 3d 1369, 1373 (CIT 2023) (quoting *Ad Hoc Shrimp Trade Enf't Comm. v. United States*, 632 F. Supp. 3d 1369, 1374 (CIT 2023)).

Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skyview Cabinet USA, Inc. v. United States*, No. 1:22-CV-00080, 2023 WL 4073781, at *5 (Ct. Int'l Trade June 20, 2023) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, (1938)); *see also Am. Pac. Plywood, Inc.*, 2023 WL 4288346, at *4 (Ct. Int'l Trade June 22, 2023) (the question on judicial review "is therefore whether the administrative record shows that Customs applied substantial evidence review—not whether substantial evidence supports the agency's findings.") (quoting *Ikadan Sys. USA, Inc. v. United States*, Ct. No. 21-00592, 2023 WL 3962058, at *9 (Ct. Int'l Trade June 13, 2023)).

The scope of the arbitrary and capricious standard is narrow; courts are not to substitute their judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). However, Customs must have "examine{d} the relevant data and articulate{d} a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)). The U.S. Court of Appeals for the Federal Circuit has explained:

> Courts have found an agency's decision to be arbitrary and capricious when the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [          ] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (alteration in original) (quoting *Motor Vehicle Mfrs. Ass'n of U.S.,* 463 U.S. at 43, 103 S. Ct. 2856). Agency action constitutes an abuse of discretion "where the decision is based on an erroneous

interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors."  *Skyview*, 2023 WL 4073781, at *4 (quoting *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).

Under EAPA, when an interested party requests administrative review of a TRLED determination, R&R reviews the determination de novo. 19 U.S.C. § 1517(f)(1). R&R must "review the entire administrative record upon which the initial determination was made ...." 19 C.F.R. § 165.45. Moreover, "{a} determination not based on the whole record should be remanded for reconsideration." *Ad Hoc Shrimp Trade Enf't Comm.,* 632 F. Supp. 3d at 1375; *see also Shanxi Hairui Trade Co. v. United States*, 503 F. Supp. 3d 1307, 1311 (CIT 2021), *aff'd*, 39 F.4th 1357 (Fed. Cir. 2022) ("{W}hen addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action was reasonable given the circumstances presented by the whole record."); *JSW Steel (USA) Inc. v. United States*, 466 F. Supp. 3d 1320, 1328–29 (CIT 2020).

## IV.   ARGUMENT

### A.   CBP's Remand Determination Is Legally Deficient as It Relies on Speculation, Not Substantial Evidence of Evasion

This investigation concerns only one question:  whether Scioto imported covered merchandise from Alno in Malaysia through evasion.  Under the statute, CBP must determine that Scioto actually did import covered merchandise through evasion and that determination must provide a rational connection between the facts found and the choices made.  Moreover, CBP must use a substantial evidence standard.

As argued further below, CBP's Remand Results fail to adhere to these standards.  Instead of citing to evidence that Scioto did enter covered merchandise through evasion, the Remand

Results rely on speculation on what might have happened.  CBP states that certain documents "demonstrate that Alno purchased finished merchandise from China and suggest that Alno **may have shipped** Chinese-origin WCV to Scioto." Remand Results at 4 (Appx168336). It also states that "CBP **cannot confirm** that Alno did not receive other shipments of WCV from [

] that were subsequently transshipped to Scioto." *Id.* at 5 (Appx168337).  CBP also states that "the fact that some shipments received by Scioto contained merchandise produced in Malaysia, in light of other facts discussed herein, leads R&R to conclude that these documents **do not conclusively establish** that Scioto received only WCV that was produced in Malaysia." *Id.* at 8, fn 64 (Appx168340).  At no point in its decision does CBP cite to any documentation or other substantial evidence demonstrating that Alno actually shipped covered merchandise to Scioto.  In fact, the documentary evidence submitted by Alno demonstrates that the merchandise shipped to Scioto was produced in Malaysia as R&R found in its Administrative Review Determination.  CBP previously cited to this evidence and found that substantial evidence supported a negative determination.

Given the inferences and innuendo relied upon by CBP in the Remand Results to reach an affirmative determination of evasion, CBP is not using a substantial evidence standard.  Rather, it seems to be applying adverse inferences, even though it does not claim to be doing so and provides no analysis of how adverse inferences would be appropriate under 19 U.S.C. §1517(c)(3)(A) or 19 C.F.R. §165.6(a).  As CBP knows, it already determined that adverse inferences were not warranted in this case in its Administrative Review Determination and that decision was affirmed by the CIT. *American Kitchen Cabinet Alliance v. United States*, Slip. Op. No. 24-122 (Ct. Int'l Trade Oct. 31, 2024).  CBP's reliance on alleged gaps in the record— without making any finding that Scioto or Alno failed to cooperate—is an impermissible use of

adverse inferences under 19 U.S.C. § 1517(c)(3)(A). The statute authorizes adverse inferences only where the agency finds that a party has "failed to cooperate by not acting to the best of the party or person's ability." Scioto and Alno submitted extensive documentation and responded to every request made during the investigation. Despite this, CBP speculates without evidentiary support that "Alno may have shipped Chinese WCV" to Scioto." If CBP believed that the record was incomplete or that a party was not forthcoming, it shall make a finding of non-cooperation under the statute and provide an explanation of how the standard for adverse inferences was met. It did neither. Instead, CBP improperly substitutes supposition for fact. That is not the law.

