**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:    THE HONORABLE LISA W. WANG, JUDGE

---

|  |  |
|---|---|
| AMERICAN KITCHEN CABINET ALLIANCE, ) | |
| Plaintiff, ) | |
| v. ) | Court No. 23-00140 |
| UNITED STATES, ) | |
| Defendant, ) | **PUBLIC VERSION** |
| and ) | |
| SCIOTO VALLEY WOODWORKING, INC. ) d/b/a VALLEYWOOD CABINETRY, ) | |
| Defendant-Intervenor. ) | |

**DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION**

> YAAKOV M. ROTH
> Acting Assistant Attorney General
>
> PATRICIA M. MCCARTHY
> Director
>
> TARA K. HOGAN
> Assistant Director

OF COUNSEL:
John Flanagan
Attorney
U.S. Customs and Border Protection
Office of the Chief Counsel

> MIKKI COTTET
> Senior Trial Counsel
> U.S. Department of Justice
> Civil Division
> Commercial Litigation Branch
> P.O. Box 480
> Ben Franklin Station
> Washington, DC 20044
> Telephone: 202-307-0962
> Email: Mikki.Cottet@usdoj.gov

May 9, 2025

Attorneys for Defendant

## **TABLE OF CONTENTS**

BACKGROUND ............................................................................................................2

ARGUMENT ...............................................................................................................7

I.    Standard of Review..........................................................................................7

II.   CBP's Affirmative Evasion Determination Addresses the Court's Concerns, Is
      Reasonable, Supported by Substantial Record Evidence, and in Accordance with
      Law .................................................................................................................7

III.  Scioto's Arguments Do Not Detract From The Reasonableness Of CBP's
      Determination ................................................................................................9

      A.  CBP's Remand Determination Is Based On Substantial Evidence Not
          Innuendo ..............................................................................................10

      B.  CBP's Finding that Scioto Lacked Sufficient Controls To Prove That All of
          Its WCV Imports were of Malaysian Origin is Supported by Substantial
          Evidence................................................................................................13

      C.  The Additional Warehouse Support CBP's Finding that Alno Shipped
          Chinese-Origin Goods to Scioto .........................................................18

      D.  Haiyan Group's Operational Control of Alno and Scioto Supports CBP's
          Affirmative Determination...................................................................20

      E.  CBP Did Not Violate Scioto's Constitutional Due Process Rights .................21

CONCLUSION............................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                   **Page(s)**

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
  992 F. Supp. 2d 1285 (Ct. Int'l Trade 2014), *aff'd*, 802 F.3d 1339 (Fed. Cir. 2015) ................ 7

*American Kitchen Cabinet Alliance v. United States*,
  745 F. Supp. 3d 1270 (Ct. Int'l Trade 2024) ................................................................... *passim*

*American Tubular Prods., LLC v. United States*,
  38 CIT 1413 (2014) ........................................................................................................... 15

*Aspects Furniture Int'l, Inc. v. United States*,
  651 F. Supp. 3d 1328 (Ct. Int'l Trade 2023) ...................................................................... 7

*Bowe-Passat v. United States*,
  17 CIT 335 (1993) ............................................................................................................. 15

*CEK Grp. LLC v. United States*,
  633 F. Supp. 3d 1369 (Ct. Int'l Trade 2023) .................................................................... 10

*Consol. Edison Co. v. NLRB*,
  305 U.S. 197 (1938) .......................................................................................................... 10

*Consolo v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966) .......................................................................................................... 10

*Royal Brush Manufacturing, Inc. v. United States*,
  75 F. 4th 1250 (Fed. Cir. 2023) ............................................................................. 21, 22, 23

*Skyview Cabinet USA, Inc. v. United States*,
  745 F. Supp. 3d 1326 (Ct. Int'l Trade 2024) .................................................................... 22

*Ward v. United States Postal Serv.*,
  634 F.3d 1274 (Fed. Cir. 2011) ........................................................................................ 22

**Statutes**

19 U.S.C. § 1517 ................................................................................................................. 1, 7

19 U.S.C. § 1517(c) ............................................................................................................ 7, 12

19 U.S.C. § 1517(f) ................................................................................................................. 7

19 U.S.C. § 1517(g) ............................................................................................... 7


**Administrative Determinations**

*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:*
    *Antidumping Duty Order*,
    85 Fed. Reg. 22,126 (Dep't of Commerce Apr. 21, 2020) ......................................... 2

*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:*
    *Countervailing Duty Order*,
    85 Fed. Reg. 22,134 (Dep't of Commerce Apr. 21, 2020) ......................................... 2

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:     THE HONORABLE LISA W. WANG, JUDGE

| | |
|---|---|
| _____ ) | |
| AMERICAN KITCHEN CABINET ALLIANCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 23-00140 |
| ) | |
| UNITED STATES, ) | |
| ) | **PUBLIC VERSION** |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| SCIOTO VALLEY WOODWORKING, INC. ) | |
| d/b/a VALLEYWOOD CABINETRY, ) | |
| ) | |
| Defendant-Intervenor. ) | |
| _____ ) | |

**DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments filed by

Defendant-Intervenor, Scioto Valley Woodworking, Inc. d/b/a Valleywood Cabinetry (Scioto),

ECF No. 81 (Scioto's Cmts.), on the final remand redetermination issued by U.S. Customs and

Border Protection (CBP) pursuant to *American Kitchen Cabinet Alliance v. United States*, 745 F.

Supp. 3d 1270 (Ct. Int'l Trade 2024) (Remand Order). *See Final Remand Redetermination*, ECF

No. 73 (Remand Redetermination).