In short, CBP's Remand Results do not demonstrate that the agency actually applied a substantial evidence standard because it cites to no substantial evidence. *Am. Pac. Plywood, Inc.*, 2023 WL 4288346, at *4 (Ct. Int'l Trade June 22, 2023). Moreover, the Remand Results are arbitrary and capricious because the agency entirely failed to consider an important aspect of the problem, it offered an explanation for its decision that runs counter to the evidence before the agency, and the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. Finally, the Remand Results constitute an abuse of discretion because the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence or represents an unreasonable judgment in weighing relevant factors. As argued below, the production and sales records demonstrate that goods imported by Scioto were produced in Malaysia. CBP's Remand Results are simply not reasonable in light of this evidence. In addition, despite the fact that Scioto submitted detailed comments citing substantial evidence in response to the Draft Remand Results, CBP either ignored or did not adequately address those comments.

**B.     CBP's Finding that Scioto Did Not Have Sufficient Controls in Place to Prove That All of Its WCV Imports were of Malaysian Origin is Not Supported by the Record, as CBP has Previously Held**

1.     R&R Has Previously Found that Alno's Production Documentation Demonstrate that the Relevant Goods Were Produced in Malaysia

In its Remand Results, CBP claims that "neither Alno or Scioto can substantiate that only WCV that was produced in Malaysia was used for all of Alno's shipments to Scioto" and that the administrative record does not allow for accurate tracing of the exact WCV that Alno used to fulfill its purchase orders to Scioto…." Remand Results at 5 (Appx168337).  This is not accurate and is contrary to CBP's own findings in its administrative review determination.  It is an unsubstantiated reversal of R&R finding that Alno's production records linked to specific purchase orders, commercial invoices, and entry numbers for WCV imported by Scioto:

> The record evidence demonstrates not only that Alno *could* produce WCV in Malaysia, but that Alno *did* produce the WCV at issue in Malaysia. Production documentation, including FPID sheets, production tracking inspection reports, and production schedules, submitted by Alno, link specific production batch records from Alno's factory in Malaysia to specific purchase orders, commercial invoices, and entry numbers for WCV which Scioto imported, and which are the subject of this EAPA investigation.

Administrative Review Determination at 13 (Appx168272).

> No mention is made in the January 31st Determination of the production tracking inspection reports, and production schedules, submitted by Alno. The record evidence supports a conclusion that Alno did produce the WCV in Malaysia. More specifically, the batch number listed on Alno's FPID sheet, reproduced in the January 31st Determination, [                ] matches the batch number listed on Alno's production tracking inspection sheets, [             ], and the batch number, [              ] listed in the production batch lot checklist for Alno's factory in Malaysia. The production batch checklists link the production batch number [              ] to a Scioto purchase order number [            ], a SKU [              ], and a line item on an entry number (e.g., [            ]7716, entry line 6). The production batch number from the production batch checklists [              ] also matches the batch number on the production schedule [             ] The production schedule links a batch number, [              ], to Scioto's purchase order numbers [              ]. We note that Alno's August 25, 2022 CF 28 Response Part VII also listed different batch numbers that are unrelated to the FPID sheet reproduced in the January 31st Determination, such as

10

> batch nos. **[                                                ]** supporting a conclusion that
> Alno also produced other batches of WCV in Malaysia and that these WCV were
> not produced in China. Alno's August 25, 2022 CF 28 Response Part VIII Part 2
> also contains some production tracking inspection sheets with the matching batch
> number **[              ]**. The matching batch number in the FPID and production
> documents (which are linked to specific entries made by Scioto) strengthens the
> claim that Alno produced the WCV at its factory in Malaysia, which were then
> imported by Scioto, and that the WCV were not manufactured by Qingdao Haiyan
> in China.

Administrative Review Determination at 14 (Appx168273).  Furthermore, the CIT affirmed

R&R's analysis of the documents and held that Customs' determination that Alno's

documentation was reliable was reasonable. *American Kitchen Cabinet Alliance v. United States*,

Slip. Op. No. 24-122 (Ct. Int'l Trade Oct. 31, 2024) at 22.  These production documents are by

themselves substantial evidence that the goods imported by Scioto were produced in Malaysia.

CBP's sudden decision to ignore these documents as insufficient, is not reasonable, contradicts

the record evidence and must be reversed.

       2.    <u>Alno and Scioto Provided All of the Production Documents Requested by CBP</u>

    CBP's determination that neither Alno nor Scioto can substantiate that only WCV that was

produced in Malaysia was used for all of Alno's shipments to Scioto is simply incorrect and is

not supported by the record. The record demonstrates that Alno can trace the production of a

particular product in Malaysia to a shipment of that product to a particular customer in the

United States, as R&R already found in its administrative review determination.  In fact, CBP

does not even reverse its previous determination that Alno can link production batches to specific

entries made by Scioto. Rather it now claims that Alno only linked some production batches to

specific entries made by Scioto. Remand Results at 8, fn. 64 (Appx168340).  This claim is

misleading and ignores the fact that Alno produced such production documents every time that

CBP requested them for a particular entry.  CBP could have asked for production documents for

other entries, and Alno would have provided them.  But CBP did not ask for any additional

production documents, even though it now claims that some production documents are not on the record.  In fact, CBP points to no Scioto entries for which Alno was not able to provide Malaysian production documents.