The Court remanded in part CBP's negative evasion determination under 19 U.S.C.

§ 1517, the Enforce and Protect Act (EAPA), for further proceedings to reconsider certain

material record evidence that detracts from CBP's finding that no evasion through transshipping

had taken place by Scioto, such as the extent to which a company in the People's Republic of

China exerts operational control over Scioto and Scioto's Malaysian supplier, and to consider the

contents of the Malaysian supplier's additional warehouse, which contained commingled goods produced in Malaysia and in China. As we demonstrate below, CBP complied with the remand order and its remand redetermination is reasonable, in accordance with law, and should therefore be sustained.

## **BACKGROUND**

This action arose from CBP's negative evasion determination under the antidumping duty (AD) and countervailing duty (CVD) orders on wooden cabinets and vanities (WCV) from China. CBP's Final Administrative Determination in EAPA Case No. 7705 (June 12, 2023) (Final Administrative Determination), Appx3915–3940 and Appx168259–168284; *see Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 22,126 (Dep't of Commerce Apr. 21, 2020); *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Countervailing Duty Order*, 85 Fed. Reg. 22,134 (Dep't of Commerce Apr. 21, 2020) (collectively, "AD/CVD Orders").

Plaintiff, American Kitchen Cabinet Alliance (AKCA), a coalition of domestic producers of WCV, submitted an EAPA allegation of evasion against Scioto, a U.S. importer of WCV that is wholly owned by a Chinese company, Qingdao Haiyan Group Co. Ltd. (Haiyan Group). *American Kitchen*, 745 F. Supp. 3d at 1274. Scioto's supplier of WCV, Alno Industry SDN BHD (Alno), is a Malaysian company that is also wholly owned by the Haiyan Group. *Id.* (citing Appx3933). AKCA alleged that Scioto engaged in a transshipment scheme with Alno to evade the payment of AD and CVD duties on WCV from China. *Id.* (citing Appx1001, Appx1006).

AKCA's allegations relied in part on information that it had received from Cabinets to Go (CTG), an unaffiliated customer of Alno and an importer and distributor of WCV in the United States. *Id.* (citing Appx1001, Appx1006, Appx1007). Alno represented to CTG that the WCV it had exported to CTG in the United States had been manufactured in Malaysia; however, during CTG's independent inspection of Alno's manufacturing facilities in Malaysia, CTG found that the WCV shipped by Alno to CTG had been manufactured in China and not in Malaysia. *Id.* (citing Appx1001, Appx1006, Appx1007–1008). CTG subsequently filed a civil action against Scioto, Alno, and the Haiyan Group in the United States District Court for the Middle District of Tennessee. *Id.* (citing Appx1001, Appx1006, Appx1008, Appx1034–1047). As part of that lawsuit, and contrary to Alno's prior representations to CTG that the WCV it had imported was manufactured in Malaysia, the Haiyan Group provided information in court showing that Alno's shipments to CTG had been manufactured in China. *Id.* (citing Appx1001, Appx1006, Appx1008, Appx80008) (additional citation omitted). CTG subsequently shared this information with AKCA, resulting in AKCA's EAPA allegation of evasion against Scioto. *Id*.

CBP's Office of Trade, Trade Remedy Law Enforcement Directorate (TRLED) initiated a formal EAPA investigation to determine whether WCV imported by Scioto had been entered into the U.S. by means of evasion. TRLED notified the parties that CBP had imposed interim measures on Scioto's imports based upon reasonable suspicion that Scioto had entered covered merchandise into the customs territory of the United States through evasion. *Id*. at 1274-1255 (citing Appx3918–3919). The period of investigation included entries from March 9, 2021, through the pendency of CBP's investigation. *Id.* at 1275 (citing Appx3919). During this period, Scioto had entered WCV into the United States from Alno and declared Malaysia as the country of origin, without payment of any AD/CVD duties. *Id.* (citing Appx3919).

TRLED focused its analysis on Scioto, Scioto's relationship with Alno, and Alno's non-affiliated transactions, pointing out that "evidence demonstrates that Alno can produce wooden cabinets and vanities" but that Alno had "admitted in court documents that it had transshipped Chinese-origin cabinets and vanities through Malaysia" to another company during the period of this investigation. *Id*. (citing Appx3735) (emphasis in original). TRLED sought to determine "whether Alno manufactured all the cabinets and vanities it exported to Scioto, or whether Alno exported transshipped, Chinese-origin cabinets and vanities to Scioto during the {period of investigation}." *Id*.

Following the submission of written arguments from interested parties and an on-site verification of Alno's facilities in Malaysia, TRLED issued its determination, concluding that there was substantial evidence that Scioto had entered merchandise covered by the AD/CVD orders into the U.S. through evasion. *Id*. (citing Appx3732-3757, Appx3605-3661, Appx3736–3742). In reaching this conclusion, TRLED focused on four main considerations. First, TRLED considered the common ownership and control of Alno and Scioto by their Chinese parent company, Haiyan Group, and concluded that "Alno is a Malaysian company owned and controlled by a Chinese company, is operated under Chinese management, and is supplied by Chinese suppliers." *Id*. (citing Appx3736) (cleaned up). TRLED found that the Haiyan Group's ownership of both Scioto and Alno allowed Haiyan Group "discretion over the budgets for both companies' operations, production, shipping schedules for all goods produced, and purchase prices." *Id*. (citing Appx3735) (cleaned up).