Over the course of the investigation, TRLED requested sales and production documentation for fifteen entries of WCV imported from Alno by Scioto: one entry pursuant to a CF28 Request for Information before the initiation of the investigation; six entries in the initial questionnaire issued to Alno; four more entries in the Site Visit Engagement Letter; and then four more entries during the verification. Appx082070, Appx084132, Appx166440, Appx168114. For all of these entries, Alno submitted sales and production documentation, including FPID documents, production tracking inspection reports, and production schedules. Scioto – CF28 Response (June 1, 2022),Appx083719-083855, Appx082268-82269, Appx083637-083714, Appx082365-083635, Appx 082326-082343, Appx082344-082360, Appx082361-082362); Alno – RFI Final Response (August 25, 2022), Appx086395-086780, Appx084480-084484, Appx086395-086780, Appx086781-088902, Appx086318-086337, Appx086338-086342, Appx086285-086291; Verification Exhibits 2-5 and 11-14, Appx166470-167324 and Appx167426-167694.

These documents linked the specific production batch records from Alno's factory in Malaysia to specific purchase orders, commercial invoices, and entry numbers of the WCV that were imported by Scioto, and which are the subject of this EAPA investigation.  Overall, TRLED requested sales and production documentation for fifteen entries of WCV imported from Alno by Scioto and Scioto was able to demonstrate that the WCV in those entries were produced in Malaysia.  CBP did not request additional information on these entries or suggest that the documents provided were insufficient to demonstrate production in Malaysia. Nor did TRLED request sales and production documents for any other Scioto entries.

R&R cannot now claim that Alno only provided production documents linking "certain" Malaysian production to imports by Scioto.  If CBP had questions about other specific entries, it was required to request the information from Alno or Scioto through a supplemental questionnaire or at verification.  In the antidumping context, the Court has required the agency to inform respondents of what information is really wants and provide respondents with a reasonable opportunity to meet its evidentiary burden finding that "…. the review process is bilateral and interactive: and a "party must be afforded a reasonable opportunity, however, to meet its burden and to satisfy evidentiary concerns known only by the **[      ]** staff. *Bowe– Passat v. United States,* 17 CIT 335, 343 (1993).  In this case, CBP had multiple opportunities to request additional documents or information if it had any questions about the evidence on the record.  Scioto and Alno made multiple submissions to the agency and underwent several days of verification, but CBP did not inform then that there were any evidentiary gaps that needed to be filled and its failure to do so cannot now be used against Alno and Scioto.

CBP's conclusion that neither Alno nor Scioto can substantiate that only WCV that was produced in Malaysia was used for all of Alno's shipments to Scioto is simply incorrect.   As explained above, Alno can trace the production of a particular product to a shipment of that product to a particular customer in the United States, as R&R found in its administrative review determination.

    3.    <u>The Ability to Track Inventory Movement from Raw Materials is Immaterial</u>

R&R also faults Alno for not being able to track inventory movement from raw materials through production to finished goods. Remand Results at 8 (Appx168340**)**.  This is irrelevant.  In this case, the ability to track raw materials to finished goods is not necessary in order to determine that evasion did not occur.  CBP has already held that the production of cabinets from raw materials of various origins constitutes a substantial transformation such that the country-of-

origin is the country in which the cabinets themselves are produced. NY N313752 (August 31, 2020) (finding that the production of assembled and ready-to-assemble kitchen cabinets in Malaysia from raw materials of various origin constituted a substantial transformation such that Malaysia was the country-of-origin).  In this case, the cabinets are produced in Malaysia, the country-of-origin is Malaysia, and only Malaysian cabinets were exported to Scioto.  There is no legal basis to find evasion just because some of the inputs might have been Chinese.

This is not a circumvention case involving the completion or assembly of merchandise in a foreign country. 19 U.S.C 1677j(b).  If it were a circumvention or scope case, CBP would have referred the issue the U.S. Department of Commerce under 19 U.S.C. 1517(b)(3).  Nor is this a case involving a country-of-origin determination.  The only issue in this case is whether Alno shipped finished cabinets to Scioto that were produced in China.  The production documents submitted by Alno demonstrate that the finished cabinets shipped to Scioto were produced in Malaysia, which is consistent with R&R's Administrative Review Determination.   Thus, the origin of the raw materials is irrelevant to CBP's evasion determination and the lack of a system to track raw materials to finished goods is also irrelevant.

### C.    The Fact that Alno Purchased Some WCV from China Does Not Support a Finding that Any of Those Cabinets were Shipped to Scioto

Alno admitted purchasing some WCV from China.  However, as R&R found in its administrative review determination, the evidence shows that those purchases from China were related to shipments to [        ] based on a comparison of the SKUs shipped to [        ] versus the SKUs shipped to Scioto. Administrative Review Determination at 21 (Appx168280).  As R&R found in that determination, a review of the SKUs for the WCV imported by [        ] shows that the SKUs are not the same as the SKUs for WCV imported by Scioto. *Id.*  In fact, R&R only identified two Scioto SKUs that were even similar to the SKUs imported by [        ]:  Scioto

SKUs [              ] and [              ] versus [      ] SKUs [              ] and

[                          ]. *Id.* at fn 60.  As R&R noted, some of the Scioto and [      ] SKUs

were similar, but none were identical and reasonably concluded that the evidence did not support

the proposition that Alno transshipped WCV to Scioto. *Id.* at 22 (Appx168280).