Second, TRLED considered contemporaneous evidence of transshipment by Alno, finding that record evidence shows that Alno transshipped Chinese-origin wooden cabinets into the U.S. *Id*. (citing Appx3736). TRLED's finding was based in part on "direct admissions of

facts that implicate Scioto in an evasion scheme." *Id*. (citing Appx3736). *See also* Appx1007-1008. Alno also admitted to CBP officials that it had transshipped Chinese-origin wooden cabinets into the U.S. to another one of its customers. *Id*. at 1275-1276 (citing Appx3737).

Third, TRLED assessed the reliability of Alno's submitted documentation. TRLED found that record evidence shows that Alno had provided unreliable information from a Chinese another subsidiary of Haiyan Group, [███████████████████████████████████ ██████]. *Id*. at 1276 (citing Appx168205). TRLED identified several additional discrepancies, including discrepancies in Alno's invoice documentation and a container expressly identified as containing finished goods for "transshipment to [████]" that was listed as [██████████████████████████] or [██████████████████████]. *Id*. (citing Appx3740-3741, Appx168207) (cleaned up).

Scioto appealed TRLED's affirmative evasion determination to CBP's Office of Regulations and Rulings (R&R). Scioto argued that it had not entered covered merchandise into the United States through evasion because the WCV it had imported during the period of investigation were manufactured in Malaysia by Alno instead of China. *Id*. at 1276 (citing Appx3919, Appx3920). R&R issued a determination on June 12, 2023, reversing TRLED's finding of evasion, concluding instead that there was no substantial evidence of evasion. *Id*.

R&R concluded that the record contained no evidence that WCV produced in China were transshipped through Malaysia and imported into the United States by Scioto. *Id.* (citing Appx3925). In relevant part, R&R found that Alno's production and employment records were direct evidence of actual production of WCV in Malaysia and TRLED's on-site verification corroborated Alno's WCV production capabilities. *Id*. at 1276-1277 (citing Appx3932-3937). R&R also found that evidence of common ownership of Scioto and Alno by a Chinese parent

company does not necessarily prove that the goods associated with the entries at issue were produced in China rather than in Malaysia. *Id.* at 1277 (citing Appx3933). R&R also dismissed as irrelevant record evidence regarding transactions relating to CTG. *Id*. at 1276 (citing Appx3926). Finally, R&R found that the use of adverse inferences was not warranted because the record supported a conclusion that Alno and Scioto complied with CBP's information requests. *Id*. (citing Appx3926).

AKCA appealed R&R's negative evasion determination to this Court, challenging two aspects of CBP's determination as arbitrary, capricious, and an abuse of discretion. First, AKCA challenged CBP's conclusion that the "record contains <u>no evidence</u> that WCV produced in China were transshipped through Malaysia." *American Kitchen*, 745 F. Supp. 3d at 1278 (citation omitted; emphasis in original). Second, AKCA challenged CBP's decision to refrain from applying adverse inferences in the proceeding. *Id*. (citation omitted).

The Court sustained R&R's final determination in part, holding that CBP's treatment of documentation submitted by Alno and Scioto was reasonable and that CBP acted within its discretion in finding that the application of adverse inferences was unwarranted. *Id*. at 1283-1286. The Court, however, remanded CBP's negative determination for further proceedings, holding that CBP had failed to consider material record evidence that detracted from its finding that no evasion had taken place by Scioto, including: (1) the extent of the Haiyan Group's operational control of Scioto and Alno, *id*. at 1279-1282; and (2) the contents of Alno's additional warehouse, *id*. at 1282-1283.

# ARGUMENT

## I.    Standard of Review

The Court reviews CBP's evasion determination for compliance with the procedures under 19 U.S.C. §§ 1517(c), (f) and "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  19 U.S.C. § 1517(g)(2).  The Court reviews determinations made on remand for compliance with the Court's remand order.  *Aspects Furniture Int'l, Inc. v. United States*, 651 F. Supp. 3d 1328, 1334 (Ct. Int'l Trade 2023) (citing *Ad Hoc Shrimp Trade Action Comm. v. United States*, 992 F. Supp. 2d 1285, 1290 (Ct. Int'l Trade 2014), *aff'd*, 802 F.3d 1339 (Fed. Cir. 2015)).

## II.    CBP's Affirmative Evasion Determination Addresses the Court's Concerns, And Is Reasonable, Supported by Substantial Record Evidence, And In Accordance with Law

The Court should sustain CBP's remand redetermination because it is reasonable, supported by substantial evidence, and in accordance with law, and it complies with the remand order.

On remand, R&R thoroughly reviewed and analyzed the administrative record, addressing the record facts identified by this Court.  *See* Appx 04095, Appx168335.  R&R reconsidered whether Scioto had entered covered merchandise into the United States through evasion during the period of investigation.  R&R found that "the record supports a conclusion that Scioto entered covered merchandise into the customs territory of the United States through evasion, as defined in 19 U.S.C. § 1517."  *Id.*  Although this redetermination represents a reversal of its prior determination, R&R provides a well-reasoned explanation for its remand redetermination, which was the culmination of a thorough examination of relevant record evidence.  CBP reasonably tied its redetermination to statutory and regulatory standards and record evidence.  Additionally, to ensure compliance with the remand order, CBP walked

7

through the analysis of the issues raised by the Court, *i.e.*, the contents of Alno's finished goods warehouse, Appx04095-04101, Appx168335-168341, and the extent of Haiyan Group's control over Scioto and Alno with respect to the production and shipment of WCV, Appx04101-04103, Appx168341-168343. *See American Kitchen*, 745 F. Supp. at 1279-1283. Finally, CBP's redetermination is supported by substantial evidence and is otherwise in accordance with law.