In its Remand Results, however, CBP now finds that a similarity in some SKUs is sufficient

to support an affirmative determination.  While still conceding that the SKUs are not identical,

CBP now finds that some of Scioto and [      ] SKUs correspond except for "variations in color

and finished." Remand Results at 4 (Appx168336). R&R fails to explain how color and finish

are less important than any other parts of the SKU.  The fact is that Alno shipped SKUs

[              ] and [                          ] to [      ].  It <u>did not</u> ship those same SKUs to

Scioto. The most similar SKUs shipped to Scioto contained a different color and finish:

[              ] and [          ].  Color and finish are part of the SKU and are sufficient to

demonstrate that the cabinets shipped to Scioto were different from the cabinets shipped to

[      ].  SKUs are designed to capture distinct product characteristics, including door style,

color, finish, and customer-specific packaging design requirements. Scioto Response to Request

for Information, dated August 25, 2022, at 37-38 (Appx088943-088944) and Alno Response to

Request for information, dated August 25, 2022, at 20 (Appx084178).  CBP's attempt to diminish

the importance of these distinctions disregards industry standards and fails to recognize that

variations in SKUs are clear indicators that products shipped to Scioto were not the same as

those shipped to [      ].

Moreover, in its second supplemental RFI response, Alno explained that it did not create its

own SKUs, but instead relied on the SKUs provided by each U.S. customer. Alno Second

Supplemental RFI Response dated September 26, 2022 at 4, (Appx137456).  Therefore, SKUs

[          ] and [                    ] were provided to Alno by [      ], while SKUs

[          ] and [            ] were provided to Alno by Scioto.  Alno would not be shipping

[      ] SKUs to Scioto, because that is not what Scioto ordered.  In short, the Remand Results do

not reflect the fact that SKUs are specific to both the cabinet and customer and are not fungible.

    R&R also argues that the documents from [            ] to Alno, including the Packing

Check Lists contain vague descriptions such as [                ],

[                    ], or [                          ].

Remand Results at 4 (Appx168336).  These descriptions, however, are references to purchases of

raw materials.  R&R fails to note that the Packing Check Lists from [              ] that

contained finished WCV listed the SKUs for the finished WCV purchased from China and that

these SKUs were product shipped to [      ], including [              ]. Alno Verification Exhibit

10 Exhibit VE-10, pdf pages 19-20 (Appx167406-Appx167407).  Alno also provided a

spreadsheet with all of its sales by customer, including the SKUs sold to those customers during

the period 2020-2022 from which CBP can determine which SKUs were shipped to [      ]

versus which SKUs were shipped to Scioto, which confirms that those SKUs were not shipped to

Scioto.  Alno Response to 2nd Supplemental Request for Information, dated September 26, 2022

at Exhibits 5-7 (Appx138410-138726).  Thus, the documents demonstrate which SKUs were

purchased from China, which SKUs were produced in Malaysia, and the customers to which

each SKU was shipped.  CBP's claim that Scioto and Alno cannot trace the production of a

particular product in Malaysia to a shipment of that product to a particular customer in the

United States is not supported by the record.  This explanation was provided to CBP in Scioto's

comments on the Draft Remand Results (Appx168319), but were never addressed in the Final

Remand Results.

**D.    The Missing Packing Check-Lists are Immaterial to the Issue Under Investigation**

CBP claims that Alno did not make a complete document production, despite having

numerous opportunities to do so.  Remand Results at 5 (Appx168337). CBP is referring to

TRLED's application of adverse facts available to Scioto because it allegedly failed to provide

certain Packing-Checklists.  In its administrative review determination, however, R&R

concluded that Alno did not act "perfectly," but that when Alno found the relevant documents,

later during the course of the verification, it tried to produce them "unsolicited" to TRLED.

Administrative Review Determination at 12 (Appx168271).  TRLED, however, would not accept

the documents. *Id.* at 11 (Appx168120).  Under these facts, R&R determined that adverse facts

available were not warranted and the CIT affirmed this decision. Now, however, CBP tries to use

the same facts against Scioto even though it does not claim that the missing Packing Checklists

related to Alno's shipments of WCV to Scioto.  In fact, these documents were not material to

whether Scioto imported any covered merchandise from Alno, as the Verification Report notes

that the requested Packing Check-Lists were related to **[        ]**: "{e}ventually Alno's counsel

returned with the requested Packing Check-Lists that related to **[        ]**".  Verification Report at

16 (Appx168120).  CBP is apparently using adverse inferences against Scioto without providing

any analysis of how this is appropriate under the statute and in spite of the fact that it previously

found that adverse inferences were not warranted.

**E.    The Information Submitted by Scioto was Complete and Reliable**

CBP also questions the reliability of the information Scioto produced as it apparently

discovered instance of hidden data in the emails submitted by Scioto, where columns of

information were redacted or obscured from view. Remand Results at 5 (Appx168337).  First,

CBP requested that Scioto submit all of its emails and other communication with Alno, Qingdao

Haiyan Group Co., Ltd, and Qingdao Haiyan Drouot Household Co., Ltd.:

> Provide all correspondence between any Scotio personnel and any Alno Industry SDN BHD personnel, any including all emails; all text messages; and all instant messages through Facebook, LinkedIn, WhatsApp, WeChat, etc.