R&R reexamined and reconsidered record evidence relating to the contents of Alno's warehouse. Appx04095-04101, Appx168335-168341. R&R found that a combination of record evidence supports the affirmative finding of evasion. Specifically, although Alno was capable of manufacturing WCV in Malaysia and purchased raw materials to do so, the record reveals that Alno purchased finished merchandise that was manufactured in China by [████████████], a Chinese subsidiary of Haiyan Group. R&R explained that this evidence detracts from its original finding of no evasion by Scioto because: "(1) it demonstrates that Alno received finished merchandise from China; (2) Alno maintained a finished goods warehouse that contained boxes of WCV, some of which were unmarked with respect to country of origin or customer; and (3) neither Alno nor Scioto has sufficient systems in place that would allow either company to confirm which customers received WCV manufactured in Malaysia versus China." Appx04095, Appx168335.

R&R also addressed the degree of Haiyan Group's control over Alno's WCV exports. R&R focused on Haiyan Group's decision-making authority with respect to Alno's exports of WCV produced in Alno's Malaysian facilities and WCV produced in the Haiyan Group's Chinese WCV facilities that may have been transshipped through Malaysia. Appx04101-04102, Appx168341-168342. Based on substantial record evidence, R&R found that the Haiyan Group had "ultimate" control over Alno's exportations and, as a result, control over whether Scioto

8

would receive Chinese-origin or Malaysia-origin wooden cabinets.  Appx04102, Appx168342.

R&R explained that, when Haiyan Group's level of control is considered with Scioto's and

Alno's inability to track raw materials, inventory, and finished merchandise, Scioto is left with

no way of knowing the country of origin of the cabinets it receives from Alno or for Alno to

know which of its U.S. customers will receive Malaysian-origin or Chinese-origin merchandise.

*Id*.

Based on its holistic review of the record in accordance with the remand order, CBP

determined that substantial evidence supports a determination that Scioto evaded the AD/CVD

Orders on WCV from China.  Appx04103, Appx168343.

III.     Scioto's Arguments Do Not Detract From The Reasonableness Of CBP's Determination

Scioto contends that CBP's remand redetermination is arbitrary, capricious, and an abuse

of discretion.  Scioto Cmts. at 1.  Scioto challenges several of CBP's findings as not supporting

an affirmative determination of evasion, arguing that: (1) CBP's remand redetermination is based

on speculation and innuendo and not substantial evidence, *id*. at 7-9; (2) CBP's finding that

Scioto did not have sufficient controls in place to prove that all of its WCV imports were of

Malaysian origin is unsupported by substantial evidence, id. at 10-14; (3) the fact that Alno

purchased some WCV from China does not support a finding that any of those cabinets were

shipped to Scioto, id. at 14-16; (4) missing packing checklists are immaterial to the issue under

investigation, id. at 17; (5) the information submitted by Scioto was complete and reliable, id. at

17-19; (6) Alno's additional warehouse containing commingled WCV of Chinese and Malaysian

origin does not support a finding that Alno shipped Chinese origin WCV to Scioto, id. at 19-22;

and (7) neither the relationship between Haiyan Group, Alno, and Scioto nor the transshipment

of WCV to [████] support an affirmative evasion determination, *id*. 22-27.  Scioto also argues

that its due process rights under the Fifth Amendment of the U.S. Constitution were violated. *Id*. at 27-29. Finally, Scioto argues that CBP cannot impose AD or CVD duties on goods produced in Malaysia. *Id*. at 29. As we demonstrate below, none of these arguments is persuasive.

      A.    <u>CBP's Remand Determination Is Based On Substantial Evidence, Not Innuendo</u>

Scioto states that CBP's investigation concerned only one question: "whether Scioto imported covered merchandise from Alno in Malaysia through evasion." Scioto Cmt. 7. According to Scioto, CBP must determine that Scioto "actually" imported covered merchandise through evasion. *Id*. Scioto is wrong. CBP is not required to ***prove*** that Scioto ***actually*** imported subject merchandise through evasion; rather, CBP's determination that Scioto imported covered merchandise from Alno through evasion must be based on "substantial evidence." 19 U.S.C. § 1517(g)(2).

Substantial evidence means "such ***relevant evidence as a reasonable mind might accept as adequate to support a conclusion***." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (emphasis added). That standard is met here. At best, Scioto has identified a different conclusion that could be reached from the record; however, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted). Substantial evidence is assessed under a reasonableness standard. *CEK Grp. LLC v. United States*, 633 F. Supp. 3d 1369, 1373 (Ct. Int'l Trade 2023).

R&R found that substantial evidence supports a conclusion that Scioto entered covered merchandise into the United States through evasion. Appx04095; Appx168287. That substantial evidence includes undisputed facts that Alno, Scioto's affiliated Malaysian supplier, purchased and received finished merchandise manufactured in China by [████████], a Chinese

10

subsidiary of Haiyan Group. *Id.* Alno maintained a finished goods warehouse containing boxes of WCV that were not marked with country of origin or customer designation. *Id.* Within that warehouse, Alno commingled WCV produced in Malaysia with WCV produced in China. *Id.* Alno did not employ tracking systems that would allow it to identify which customers received Malaysian-produced WCV or WCV manufactured in China. *Id.* Therefore, Scioto had no tracking system or sufficient controls in place to prove that all its WCV imports were of Malaysian origin. *Id.*