> Provide all correspondence between any Scotio personnel and any Qingdao Haiyan Group Co., Ltd personnel, including all emails; all text messages; and all instant messages through Facebook, LinkedIn, WhatsApp, WeChat, etc.

> Provide all correspondence between any Scotio personnel and any Qingdao Haiyan Drouot Household Co., Ltd. personnel, including all emails; all text messages; and all instant messages through Facebook, LinkedIn, WhatsApp, WeChat, etc.

EAPA Case Number 7705 – Request for Information, dated July 8, 2022 at 11 (Appx084074).

CBP seems to be insinuating that Scioto altered information submitted to CBP. This is not true

and is not supported by the record. As a result of CBP's request, Scioto was required to

download an immense amount of information from its server for submission to CBP and the

emails were downloaded as is. If certain columns in a table were hidden or obscured, then that is

how it appeared in the original email. Moreover, the fact that CBP discovered his information

demonstrates that Scioto was not trying to hide anything and that all requested information was

provided to CBP in its original form. Nor does CBP explain how the obscured or hidden

information is relevant to its determination as to the issue of whether any WCV imported by

Scioto was produced in China. Most importantly, CBP had the opportunity to request additional

information from Scioto and Alno through supplemental questionnaires or verification if CBP

found any errors or inadequacies with the questionnaire responses.   CBP cannot now, at this very

late date, use allegedly missing information against Scioto when it has not opportunity to rectify

the issue.

CBP also claims that it "unable to rely on the accuracy and completeness of Alno's and Scioto's submissions, especially considering the volume of Scioto's production (Scioto provided over 30,000 pages of emails and correspondence alone)."  Remand Results at 5 (Appx168337).  Scioto does not understand how R&R can make this finding when Alno and Scioto only submitted the responses and documents requested by CBP.   R&R cannot now reasonably throw up its hands and claim that it cannot rely on this information because there is too much to review.

### F.    The Additional Warehouse at Issue Does Not Support a Finding that Alno Shipped Chinese-Origin Goods to Scioto

The CIT remanded the issue of the additional warehouse because the Administrative Review Determination only discussed the issue in the context of the adverse facts available issue.  The CIT held that "Customs has offered no explanation as to why boxes and pieces of WCV without country of origin or other markings are considered Malaysian-origin goods when those goods are commingled with similarly unmarked Chinese-origin goods, or why such an omission is not material to Customs' evasion determination" and that "{i}n a warehouse where potentially transshipped goods are commingled with non-transshipped and unlabeled goods, the burden is on the warehouse owner to demonstrate to Customs a clear delineation between the three categories of goods."  *American Kitchen Cabinet Alliance v. United States*, Slip. Op. No. 24-122 (Ct. Int'l Trade Oct. 31, 2024) at 20.

First, CBP's claim that Alno fulfilled customer orders from this additional warehouse is contradicted by the record. (Appx168339).  As found during the investigation and verification, this was an "additional warehouse", rather than the primary warehouse for storing finished goods. Verification Report at 9 (Appx168113).  The goods stored in this warehouse were not part of Alno's routine inventory operations for shipments to Scioto but were warehoused due to the inability to export to the United States as a result of both the ongoing civil litigation and the

EAPA case.  As explained during verification, this additional warehouse is where Alno was storing finished goods that their customers would not accept due to the civil litigations and EAPA case against Alno.  *Id.*  As CBP is aware, CTG filed a civil suit against Alno and rejected all containers that were already on the water en route to CTG. Request for an Investigation under the Enforce and Protect Act of Scioto Valley Woodworking, Inc. d/b/a Valleywood Cabinetry, dated February 3, 2022 at 8 (Appx080008) and Exhibit 4 (Appx080033) and Administrative Review Determination at 8 (Appx168267).  As a result, these containers were diverted and stored in the warehouse in question.  The temporary storage of these containers was an operational necessity driven by CTG's litigation and the EAPA investigation and not an attempt to conceal transshipment activities.

Second, CBP's claim that "…Alno did not have a production tracking system that would have allowed it to trace which customers received WCV that was produced in Malaysia versus China" is not supported by the record is contradicted by CBP's administrative review determination, as argued above.  Remand Results at 7 (Appx168339).  Alno has a tracking system in place in which it can trace specific Malaysian production batches to a specific shipment to a specific U.S. customer.   It can also identify from its supplier's Packing-Checklists whether any finished merchandise SKUs were imported by Alno from China.  Obviously, in such cases there would be no Malaysian production documents for those cabinets. Therefore, R&R's finding that Alno did not have a production tracking system that would have allowed it to trace which customers received WCV that was produced in Malaysia versus China is simply incorrect.

Moreover, the claim that the merchandise in the warehouse was simply commingled and indistinguishable is not supported by the record.  Remand Results at 7 (Appx168339).  The record shows boxes of different colors that at least have the U.S. customer's name on them, as

well as a variety of specific product information, and a PO number. Verification Report at

Attachment 7 (Appx168145- Appx168148).  Although the pictures are not clear, they should also

contain the SKU.

With respect to unmarked merchandise, the record only contains pictures of a single box. The

pictures show that the box with no marking was simply a cabinet door, and it is not even clear if

this was intended to be shipped given that the box does not even contain a customer

identification. *Id.* It is important to remember that this is just a warehouse in Malaysia.  None of

these goods have been entered into the United States.  Nor could such a box be exported to the

United States because it does not comply with U.S. marking laws, which require that imported

products be market with their country-of-origin.  19 C.F.R. Part 134.