R&R's conclusion is further supported by record evidence of packing checklists enclosed with [███████████] shipments to Alno. Appx04096-04096; Appx168287-168288. These packing checklists are consistent with information supplied by Haiyan Group, Scioto, and Alno in a separate lawsuit, and they show that Alno's shipments to another U.S. customer, [████], were manufactured in China rather than in Malaysia, contrary to Alno's representations. Appx04096; Appx168288. Furthermore, the stock keeping unit (SKU) numbers relating to purchase orders for Alno's other U.S. customer correspond to several of Scioto's SKUs, with variations for color and finish. *Id.* During verification, Alno had explained that CBP could identify Chinese-produced merchandise by reviewing the descriptions of goods on packing checklists, packing lists, and commercial invoices. *Id.* These descriptions (*i.e.*, [█████████████████], [██████████████████████], and [██████████████████████]) appear on packing checklists, packing lists, and commercial invoices from Haiyan Drouot to Alno that Scioto produced to CBP during this investigation. *Id.* Scioto argues that these descriptions refer to purchases of raw materials, Scioto Cmts. at 16; however, two of these descriptions, [██████████████████████]

and [███████████████████████], were also used for the transshipped finished

WCV that were transshipped to [████] during the period of investigation.  Appx168206.

Together, this record evidence constitutes substantial evidence supporting CBP's

conclusion of evasion.

Scioto argues that CBP's determination is not based on substantial evidence and that CBP

"seems to be applying" adverse inferences to alleged gaps in the record when concluding that

"Alno may have shipped Chinese WCV" to Scioto.  Scioto Cmts. at 8-9.  Although the record

evidence supports an affirmative evasion determination that is adverse to Scioto, CBP did not, in

this case, exercise its statutory discretion to apply an adverse inference under 19 U.S.C.

§ 1517(c)(3)(A).  That statute permits CBP to use an inference that is adverse to the interests of a

party when CBP finds that a party failed to cooperate to the best of the party's ability to comply

with a request for information.  Here, however, CBP did not find that Scioto failed to cooperate

to the best of its ability or failed to comply with a request for information.  In fact, CBP

determined that adverse inferences were unwarranted, stating: "R&R need not, and did not apply

adverse inferences to reach this finding.  As discussed throughout the remand redetermination,

upon consideration of the record as a whole, including certain data issues and missing documents

of which TRLED informed Alno during the investigation, Scioto cannot substantiate its claim

that Alno shipped only WCV produced in Malaysia to Scioto."  Appx04097 n.39, Appx168337

n.39.  *See also American Kitchen*, 745 F. Supp. 3d at 1285-1286.

Upon further review of the record on remand, CBP found issues with the evidence and, as

a result, CBP determined that it is "unable to rely on the accuracy and completeness of Alno's

and Scioto's submissions, especially considering the volume of Scioto's production (Scioto

provided over 30,000 pages of emails and correspondence alone).  As such, CBP cannot confirm

that Alno did not receive other shipments of WCV from [███████] that were subsequently transshipped to Scioto." Appx04097. Notwithstanding these gaps, CBP reached its reasonable conclusions from the plethora of other facts available on the record.

Scioto further argues that the remand redetermination is arbitrary and capricious because CBP failed to consider an important aspect of the problem and its explanation for its determination runs counter to the evidence. Scioto Cmts. at 9. According to Scioto, the remand redetermination is so "implausible" that it could not be ascribed to a difference in view or the product of agency expertise. *Id*. Not only did CBP consider the "problem," CBP rationally ties the facts found with the conclusion it made.

Finally, Scioto argues that CBP cannot impose antidumping or countervailing duties on goods produced in Malaysia. Scioto Cmts. at 29. According to Scioto, "{i}f Alno is able to link certain Malaysian production batches to specific entries by Scioto, then CBP cannot impose any antidumping or countervailing duties on those entries." *Id*. at 29. This argument inaccurately states the law. CBP determines whether evasion has occurred and whether a stated country of origin is in fact correct. Here, CBP explained that the record evidence did not allow for a determination of the country of origin of the unmarked and commingled WCV. Appx168341. Alno had an opportunity to demonstrate the origin of its production batches during the investigation, and Scioto had an opportunity to demonstrate the origin of the WCV that it imported; however, they failed to do so.

B.    CBP's Finding That Scioto Lacked Sufficient Controls To Prove That All Of Its WCV Imports Were Of Malaysian Origin Is Supported By Substantial Evidence

Scioto contends that CBP's finding that Scioto did not have sufficient controls in place to prove that all its WCV imports were of Malaysian origin is not supported by the record. Scioto Cmts. at 10. As support, Scioto argues that R&R previously found that the "relevant" goods

were produced in Malaysia based on Alno's production documentation, which Scioto asserts are substantial evidence that the WCV it imported were produced in Malaysia.  *Id*. at 10-11.  Scioto argues that it and Alno provided all the production documents that CBP requested.  *Id*. at 11-13.  Scioto also argues that Alno's inability to track inventory from raw materials to finished goods is irrelevant.  *Id*. at 13-14.  Scioto's contention and the arguments supporting it lack merit.

Although it is true that R&R previously found that certain production documents support a conclusion that Alno produced the WCV imported by Alno in Malaysia, R&R's full review of all of the record evidence on remand supports CBP's conclusion that Alno cannot verify that all the WCV that it sent to Scioto was manufactured in Malaysia.  Appx 04099, Appx168399.  An agency is not precluded from changing its view of the record on remand; particularly where here, the Court directed CBP to reconsider the full record.