Alno was absolutely able to distinguish WCV produced in Malaysia from WCV produced in

China.  If there was an item in that warehouse that CBP wanted Alno to determine its origin,

CBP had the opportunity to request such information.  CBP claims that Alno cannot substantiate

the claim that CBP failed to request pertinent information but never claims that CBP did request

information on any merchandise stored in the additional warehouse. CBP then cites to the failure

to provide certain Packing Checklists, an issue which CBP previously determined did not

warrant adverse facts available because Alno attempted to provide the missing Packing

Checklists. It was CBP which refused to accept those Packing Checklists.

In the antidumping context, the Court has also required the agency to inform respondents of

what information is really wants and provide respondents with a reasonable opportunity to meet

its evidentiary burden finding that "…. the review process is bilateral and interactive: and a

"party must be afforded a reasonable opportunity, however, to meet its burden and to satisfy

evidentiary concerns known only by the **[          ]** staff. *Bowe–Passat v. United States,* 17 CIT 335, 343 (1993). CBP failed to do so in this case.

Third, CBP once again relies on its finding that Alno could not track raw materials to specific shipments. Remand results at 8. As also argued above, the fact that Alno cannot track specific raw materials to a particular shipment to the United States is irrelevant in light of Alno's ability to track Malaysian production batches to particular U.S. shipments.

Finally, R&R faults Alno for marking the country-of-origin on the boxes rather than on the cabinets themselves. However, CBP has previously held that marking the cabinets themselves is not required and that marking the boxes is sufficient. *See* NY N313752 (August 31, 2020) (holding that marking the containers for cabinets reasonably indicates the country of origin and the individual cabinets are excepted from marking). Nor does R&R explain why marking the boxes is worse than marking the cabinets themselves.

In sum, as demonstrated numerous times on the record, Alno had the ability to determine where each item in the warehouse was produced and could provide records tracing the product of the WCV it sent to Scioto for all entries for which such documentation was requested by CBP. Again, Scioto cited this evidence and made these arguments in its comments on the Draft Remand Results (Appx168325), but CBP failed to address the evidence and arguments in its Final Remand Results.

## G. Neither the Relationship Amongst Haiyan Group, Alno, and Scioto Nor the Previous Issue with CTG Support an Affirmative Determination.

The Court ordered CBP to consider the level of control that the Haiyan Group exerted over both Scioto and Alno, and to consider Scioto's ownership of Alno during a time when Alno was engaged in evasion of the AD/CVD Orders. *Am. Kitchen Cabinet All. v. United States*, 745 F.

Supp. 3d 1270, 1279-1282 (Ct. Int'l Trade 2024).  The Court stated that Alno's past conduct is relevant to Customs' evaluation of Scioto because Scioto owned Alno during the time when Alno "admitted" to evading the AD/CVD Orders. *Id.* at 1281. The Court stated that existence of an interrelated company relationship warrants Customs' examination of the relevance of Alno's past acts of evasion in the context of Customs' current examination of Scioto.  *Id.*

On remand, CBP still agrees that Scioto's and Alno's ownership by a Chinese company alone is insufficient to establish transshipment or evasion, but still takes this remand as an opportunity to reverse its administrative review determination, which was based on actual evidence such as Alno's production and shipment documentation, and has reverted to the same inuendo, inferences, and suppositions that was used in TRLED's original determination.  Remand Results at 10.  This decision is based solely on innuendo, fails to point to any evidence that the goods imported by Scioto were produced in China, and ignores substantial evidence on the record that the goods exported to Scioto were produced in Malaysia.

1.    The Level of Control by the Haiyan Group Does Not Support an Affirmative Determination

R&R claims that Haiyan Group had decision making authority as to where WCV would be manufactured and how Alno fulfilled purchase orders, including orders from CTG, but points to no evidence that the Haiyan Group ever ordered Alno to fulfill an order to Scioto with Chinese merchandise. Remand Results at 9-11 (Appx168341-168343).  However, even if the Haiyan Group exerts control over the production of the WCV that Scioto receives, the evidence on the record, including all the production documents submitted by Alno, demonstrate that the Haiyan Group ensured that the WCV shipped to Scioto was produced in Malaysia.  CBP's claim that the record does not support this assertion is unsupported and inconsistent with the record evidence, including its own prior findings. As discussed above, Scioto pointed to record evidence,

including voluminous production documents, that demonstrates that the goods exported to Scioto were produced in Malaysia.  That is a fact that was accepted by R&R in its administrative review determination.  Administrative Review Determination at 13 (Appx168272).  Moreover, the Court affirmed R&R's reliance on Alno's records. *Am. Kitchen Cabinet All. v. United States*, 745 F. Supp. 3d 1270, 1283-1285 (Ct. Int'l Trade 2024).