R&R based its remand redetermination on substantial evidence on the record.  First, "Alno maintained a finished goods warehouse containing boxes of merchandise, some of which were unmarked with respect to country of origin or customer."  Appx 04099, Appx168399.  This warehouse contained commingled goods, that is – WCV produced in Malaysia and in China.  *Id*. Second, "Alno did not have a production tracking system that would allow it to trace which customers received WCV that was produced in Malaysia versus China."  *Id*.  Third, Alno received shipments of WCV from China during the period of investigation, which is the same time frame that Alno sent WCV to Scioto.  *Id*.  Fourth, Alno neither possessed nor utilized a tracking system and, therefore, "Alno could not have known the country of origin of the WCV it removed from the finished goods warehouse and shipped to its customers, including Scioto."  *Id*. Sixth, Alno had no tracking system to prevent commingling of WCV from Malaysia and China. Appx04100, Appx168340.  Indeed, "Alno admits that it is unable to track inventory movement

14

from raw materials through production to finished goods.{} Specifically, Alno does not have a stock control module or enough personnel to track its production of WCV from raw materials to finished goods.{}  Additionally, according to Alno's Chief Accountant, Alno does not maintain a finished goods account.{}"  *Id*. (footnotes omitted) (citing Appx168110, Appx168111).  Finally, although requested to do so, Alno did not provide CBP with records that would sufficiently connect the WCV produced at the Malaysian factory with Alno's shipments to Scioto.  *Id*. Rather, in response to TRLED's request for documents relating to eight WCV shipments, Alno produced the identical set of raw material invoices that "were somewhat contemporaneous" with the eight entries, regardless of whether or not those invoices related to the individual shipments. *Id*.

Scioto claims that CBP was required to inform Scioto of evidentiary gaps.  Scioto Cmts. 11-13.  As support, Scioto relies upon *Bowe-Passat v. United States*, 17 CIT 335, 343 (1993). *Id*. at 13.  Scioto's reliance on *Bowe-Passat*, which addressed statutory and regulatory requirements under a former version of the antidumping duty law, is misplaced.  In *Bowe-Passat*, Commerce sent a general questionnaire and a brief deficiency letter to the plaintiff during an AD investigation.  17 CIT at 336.  The letter did not specifically disclose what information Commerce was seeking, thereby misleading the plaintiff into believing that it had satisfied its burden.  *Id*.  The Court determined that Commerce, when applying its regulations, penalized the plaintiff for deficiencies not specified in the letter that Commerce disclosed after the preliminary determination.  *Id*. at 343.  The Court's determination was limited to the specific facts and circumstances of that case.  *See Am. Tubular Prods., LLC v. United States*, 38 CIT 1413, 1429 (2014) (distinguishing the "hazy requests for data" in *Bowe-Passat* from the agency's instructions that told the party "exactly what it needed").

The circumstances here are similarly distinguishable.  First and foremost, EAPA contains no such requirement to identify deficiencies.  Moreover, CBP was clear and unambiguous in its request for **specific** documentation for eight specific shipments of WCV, but Alno produced only the same set of raw material invoices for all eight shipments.  As a result, R&R found "there was no actual tracing of the raw materials to the shipments to Scioto; rather, there simply was evidence that raw materials had been purchased for production in Malaysia, but without linkage to all of the shipments to Scioto that were claimed to be of Malaysian origin."  Appx04100, Appx168340.

Scioto's attempt to shift the blame to CBP for what Scioto views as evidentiary gaps in the record should be rejected for two reasons.  Scioto Cmts. at 13.  First, as R&R found, "Scioto failed to provide sufficient evidentiary support for its assertion that Alno had a tracking system that would have allowed it to trace the country of origin of all of its shipment of WCV to its U.S. customers."  Appx04101, Appx168341.  As the Court held in the remand order, "{i}n a warehouse where potentially transshipped goods are commingled with non-transshipped and unlabeled goods, the burden is on the warehouse owner to demonstrate to Customs a clear delineation between the three categories of goods."  *American Kitchen*, 745 F. Supp. 3d at 1283.  Alno failed to make this delineation.  By its own admission during the on-site verification, Alno did not have tracking systems in place that would have allowed Alno to determine the country of origin of unmarked, commingled WCV that was stored in the finished goods warehouse.  Appx04101, Appx168341; Appx168110, Appx168111.

Second, TRLED made repeated requests for information from Alno, including requests for packing checklists and documentation for shipments of WCV; however, Alno failed to produce those documents.  Appx04101, Appx168341.  The administrative record is replete with

16

evidence that Scioto and Alno did not provide CBP all the requested information. For instance, Alno did not provide packing checklists. Appx168336. Alno redacted data from tables. *Id*. Alno had no accounting or tracking systems in place. *Id*. Incomplete information was provided in response to CBP's request regarding specific shipments. Appx168340. Therefore, Scioto's argument that CBP failed to ask for information to resolve the ambiguities in the record is unavailing.

Furthermore, contrary to Scioto's statement, Scioto Cmts. at 13-14, CBP determined that Alno's ability to track inventory is "material." The ability to track inventory is important to demonstrate the country of production for all WCV shipped to Scioto. Appx168341. In fact, as R&R observed:

> the administrative record shows commingled inventory of WCV by evidence of: Alno's purchases of WCV from China during the period of investigation, during which time Alno also sent WCV to Scioto; Alno's admitted lack of sufficient tracking capabilities to demonstrate the country of production for all of the WCV shipped to Scioto; photographs taken during TRLED's on-site verification showing unmarked WCV in Alno's finished goods warehouse; and Alno's failure to provide records tracing the production of the WCV it sent to Scioto.

*Id*. R&R's finding is consistent with the Court's finding that such detracting evidence is "material." *American Kitchen*, 745 F. Supp. 3d at 1283.