Most importantly, CBP points to no record evidence that any of the goods exported to Scioto were produced in China.  Rather, CBP's decision is based simply on the claim that Haiyan Group decided where the goods would be produced and the fact that Scioto and Alno sent emails containing Scioto's [                                                        ] to [

], which CBP claims indicate that "communications regarding the manufacture of WCV to be shipped to Scioto were funneled through this same subsidiary."   Remand Results at 9-10 (Appx168341-168343).  R&R concludes that these emails related to Scioto's purchase of finished merchandise and the communications "show a level of involvement by [                    ] regarding the manufacture of WCV to be sent to Scioto". Remand Results at 4-5 (Appx168336-168337).  The fact that purchase orders were sent to the Chinese affiliate for approval and then funneled through the Chinese affiliate to Alno does not demonstrate that the merchandise was produced in China.  As noted in Sciot's RFI Response, "Haiyan Group ultimately has final say over what products can be produced in Malaysia by Alno and in what order purchase orders are produced and shipped to Scioto from Alno, after consultation with Scioto regarding the demand for goods". Scioto RFI Response, dated August 24, 2022 at 13 (Appx088919).  Given this internal corporate arrangement, it would be normal for Scioto to send purchase orders to China so that they could approve the terms before Alno began production in Malaysia. Corporate structures like those of the Haiyan Group are common in global supply chains, where centralized

oversight ensures operational efficiency and quality control. In this case, Haiyan's role as an intermediary for purchase orders aligns with the need for standard practices and does not imply or support any inference of evasion. Further, the documentation provided by Alno and Scioto underscores its transparency in the investigation and counters CBP's speculative narrative. CBP is using the corporate structure to create innuendo about what might have happened instead of dealing with the record evidence, including Alno's production and shipment records, demonstrating what did happen. Most importantly, and as argued further above, Alno can trace the production of a particular product in Malaysia to the shipment of that same product to Scioto, a fact completely ignored by CBP in the Remand Results.

CBP should have relied on the reasonable finding that Chinese ownership alone is insufficient to establish transshipment, combined with the production and shipment documents provided by Alno, to conclude that the WCV shipped by Alno to Scioto was produced in Malaysia. Instead, R&R resorts to innuendo, which results in its Remand Results being arbitrary and capricious and an abuse of discretion.

2.    Alno's Past Act of "Evasion" Cannot be Used to Impose Duties on Imports by Scioto

Finally, CBP claims that the facts surrounding the CTG situation provide context that should be given weight in its determination. Remand Results at 6 (Appx168338). CBP claims that transshipment to CTG was discovered by an on-site inspection of Alno's facilities in Malaysia and that Scioto has not required periodic monitoring or on-site inspection of Alno's facilities. *Id.* Additionally, R&R notes that Scioto does not have written policies and procedures related to AD/CVD and that Alno or Haiyan determines whether a specific product is covered by AD or CVD. *Id.*

There is no requirement by CBP that importers employ regular on-site inspection of their foreign suppliers or maintain any written policies and procedures related to AD/CVD.   Nor is this a 19 U.S.C. §1592 investigation of whether Scioto used reasonable care in determining the country-or-origin of the WCV that it imported and whether AD/CVD were due on those entries. Regardless, however, periodic monitoring and on-site inspect was not required given the relationship between Scioto and Alno and Scioto's resulting familiarity with Alno's production operations. As discussed above, Alno has production documents demonstrating that the WCV it shipped to Scioto were produced in Malaysia. Given that there are no AD/CVD orders on Malaysia, no antidumping duties were owed and Scioto had no need to investigate further.

The record with respect to Alno's shipments to CTG does not support a finding that transshipment or evasion ever occurred.   The statute requires that there be an entry into the United States for evasion to occur:

> Except as provided in subparagraph (B) **[                              ]**, the term "evasion" refers to <u>entering covered merchandise</u> into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

19 U.S.C. §1517(a)(5)(A) (emphasis added).  In this case, the record does not contain any evidence that the sales to CTG ever entered the United States.  In fact, R&R seemed to indicate in its administrative review determination that the EAPA allegation did not include CTG because the CTG goods had been returned to Malaysia when it was discovered that the goods were from China.  Administrate Review Determination at 8 (Appx168267).

Even to the extent that this incident is considered relevant as an attempted evasion, it cannot be used to impose duties or restrictions on imports by Scioto.  The only remedies for

evasion under the statute all relate to the imposition of duties or penalties on the importer that imported the covered merchandise through evasion. 19 U.S.C. §1517(d). The statute does not impose a penalty on the exporter. In this case, that would mean the imposition of duties or penalties on imports by Scioto. However, the record of this investigation does not support a finding that the imports by Scioto consisted of covered merchandise. The statute does not allow for the imposition of penalties on an importer based on imports by an unrelated party.

## H. Scioto's Due Process Rights Were Violated

An administrative adjudication must provide respondents with due process pursuant to the Fifth Amendment to the Constitution of the United States. *Londoner v. Denver*, 210 U.S. 373 (1908). The Fifth Amendment prohibits deprivation of life, liberty, or property without due process of law. U.S. Const. amend V. The Court's analysis of due process claims begins by determining whether Plaintiff has a protected interest that has been deprived through an action of the Government. *Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329, 1337 (Fed. Cir. 2015). Importers may have a protected interest in the proper assessment of duties on goods already imported and the U.S. Court of International Trade has held that such an interest exists in the EAPA context. *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1341 (2021); *Royal Brush Mfg. v. United States*, 483 F. Supp. 3d 1294, 1305 (2020); *Nereida Trading Co. v. United States*, 34 C.I.T. 241, 248, 683 F. Supp. 2d 1348, 1355 (2010); *Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022). The courts have recognized that in an EAPA investigation, due process forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation. *Royal Brush Mfg. v. United States*, 483 F. Supp. 3d 1294, 1306 (2020) (*quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 289 n.4, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)). A party

participating in an administrative proceeding has a procedural right to an opportunity to be heard. *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761–62 (Fed. Cir. 2012).  In order to provide adequate due process, Customs' procedures must afford an opportunity for parties subject to an EAPA investigation to respond to opposing evidence. *Royal Brush*, 483 F. Supp. 3d at 1306.