Relatedly, Scioto argues that the fact that Alno purchased some WCV from China does not support a finding that any of those cabinets were shipped to Scioto. Scioto Cmts. at 14. Contrary to Scioto's claims, *id*. at 15-16, the administrative record does not clearly demonstrate which SKUs were made in China, which in Malaysia, and what was shipped to customers. Although R&R continues to conclude that some of the packing checklists appear to pertain to Alno's shipments to CTG, upon reexamination of the record, R&R reached a different

conclusion as to the significance of this evidence.  Appx04096, Appx168336.  R&R explained

the revision of its previous finding:

> a review of the SKUs for the WCV imported by [███] shows that
> the SKUs are not the same as the SKUs for WCV imported by
> Scioto."  While not identical, the SKUs in the Packing Check-Lists
> relating to [████] purchase orders correspond to several of
> Scioto's SKUs, with variations for color and finish.  Second,
> during TRLED's verification in this EAPA investigation, Alno
> explained that CBP would be able to identify merchandise from
> China that was transshipped by reviewing the Packing Check-Lists
> and commercial invoices, which would list the terms
> [██████████████], [██████████████████],
> or [████████████████████████].  These vague
> descriptions similarly appear on commercial invoices, Packing
> Check-Lists, and Packing Lists from [████████] to Alno that
> Scioto produced to CBP in this investigation.  Taken together,
> these documents demonstrate that Alno purchased finished
> merchandise from China and suggest that Alno may have shipped
> Chinese-origin WCV to Scioto.

Appx168336.  Thus, R&R concluded that the packing checklists are important for CBP to

determine which of Alno's customers received WCV of Chinese origin versus Malaysia origin.

Appx168337.

        C.      **The Additional Warehouse Support CBP's Finding that Alno Shipped Chinese-Origin Goods to Scioto**

      As required by the remand order, R&R analyzed evidence on the administrative record

that Alno maintained a finished goods warehouse that contained goods destined for [███] and

Scioto.  Appx04099, Appx168339.  The record evidence demonstrates that the finished goods

were commingled with no country of origin marking or destined customer.  Appx04100,

Appx168340.  The record also shows that Alno does not have a tracking system in place to

prevent commingling of WCV from Malaysia and China.  *Id*.  R&R concluded that "Alno could

not have known the country of origin of the WCV it removed from the finished goods warehouse

and shipped to its customers, including Scioto."  Appx04099, Appx168339.

R&R found that, in addition to lacking a tracking system for production or finished goods, Alno marked only the packaging of the WCV with the country of origin, not the WCV itself. Appx04100, Appx168339. R&R found that "{e}ven with this limited protocol in place, Alno's finished goods warehouse contained boxes without country-of-origin markings. In short, the finished goods warehouse contained commingled WCV, thereby preventing Alno from determining which WCV was produced in Malaysia or China." *Id*.

Scioto claims that CBP did not provide it with an opportunity to produce evidence showing how Alno was able to distinguish between products made in Malaysia and China. Scioto Cmts. at 21-22. However, CBP specifically requested such evidence, by asking for specific information for eight shipments. Appx04100, Appx168339. Alno provided an incomplete response, giving the same set of raw material invoices for all eight shipments. *Id*.

The Court made clear that the record evidence involving the additional warehouse and the commingled goods contained in it, for which there was no way to distinguish Malaysia origin and Chinese origin WCV, were evidence detracting from R&R's original negative determination. *American Kitchen*, 745 F. Supp. at 1282-1283.

> The photographic evidence obtained by TRLED supported its finding that the additional warehouse was "filled with finished goods from China and Malaysia that were packaged identically and ready for shipment," and that "CBP officials had no way to differentiate the country of origin of the finished packaged cabinets and vanities." TRLED Not. of Det., Appx3736-3737. Further, TRLED found that Alno "does not track raw materials in any way and cannot identify which raw materials go into which finished goods," and Alno "does not separate Chinese, Malaysian, or any other materials in any way." TRLED Verification Rep., Appx3609.

*Id*. at 1283.

Scioto states that "R&R's finding that Alno did not have a production tracking system that would have allowed it to trace which customers received WCV that was produced in

Malaysia versus China is simply incorrect" and not supported by record evidence.  Scioto Cmts. at 20.  This assertion is undermined by R&R's fulsome explanation for its finding, which is supported by substantial record evidence.  *See* Appx04100, Appx168339.

     D.     Haiyan Group's Operational Control of Alno and Scioto Supports CBP's Affirmative Determination

Scioto acknowledges the remand order's requirement for CBP to examine the level of control Haiyan Group exerted over both Scioto and Alno and to consider Scioto's ownership of Alno during the time Alno was engaged in evasion of the AD/CVD order.  Scioto Cmts. at 22 (citing *American Kitchen*, 745 F. Supp. 3d at 1279-1282).  Scioto concedes, as it must, that Haiyan Group has ultimate control over the production of the WCV that Scioto receives.  *Id*. at 23.  Nevertheless, Scioto suggests that CBP should have ignored the record evidence of Haiyan Group's control and instead "should have relied on the reasonable finding that Chinese ownership alone is insufficient to establish transshipment, combined with the production and shipment documents provided by Alno, to conclude that the WCV shipped by Alno to Scioto was produced in Malaysia."  *Id*. at 25.  This argument lacks merit and fails to acknowledge the substantial evidence standard.

The Court found that CBP's focus only on the Haiyan Group's ownership of Scioto and Alno, and its treatment of these companies as separate and independent entities, was unreasonable and rendered its negative determination unsupported by substantial evidence.  *American Kitchen*, 745 F. Supp. 3d at 1279-1280.  On remand, CBP was required to and did analyze the extent of Haiyan Group's control over Scioto and Alno and Haiyan Group's control of the decision-making process, and Scioto's ownership of Alno when Alno admitted that it sent transshipped WCV to CTG.  Appx04101-04102, Appx168341-168342.  As the Court noted, "Alno's past conduct is relevant to Customs' evaluation of Scioto because Scioto owned Alno

during the time when Alno 'admitted' to evading the AD/CVD Orders." *American Kitchen*, 745 F. Supp. 3d at 1281.