In this case, CBP's failure to articulate clear evidentiary gaps or request further information during the investigative process unfairly shifts an impossible evidentiary burden onto Scioto and Alno without proper justification and violates their due process rights. CBP's reliance on unsubstantiated claims deprived Alno and Scioto of due process and fair treatment.  It also sets a dangerous precedent for other importers as it will allow CBP to rely on speculation rather than facts in making its EAPA determinations.

Moreover, Scioto and Alno's counsel were not afforded access to business confidential information placed on the EAPA Administrative Record during the course of the investigation, which violated Scioto's due process rights and the provided public summaries were insufficient. The U.S. Court of Appeals has held that CBP violated an importer's due process rights by denying access to business confidential information relied on in making its final evasion determination under the Enforce and Protect Act of 2015 ("EAPA").  *Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250, 1253 (Fed. Cir. 2023).  In this case, the lack of access to confidential information until this appeal began hindered Scioto, Alno, and their counsel from adequately responding to CBP's concerns during the investigation and hindered CBP in asking direct questions of Scioto and Alno thereby precluding them from rectifying any purported deficiencies during the investigatory stage.  The Remand Results uses this procedural loophole to its advantage by relying on alleged gaps in the record that Scioto and Alno were prevented from

curing at the outset.  CBP cannot now use their procedural advantage as a cudgel to then reach an unsupported and speculative conclusion.

I.     **CBP Cannot Impose Antidumping or Countervailing Duties on Good Produced in Malaysia**

Even in the context of its affirmative determination on remand, CBP concedes that Alno was able to provide documentation to link some production batches to specific entries made by Scioto.   Remand Results at 8, fn. 64 (Appx168340).  CBP cannot impose antidumping or countervailing duties on such merchandise.  The statute provides that the remedy for evasion under the statute is the imposition of duties or penalties on the importer that imported the "covered merchandise" through evasion.  19 U.S.C. §1517(d).  The statute further defines covered merchandise as merchandise that is subject to an antidumping duty order or a countervailing duty order. 19 U.S.C.  §1517(a)(3). Moreover, the law recognizes that antidumping and countervailing duties orders are country specific because they only apply to merchandise from particular countries. *See Bell Supply Co., LLC v. United States*, 83 F. Supp. 3d 1311, 1320 (Ct. Int'l Trade 2015) *citing* 19 U.S.C. § 1673, 19 U.S.C. §§ 1677j,  and 1677b(a)(3).

In this case, the only antidumping and countervailing duty orders cover WCV from China.  If Alno is able to link certain Malaysian production batches to specific entries by Scioto, then CBP cannot impose any antidumping or countervailing duties on those entries.  Moreover, Scioto must be afforded some procedure by which it can demonstrate that all of its entries can be linked to specific production batches.  If CBP did not already provide Scioto with an opportunity to do so during the investigation, it must do so now and before imposing any such duties on Scioto.

NON-CONFIDENTIAL VERSION

## V.    CONCLUSION

For these reasons, we respectfully request that the Court reverse CBP's Remand Results. In the alternative, we request that the Court remand this case to CBP a second time with clear instructions prohibiting CBP from reversing prior determinations not within the scope of the remand and directing CBP to adhere to the evidentiary standards articulated in the Court's October 31, 2024 opinion.

Respectfully submitted,

/s/Nithya Nagarajan
Nithya Nagarajan
Stephen W. Brophy
**Husch Blackwell LLP**
1801 Pennsylvania Ave. N.W., Suite 1000
Washington, DC 20006
(202) 378-2409
nithya.nagarajan@huschblackwell.com
*Counsel for Defendant-Intervenor Scioto Valley*
*Woodworking, Inc. d/b/a Valleywood Cabinetry*

Dated:  April 2, 2025

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

_____

)
)
AMERICAN KITCHEN CABINET ALLIANCE,    )
)
                          Plaintiff,    )
)
             v.    )
)
UNITED STATES,    )
)
                    Defendant,    )
)
)
SCIOTO VALLEY WOODWORKING, INC.    )
d/b/a VALLEYWOOD CABINETRY,    )
)
              Defendant-Intervenor.    )
)
_____)

Before: Hon. Lisa W. Wang,
Judge

Court No. 23-00140

**<u>PROPOSED ORDER</u>**

       On consideration of Defendant's Intervenors Comments in Opposition to the Remand

Redetermination, and all other pertinent papers, it is hereby:

       ORDERED that Customs Remand Redetermination is remanded for reconsideration

consistent with the Opinion of this Court.

Dated: _____
New York, New York

                      _____
                      Lisa W. Wang, Judge

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the Standard Chamber Procedures 2(B)(1)(b), the undersigned certifies that these comments comply with the Court's word limitation requirement. The word count for the foregoing brief, as computed by Husch Blackwell's word processing system (Microsoft Word), is 9,317.

Dated: April 2, 2025                                        <u>/s/ Nithya Nagarajan</u>
                                                            Nithya Nagarajan