Upon reviewing the record, R&R concluded that Scioto had little to no input regarding the production of WCV or the country of origin of the WCV that it received.  Appx04102, Appx168342.

> Rather, it was Haiyan Group that decided whether the WCV sent to Scioto (and other customers) would be produced in China or Malaysia.  Therefore, Haiyan Group had the ultimate discretion to determine whether Scioto would receive Chinese-origin or Malaysia-origin WCV.  When this level of discretion is tied together with Scioto's and Alno's insufficient tracking of raw materials, inventory, and finished merchandise, it leaves Scioto with no way of knowing the country of origin of the WCV it received or for Alno to know which customer received Malaysian-origin versus Chinese-origin merchandise.

*Id*.  The interrelatedness of these companies is a relevant consideration for evasion, particularly when Alno transshipped WCV to another U.S. customer during the period of investigation and was owned by Scioto and controlled by Haiyan Group at the time of the past transshipment.

  E.  <u>CBP Did Not Violate Scioto's Constitutional Due Process Rights</u>

Finally, Scioto argues that CBP violated its Fifth Amendment due process rights by not affording Alno, Scioto, and their counsel access to access to business confidential information placed on the administrative record during the investigation.  Scioto Cmts. at 28.  Citing *Royal Brush Manufacturing, Inc. v. United States*, 75 F. 4th 1250, 1253 (Fed. Cir. 2023), Scioto argues that the public summaries that CBP provided were insufficient and the lack of access to confidential information until the appeal to this Court hindered Scioto, Alno, and their counsel from adequately responding to CBP's concerns and precluded them from rectifying any purported deficiencies in the investigatory stage.  *Id*.

In *Royal Brush*, the Federal Circuit held that CBP's refusal to disclose confidential information to the investigated party was a "clear violation of due process" because it deprived the parties of notice and an opportunity to respond. *Id*. at 1259. The Federal Circuit remanded to CBP to cure the procedural error by "provid{ing} Royal Brush with the aforementioned redacted information and give it an opportunity for rebuttal." *Id*. at 1263. *See Skyview Cabinet USA, Inc. v. United States*, 745 F. Supp. 3d 1326, 1333 (Ct. Int'l Trade 2024).

We do not dispute that TRLED's initial determination of evasion and R&R's final negative evasion determination relied on factual information not provided to Scioto. This was rectified on remand. However, Scioto's counsel has had access to the entirety of the business confidential administrative record during this proceeding under the judicial protective order. Moreover, on remand, CBP entered a protective order, Appx03944-03948, and notified the parties that that an administrative protective order would be placed on the administrative record and that "CBP will allow the parties to see bracketed information in R&R's draft remand redetermination and to provide comments thereto." Appx03950. Accordingly, any due process violation was cured because Scioto was provided access to the redacted confidential business information on remand and provided an opportunity to be heard when it was offered the opportunity to submit comments on the draft remand redetermination pursuant to the EAPA statute and regulations. *See Skyview Cabinet*, 745 F. Supp. 3d at 1333 ("When an agency cures the procedural due process error by providing the affected party with notice and an opportunity to respond, the court is then left to consider the underlying substantive validity of the agency's action.") (citing *Ward v. United States Postal Serv.*, 634 F.3d 1274, 1282 (Fed. Cir. 2011))). Scioto availed itself of the opportunity to be heard. Appx04055-04086. Although Scioto

continues to claim that its ability to participate in the investigation was "hindered," Scioto fails to identify, with any specificity, how the due process error was not fully cured on remand.  It was.

Moreover, Scioto's placement of a "due process error violation" label does not convert its evidentiary failures into a constitutional problem.  From the outset of the investigation, Scioto was on notice that it needed to provide evidence that its WCV was manufactured in Malaysia; during the investigation, Scioto and Alno had numerous opportunities to produce such evidence. Ultimately, it failed to demonstrate that the WCV was manufactured in Malaysia.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain CBP's remand redetermination and enter judgment for the United States.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

<u>/s/ Tara K. Hogan</u>
TARA K. HOGAN
Assistant Director

OF COUNSEL:                         <u>/s/ Mikki Cottet</u>
John Flanagan                       MIKKI COTTET
Attorney                            Senior Trial Counsel
U.S. Customs and Border Protection  U.S. Department of Justice
Office of the Chief Counsel         Civil Division
                                    Commercial Litigation Branch
                                    P.O. Box 480
                                    Ben Franklin Station
                                    Washington, DC 20044
                                    Telephone: 202-307-0962
                                    Email: Mikki.Cottet@usdoj.gov

May 9, 2025                          Attorneys for Defendant

<u>**CERTIFICATE OF SERVICE**</u>

I, Mikki Cottet, hereby certify that on this day, May 9, 2025, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to all counsel of record.

<u>/s/ Mikki Cottet</u>

## <u>CERTIFICATE OF COMPLIANCE</u>

I, MIKKI COTTET, a Senior Trial Counsel in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, am responsible for filing the foregoing brief, relying upon the Microsoft Word Word-Count feature of the word processing system used to prepare these comments, including text, footnotes, and headings, certify that this brief complies with the word count limitation of the U.S. Court of International Trade Standard Chambers Procedures and contains 6,616 words.

<u>/s/ Mikki Cottet</u>