Slip Op. 25-120

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| AMERICAN KITCHEN CABINET ALLIANCE, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> SCIOTO VALLEY WOODWORKING, INC. d/b/a VALLEYWOOD CABINETRY, <br><br> Defendant-Intervenor. | Before: Lisa W. Wang, Judge <br><br> Court No. 23-00140 <br><br> **PUBLIC VERSION** |

## OPINION AND ORDER

[Sustaining the remand redetermination of the U.S. Customs and Border Protection under the Enforce and Protect Act.]

Dated:  September 12, 2025

Luke A. Meisner, Schagrin Associates, of Washington, DC, argued for Plaintiff American Kitchen Cabinet Alliance. With him on the brief was Roger B. Schagrin.

Mikki Cottet, Senior Trial Counsel, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant United States. With her on the brief were Yaakov M. Roth, Acting Assistant Attorney General, Patricia M. McCarthy, Director, and Tara K. Hogan, Assistant Director. Of counsel on the brief was John Flanagan, Office of the Chief Counsel, U.S. Customs and Border Protection, of Washington, DC.

Stephen W. Brophy, Husch Blackwell, LLP, of Washington, DC, argued for Defendant-Intervenor Scioto Valley Woodworking, Inc. With him on the brief was Nithya Nagarajan.

Wang, Judge: This action arises out of the court's opinion and remand order in

American Kitchen Cabinet Alliance v. United States ("AKCA I"), 745 F. Supp. 3d 1270

**PUBLIC VERSION**

(CIT 2024). Before the court is the remand redetermination of the U.S. Customs and Border Protection ("CBP" or "Customs"), which found that Defendant-Intervenor, Scioto Valley Woodworking, Inc. ("Scioto"), entered covered merchandise into the Customs territory of the United States through evasion, as defined by 19 U.S.C. § 1517, as it pertains to the antidumping duty ("AD") and countervailing duty ("CVD") orders on wooden cabinets and vanities ("WCV") from the People's Republic of China ("China"). Final Results of Redetermination Enforce and Protect Act ("EAPA") ("Remand Redetermination"), ECF No. 73; see also Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Antidumping Duty Order, 85 Fed. Reg. 22,126 (Dep't of Commerce Apr. 21, 2020); Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Countervailing Duty Order, 85 Fed. Reg. 22,134 (Dep't of Commerce Apr. 21, 2020) (collectively, "AD/CVD Orders"). The remand redetermination reverses the decision of Customs' Office of Regulations & Rulings ("R&R"), which originally found that there was no evasion in the underlying administrative proceeding. For the following reasons, the court sustains Customs' remand redetermination.

## BACKGROUND

The court presumes familiarity with the facts of this case as set out in its previous opinion ordering remand to Customs and recounts those facts relevant to the court's review of the remand redetermination. See AKCA I, 745 F. Supp. 3d at 1274–78. Plaintiff, American Kitchen Cabinet Alliance ("AKCA"), is a coalition of domestic producers of WCV. R&R Administrative Review Determination of Evasion Decision –

**PUBLIC VERSION**

EAPA Case Number 7705 (June 12, 2023) ("R&R Determination"), Appx168260. Scioto

is a U.S. importer of WCV and wholly owned by the Chinese company Qingdao Haiyan

Group Co. Ltd. ("Haiyan Group"). Id., Appx168277. Alno Industry SDN BHD ("Alno") is a

Malaysian company, also wholly owned by the Haiyan Group, and a supplier of WCV to

Scioto. Id.

On February 3, 2022, AKCA filed an allegation under EAPA against Scioto,

alleging that Scioto engaged in a transshipment scheme with Alno to evade AD/CVD

duties on WCV from China. See AKCA EAPA Allegation (Feb. 3, 2022), Appx080001.

The allegation relied in part on information from Cabinets to Go ("CTG"), an unaffiliated

U.S. importer and customer of Alno. Id., Appx080006–Appx080008.

## I.    Trade Remedy Law Enforcement Directorate's Initial Affirmative Evasion Determination and R&R's Subsequent Reversal

On March 30, 2022, Customs' Trade Remedy Law Enforcement Division

("TRLED") initiated a formal investigation under EAPA, 19 U.S.C. § 1517, to determine

whether Scioto evaded AD/CVD duties by misrepresenting the origin of WCV imported

from Alno. R&R Determination, Appx168261–Appx168262. During this period, Scioto

entered WCV into the United States from Alno, with a declared country of origin of

Malaysia and without payment of AD/CVD duties. Id., Appx168262. The entries subject

to Customs' EAPA investigation were those "entered for consumption, or withdrawn

from a warehouse for consumption, from March 9, 2021," through the pendency of the

investigation, known as the period of investigation ("POI"). Id. TRLED focused its

analysis on Scioto's Chinese affiliations, Scioto's relationship with Alno, and Alno's non-

affiliated transactions to evaluate "whether Alno manufactured all the cabinets and vanities it exported to Scioto, or whether Alno exported transshipped, Chinese-origin cabinets and vanities to Scioto during the POI." TRLED Notice of Determination as to Evasion – EAPA Case No. 7705 ("TRLED Not. of Det."), Appx168201.

On January 31, 2023, TRLED issued a final determination of evasion, finding that "[s]ubstantial evidence demonstrates Scioto imported Chinese-origin cabinets and vanities that were transshipped to the United States with a claimed country of origin of Malaysia." Id., Appx168098; see also Customs' On-Site Vertification Rep. – EAPA Case No. 7705 ("TRLED Verification Rep."), Appx168105–Appx168122. On March 15, 2023, Scioto filed a request for R&R to conduct a de novo administrative review of TRLED's affirmative evasion determination. Final Admin. Determination, Appx168263.

On June 12, 2023, R&R reversed TRLED's determination, finding no evasion in the case. Id., Appx168272. Specifically, R&R concluded that "the record contains no evidence that WCV produced in China were transshipped through Malaysia and imported into the United States by Scioto." Id., Appx168269. AKCA appealed this determination to the court pursuant to 19 U.S.C. § 1517(g)(1). See generally AKCA I, 745 F. Supp. 3d 1270.

## II.     Appeal and Remand Order

On appeal, Plaintiff challenged: (1) R&R's conclusion that the "record contains no evidence that WCV produced in China were transshipped through Malaysia"; and (2) R&R's reversal of TRLED's application of adverse inferences. See Pl.'s Mem. Supp. Mot. J. Agency R. at 16, 29, ECF No. 29. The government and Scioto asked that the

**PUBLIC VERSION**

court sustain the R&R Determination. <u>See</u> Def.'s Resp. Pl.'s Mot. J. Agency R., ECF

No. 34; Def.-Int.'s Resp. Pl.'s Mot. J. Agency R. ("Def.-Int.'s Resp. Br."), ECF No. 45.

Upon review of the parties' claims, the court sustained in part and remanded in part the

R&R Determination on October 31, 2024. <u>AKCA I</u>, 745 F. Supp. 3d at 1287.

First, the court found that Customs failed to consider material evidence on the

record that detracted from its finding that no evasion had taken place by Scioto. <u>Id</u>. at

1279. Such record evidence included R&R's failure to examine the extent of the Haiyan

Group's operational control of Scioto and Alno, and its failure to consider Scioto's

ownership of Alno during a time when Alno was engaged in evasion of the AD/CVD

Orders. <u>Id</u>.

Second, the court found that Customs failed to consider the contents of an

additional warehouse containing Chinese-origin WCV, Malaysian-origin WCV, and

unmarked country of origin WCV. <u>Id</u>. at 1282–83.

Third, the court found that Customs' treatment of certain documentation

submitted by Alno and Scioto was reasonable, as "Customs, not the court, is in the best

position to determine the reliability of the documentation and information submitted to it,

and to make the appropriate determination." <u>Id</u>. at 1284.

Finally, the court found that Customs acted within its discretion in finding that the

application of adverse inferences to Scioto was unwarranted because "R&R adequately

explained its decision not to apply adverse inferences and based its analysis on

rational, reasoned connections to the facts." <u>AKCA I</u>, 745 F. Supp. 3d at 1284–85.

### III.    Remand Redetermination

On January 6, 2025, R&R issued a draft remand redetermination reversing its negative evasion finding. <u>See</u> Draft Remand Redetermination – EAPA Case No. 7705, Remand Case No. 8141, January 6, 2025, Appx168286–Appx168294. On January 17, 2025, Defendant-Intervenor submitted its written comments in response to the draft remand redetermination. <u>See</u> EAPA 8141 Remand (7705) Scioto Valley Woodworking, Inc. d/b/a Valleywood Cabinetry: Draft Remand Comments, Appx168296–Appx168331. Defendant-Intervenor argued that: (1) the draft remand redetermination was based on "speculation and innuendo" rather than substantial evidence; (2) Alno and Scioto's product tracing system and document production demonstrated that the WCV shipped to Scioto was produced in Malaysia; (3) the contents of Alno's additional warehouse did not support a finding that Alno shipped Chinese-origin WCV to Scioto; and (4) the relationship between the Haiyan Group, Alno, and Scioto does not support an affirmative determination. <u>Id</u>., Appx168305–Appx168330. Plaintiff submitted comments in support of R&R's draft remand redetermination. <u>See</u> Remand Redetermination at 2.

On January 30, 2025, Customs issued its final remand redetermination affirming a finding of evasion. <u>See generally id</u>. First, regarding the additional warehouse, Customs found that the contents of the warehouse supported a finding of evasion. <u>Id</u>. at 3–5. Upon further review of the evidence, R&R concluded that Alno's purchase of finished merchandise manufactured by [[                    ]] weighs in favor of evasion because:

Court No. 23-00140                                                              Page 7
**PUBLIC VERSION**

> (1) [I]t demonstrates that Alno received finished merchandise from China;
> (2) Alno maintained a finished goods warehouse that contained boxes of
> WCV, some of which were unmarked with respect to country of origin or
> customer; and (3) neither Alno nor Scioto has sufficient systems in place
> that would allow either company to confirm which customers received WCV
> manufactured in Malaysia versus China.

Id. at 3. Additionally, R&R found "photographic evidence that the WCV stored in the

finished goods warehouse was commingled" and that "Alno does not have a tracking

system in place to prevent commingling of WCV from Malaysia and China." Id. at 8.

R&R found that "Alno cannot verify that all of the WCV it sent to Scioto was

manufactured in Malaysia" because it maintained the additional finished goods

warehouse containing boxes of merchandise, "some of which were unmarked with

respect to country of origin or customer," and did not have a production tracking system

capable of tracing the country of origin of a container to a particular customer. Id. at 7.

Furthermore, "Alno marked only the packaging of the WCV with the country of origin,

not the WCV itself" and "did not provide CBP with records that would sufficiently

connect the WCV produced at the Malaysia factory to Alno's shipments to Scioto,"

including missing packing checklists and shipment documentation. Id. at 8.

Second, R&R considered the Haiyan Group's control of Alno and Scioto.

Specifically, R&R considered that the "Haiyan Group[ ] exerts complete control over the

production of WCV that Scioto receives" and that it was involved "with the manufacture

of WCV that was used to fulfill Scioto's purchases." Id. at 9. Further, during the period

where Scioto owned Alno, the "Haiyan Group had decision-making authority as to

Court No. 23-00140                                                                          Page 8
**PUBLIC VERSION**

where WCV would be manufactured and how Alno fulfilled purchase orders, including

orders from CTG." Id. at 10. R&R found that the:

> Haiyan Group had the ultimate discretion to determine whether Scioto
> would receive Chinese-origin or Malaysia-origin WCV. When this level of
> discretion is tied together with Scioto's and Alno's insufficient tracking of
> raw materials, inventory, and finished merchandise, it leaves Scioto with no
> way of knowing the country of origin of the WCV it received or for Alno to
> know which customer received Malaysian-origin versus Chinese-origin
> merchandise.

Id.

> Overall, R&R concluded that:

> Reviewing the record as a whole, and in particular, based on the evidence
> described above, R&R finds that the record supports a conclusion that
> Scioto entered covered merchandise into the customs territory of the United
> States through evasion, as defined by 19 U.S.C. § 1517.

Id. at 11.

Defendant-Intervenor filed its comments in opposition to the remand

redetermination before the court. Def.-Int.'s Comments in Opp. to Remand

Redetermination ("Def.-Int.'s Comments"), ECF No. 81. Defendant-Intervenor

challenges nine aspects of the remand redetermination: (1) Customs' finding of evasion

is based on "innuendo" rather than record evidence; (2) Scioto demonstrated that its

WCV imports were made in Malaysia; (3) the fact that Alno purchased Chinese WCV

does not support a finding that it shipped Chinese WCV to Scioto in the United States;

(4) the missing packing checklists are immaterial to whether Scioto evaded the AD/CVD

Orders; (5) the information submitted by Scioto was complete; (6) the additional

warehouse discovered by Customs at verification does not support a finding of evasion;

(7) neither the Haiyan Group's control over the operations of Alno and Scioto nor its

participation in a prior evasion scheme support a finding of evasion; (8) Scioto's due

process rights were violated; and (9) Customs cannot impose AD/CVD duties covering

Chinese WCV on Malaysian goods. Id.

Plaintiff and Defendant filed comments in support of the remand redetermination

before the court. Pl.'s Comments in Supp. of Remand Redetermination ("Pl.'s

Comments"), ECF No. 85; Def.'s Resp. to Comments on Remand Redetermination

("Def.'s Comments"), ECF No. 88. Both parties argue that: (1) the remand

redetermination is based on substantial evidence rather than "innuendo"; (2) Customs'

finding that Scioto lacked sufficient controls to prove its WCV are of Malaysian-origin is

supported by substantial evidence; (3) the contents of the additional warehouse support

the finding that Alno shipped Chinese-origin WCV to Scioto; (4) the Haiyan Group's

operational control of Alno and Scioto supports an affirmative determination; and

(5) Customs did not violate Scioto's due process rights. See Pl.'s Comments; Def.'s

Comments. Plaintiff further argues that the missing packing checklists support an

affirmative evasion determination, and that Scioto had the opportunity to demonstrate

that its WCV was not covered by the AD/CVD Orders but failed to do so. See Pl.'s

Comments. The court held oral argument on July 22, 2025. Oral Arg.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C.

§ 1517(g)(1). Under 19 U.S.C. § 1517(g)(2), the court must determine "whether the

Commissioner fully complied with all procedures under subsections (c) and (f)" and

"whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Customs bases its determination on substantial evidence, while the court reviews its actions under the arbitrary and capricious standard; "both standards require an assessment based on a reasonableness standard." CEK Grp. v. United States, 633 F. Supp. 3d 1369, 1373 (CIT 2023) (quoting Ad Hoc Shrimp Trade Enf't Comm., 632 F. Supp. 3d 1369, 1374 (CIT 2023)).

The scope of the arbitrary and capricious standard "is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The standard requires the court to assess whether the agency "examine[d] the relevant data on the record, and articulate[d] a satisfactory explanation for its action, including addressing material evidence on the record which detracts from its conclusion." Id. In determining whether Customs' determination is based on substantial evidence, "the court analyzes whether the challenged agency action was reasonable given the circumstances presented by the whole record." Shanxi Hairui Trade Co. v. United States, 503 F. Supp. 3d 1307, 1311 (CIT 2021), aff'd, 39 F.4th 1357 (Fed. Cir. 2022). The Federal Circuit explained that because "substantial evidence is the second most deferential" standard of review, it "can be translated roughly to mean 'is the determination unreasonable?'" Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006).

Thus, the court will sustain a remand redetermination if it is: (1) "in accordance with the remand order"; (2) "supported by substantial evidence"; and (3) "otherwise in

accordance with law." <u>Cooper (Kunshan) Tire Co. v. United States</u>, 610 F. Supp. 3d

1287, 1295 (CIT 2022) (quoting <u>MacLean-Fogg Co. v. United States</u>, 100 F. Supp. 3d

1349, 1355 (CIT 2015); <u>see also</u> <u>Dorbest Ltd. v. United States</u>, 755 F. Supp. 2d 1291,

1300 (CIT 2011) ("[I]n remand proceedings, an administrative agency must modify its

original determination in accordance with the remand order.").

## DISCUSSION

As an initial matter, the court finds, and the parties do not dispute, that Customs

complied with the remand order to: (1) "examine and explain photographic and other

evidence on the record showing that the additional warehouse contained several boxes

'with no marking' of any sort, and importantly, without a country of origin marking"; and

(2) consider the Haiyan Group's decision making authority with respect to products

shipped by Alno from not only its Malaysian WCV facilities, but from the Haiyan Group's

Chinese WCV facilities that may have been transshipped through Malaysia. <u>See</u> <u>AKCA</u>

<u>I</u>, 745 F. Supp. 3d at 1283; Def.-Int.'s Comments at 4–5; Pl.'s Comments at 1; Def.'s

Comments at 11–12.

In its remand redetermination, Customs considered that: (1) Alno purchased

Chinese-origin WCV; (2) the additional warehouse contained boxes of finished WCV

that were comingled, indistinguishable, and missing country of origin or customer

information; and (3) neither Alno nor Scioto had sufficient production controls to link

Malaysian WCV to Alno's shipments to Scioto, or to track the country of origin of the

WCV shipped to customers from the additional warehouse. Remand Redetermination at

7–9.

Customs additionally noted the following considerations: (1) the Haiyan Group had "final say" over Alno's decisions regarding Malaysian production and shipping to Scioto; (2) Scioto and Alno "sent emails containing Scioto's [[

                          ]] to [[                    ]]"; and (3) the Haiyan Group funded and directed Alno's operations during the period in which Scioto owned Alno. Id. at 9–10; see also Scioto RFI Response, Appx088904, Appx088965. As such, the remand redetermination is in accordance with the court's order.

Therefore, at issue before the court is Scioto's argument that Customs' remand redetermination should not be sustained because it is not supported by substantial evidence and is not in accordance with law. Def.-Int.'s Comments at 7. First, Scioto argues that the remand redetermination "is arbitrary and capricious [and] an abuse of discretion" because "[u]nder the statute, CBP must determine that Scioto actually did import covered merchandise through evasion and that determination must provide a rational connection between the facts found and the choices made." Id. at 4, 7.

Scioto further argues that the remand redetermination "was clearly not based on the substantial evidence standard as CBP cites to no actual evidence on the record supporting its conclusion that Scioto engaged in evasion" and instead "based its decision purely on innuendo and ignored or misinterpreted record evidence to support such innuendo." Id. at 1. To support this, Scioto claims that Customs' determination relied on evidence that is "immaterial," "unsupport[ive]," "given [improper] weight," or "contradicted." Id. at 7, 10, 11, 13, 17, 19, 20, 23, 25, 27, 28.

**Confidential Information Omitted**

Finally, Scioto argues that the remand redetermination is not in accordance with law because "CBP's failure to articulate clear evidentiary gaps or request further information during the investigative process … violates [Scioto's and Alno's] due process rights." Id. at 28. The government and AKCA ask that the court sustain Customs' remand redetermination. See generally Pl.'s Comments; Def.'s Comments.

The court will determine each issue in turn.

## I.        Customs' Remand Redetermination Is in Accordance with Law

Scioto first argues that "CBP's Remand Determination is [l]egally [d]eficient" because "[u]nder the statute, CBP must determine that Scioto actually did import covered merchandise through evasion and that determination must provide a rational connection between the facts found and the choices made." Def.-Int.'s Comments at 7. Similarly, Scioto argues that "[i]nstead of citing to evidence that Scioto did enter covered merchandise through evasion, the Remand Results rely on speculation on what might have happened" and that "CBP cannot impose antidumping or countervailing duties on [Malaysian production batches to specific entries by Scioto] … [without] afford[ing] some procedure by which [Scioto] can demonstrate that all of its entries can be linked to specific production batches." Id. at 7–8, 29.

Under EAPA, Customs is responsible for determining whether "covered merchandise" has entered the United States through "evasion." See 19 U.S.C. § 1517(c)(1). "Covered merchandise" is merchandise that is subject to an AD or CVD order. Id. § 1517(a)(3). The statute defines "evasion" as:

> [E]ntering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or

information, written or oral statement, or act that is material and false, or
any omission that is material, and that results in any cash deposit or other
security or any amount of applicable antidumping or countervailing duties
being reduced or not being applied with respect to the merchandise.

Id. § 1517(a)(5)(A).

The statute's repeated use of the term "any" is "generally used in the sense of
'all' or 'every' and its meaning is most comprehensive." Barseback Kraft AB v. United
States, 121 F.3d 1475, 1481 (Fed. Cir. 1997); see Micron Tech., Inc. v. United States,
243 F.3d 1301, 1308 (Fed. Cir. 2001); United States v. Rosenwasser, 323 U.S. 360,
363 (1945); Cook v. Wilkie, 908 F.3d 813, 818 (Fed. Cir. 2018). Thus, a finding by
Customs of any information, data, or act that is material and false, or a finding by
Customs of any material omission, must result in a finding of evasion under the statute.
See 19 U.S.C. § 1517(a)(5)(A).

Here, Customs acknowledged that although the "evidence in the record is mixed
… [r]eviewing the record as a whole, and in particular, based on the evidence described
[in the remand redetermination]," Customs concluded that Scioto entered covered
merchandise into the United States through evasion. Remand Redetermination at 11.
The court will not second-guess Customs' findings of information, actions, and
omissions by Scioto that satisfy the definition of evasion. See PSC VSMPO-Avisma
Corp. v. United States, 688 F.3d 751, 760 (Fed. Cir. 2012) ("[C]ourts will defer to the
judgment of an agency regarding the development of the agency record."). Scioto's
argument that an evasion finding would only be lawful if Customs found "Scioto actually
did import covered merchandise through evasion" is circular and contradicted by the

express language of the statute. Def.-Int.'s Comments at 7 (emphasis added).

Scioto further confuses the burden of proof required in EAPA investigations. Procedurally, it is the party submitting information to Customs that bears the burden of providing accurate information. 19 C.F.R. § 165.5(b)(2)(i); see CEK Grp., 633 F. Supp. 3d at 1379. As the Federal Circuit has made clear, "[t]he burden of production should belong to the party in possession of the necessary information." Zenith Elecs. Corp. v. United States, 988 F.2d 1573, 1583 (Fed. Cir. 1993). That is because, "[r]espondents … control the information that [an agency] needs to complete its review." Hung Vuong Corp. v. United States, 483 F. Supp. 3d 1321 (CIT 2020). It is not for the importer to decide what evidence is material to an evasion determination or how Customs should weigh it. CEK Grp., 633 F. Supp. 3d at 1379; see Leco Supply, Inc. v. United States, 619 F. Supp. 3d 1287, 1296–99 (CIT 2023).

Scioto argues that Customs "could have asked for production documents for other entries, and Alno would have provided them … [b]ut CBP did not ask for any additional production documents, even though it now claims that some production documents are not on the record." Def.-Int.'s Comments at 11–12. Scioto's arguments, however, are contradicted by the record. Customs explained that "Scioto cannot substantiate its claim that CBP failed to request information from Alno during the investigation. … [D]espite TRLED's repeated requests for information, such as Packing Check-Lists and documentation for shipments of WCV, Alno failed to produce such documents." Remand Redetermination at 9. Scioto's failure to provide the requested documentation stands in contrast to its statement to Customs that "Alno normally

Court No. 23-00140                                                                 Page 16
**PUBLIC VERSION**

maintains the hard copies of the [relevant] documents for 18 months," including for

(1) purchase orders; (2) purchase invoices; (3) purchase packing lists; and (4)

certificates of origin, among other documents. Def.-Int. RFI Final Response,

Appx84187–Appx84188.

      Defendant-Intervenor argues that "CBP's reliance on alleged gaps in the record –

without making any finding that Scioto or Alno failed to cooperate – is an impermissible

use of adverse inferences under 19 U.S.C. § 1517(c)(3)(A)." Def.-Int.'s Comment at 8–

9. Customs, however, explained that it "need not, and did not apply adverse inferences

to reach [its] finding." Remand Redetermination at 5–6, n. 39. Rather, Customs

explained that its finding was based "upon consideration of the record as a whole." Id.

Customs need not make a finding of non-cooperation to consider gaps in the record and

conclude that incomplete or unverifiable evidence weakens a party's position. See 19

C.F.R. § 165.45; Skyview Cabinet USA, Inc. v. United States, Slip Op. 23-91, 2023 WL

4073781, at *7 (CIT June 20, 2023); Leco Supply, Inc., 619 F. Supp. 3d at 1297.

      Here, Customs pointed to specific irregularities including missing information,

lack of traceability, and commingled and unmarked merchandise. Remand

Redetermination at 8; TRLED Verification Rep., Appx168114–Appx168115,

Appx168119–Appx168120. Customs also cited to record evidence that Alno lacked

sufficient tracking controls for its production, including instances where Alno failed to

provide Customs with: (1) missing packing checklists despite Customs twice requesting

them; (2) invoices and their corresponding packing checklists and packing lists; and

(3) emails for which Customs "cannot be sure the attachments provided in the

Court No. 23-00140                                                                    Page 17
**PUBLIC VERSION**

forwarded email were the ones in the original email since we did not have access to the

original email." TRLED Verification Rep., Appx168114–Appx168115, Appx168119–

Appx168120. Such reliance on record evidence is not an application of adverse

inferences under 19 U.S.C. § 1517(c)(3)(A).

      Finally, the record demonstrates that Customs provided Defendant-Intervenor

several opportunities to submit documentation or other evidence that its entries could be

linked to specific production batches, including:

      (1) Customs' request for information ("RFI"), Appx084062–Appx084154;

      (2) Customs' second supplemental request for information ("Second RFI"),

Appx137450–Appx137463, Appx138411–Appx138425;

      (3) the written argument submission period, TRLED Not. of Det., Appx168200;

and

      (4) Customs' on-site verification, Id., Appx168211.

      Defendant-Intervenor has provided no basis in the statute or regulations which

would require Customs to provide additional opportunities for the submission of

evidence or rebuttal information beyond those already given. Rather, Customs'

regulations state that any party to the investigation "may submit additional information in

order to support the allegation of evasion or to negate or clarify the allegation of

evasion." 19 C.F.R. § 165.23(b) (emphasis added). That Defendant-Intervenor failed to

avail itself of these opportunities cannot be faulted on Customs. See Ta Chen Stainless

Steel Pipe v. United States, 298 F.3d 1330, 1336 (Fed. Cir. 2002).

**PUBLIC VERSION**

**II.    Customs' Remand Redetermination Is Not Arbitrary and Capricious and Was Supported by Substantial Evidence**

Scioto argues that Customs' remand redetermination is arbitrary and capricious because it was not supported by substantial evidence. Def.-Int.'s Comments at 7. Specifically, Scioto argues that Customs' remand redetermination was not supported by substantial evidence because: (1) the fact that Alno purchased Chinese WCV does not support a finding that it shipped Chinese WCV to Scioto in the United States; (2) the missing packing checklists are immaterial to whether Scioto evaded the AD/CVD Orders; (3) the information submitted by Scioto was complete; (4) the additional warehouse containing Chinese WCV does not support a finding of evasion; and (5) neither the Haiyan Group's control over the operations of Alno and Scioto, nor the group's admitted participation in a prior evasion scheme, supports a finding of evasion and is inconsistent with Customs' previous findings. See generally id. Scioto supports each of these arguments by asserting that Customs' relied-upon evidence is "innuendo," "immaterial," "irrelevant," "unsupport[ive]," "given [improper] weight," or "contradicted;" and that, conversely, Scioto's submitted evidence is "[c]omplete and [r]eliable." Id. at 1, 7, 10, 11, 13, 14, 16, 17, 19, 20, 23, 25, 27.

However, "[t]he problem is that the court does not weigh evidence and make findings in this context." Am. Pac. Plywood, Inc. v. United States, Slip Op. 25-87, 2025 WL 1898377, at *5 (CIT July 9, 2025). Customs bases its determination on substantial evidence and the court reviews the agency's actions under the arbitrary and capricious standard. CEK Grp., 633 F. Supp. 3d at 1373. The scope of the arbitrary and capricious standard is narrow; "courts are not to substitute their judgment for that of the agency."

Motor Vehicle Mfrs. Ass'n of U.S., 463 U.S. at 43. The court must sustain Customs'

decision if it provides an analysis which has a rational connection to the facts found. Id.

Scioto argues that "CBP should have relied on the reasonable finding that

Chinese ownership is insufficient to establish transshipment, combined with the

production and shipment documents provided by Alno, to conclude that the WCV

shipped by Alno to Scioto was produced in Malaysia." Def.-Int.'s Comments at 25

(emphasis added). The court does not pick and choose among the record evidence

preferred by one party. Rather, Customs' finding needs only be reasonable for the court

to uphold its determination. See Shanxi Hairui Trade Co., 503 F. Supp. 3d at 1311,

aff'd, 39 F.4th 1357 (Fed. Cir. 2022) ("[W]hen addressing a substantial evidence issue

raised by a party, the court analyzes whether the challenged agency action was

reasonable given the circumstances presented by the whole record."); see also Regents

of the Univ. of Cal. v. Broad Inst., Inc., 136 F.4th 1367, 1378 (Fed. Cir. 2025)

(explaining that the substantial evidence standard requires that an agency base its

determination on "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion").

Here, upon review of the "record as a whole," Customs explained that "it reverses

its original finding of no evasion … and finds that the record supports a conclusion that

Scioto entered covered merchandise into the customs territory of the United States

through evasion …." Remand Redetermination at 3, 11. Customs further explained that

the additional evidence upon which it based its reversal included: (1) Alno's previous

involvement in an evasion scheme; (2) the Haiyan Group's degree of operational control

over Scioto and Alno, including that it "exerts complete control over the production of WCV that Scioto receives"; (3) that Alno fulfilled purchase orders from a warehouse that contained commingled Chinese and Malaysian WCV, "some of which were unmarked with respect to country of origin or customer"; (4) that neither Alno nor Scioto could demonstrate sufficient tracking controls or "provide CBP with records that would sufficiently connect the WCV produced at the Malaysia factory to Alno's shipments to Scioto"; (5) that Alno "could not have known the country of origin of the WCV it removed from the finished goods warehouse and shipped to its customers, including Scioto"; and (6) that "TRLED continued to identify missing materials during the course of its review", such as packing checklists, invoices, and emails, despite being "requested on two separate occasions." Id. at 3–10. Customs provided a rational connection between these facts and its conclusion, and the cited evidence reasonably and adequately supports Customs' findings.

It is not the court's role to question the credibility of the evidence. Catfish Farmers of Am. v. United States, Slip Op. 16-29, 2016 WL 1268196, at *6 (CIT Mar. 30, 2016). Nor is it "for [the parties] to decide which information and questions are necessary to the investigation …." CEK Grp., 633 F. Supp. 3d at 1379. Customs retains discretion over what evidence to collect and how to weigh it. 19 U.S.C. §§ 1517(c)(1)–(2); see also H&E Home, Inc. v. United States, 714 F. Supp. 3d 1353, 1377–78 (CIT 2024). This discretion includes the ability to disregard unsupported claims as well as rely on the absence of verifiable evidence when making an evasion determination, so long as it provides a rational connection to its findings. See Leco Supply, 619 F. Supp.

3d at 1296–99 (finding Customs' assessment of the record, including disregarding the

foreign manufacturer's mischaracterizations and noting a lack of evidence, to be

reasonable under the substantial evidence standard of EAPA).

Ultimately, Customs articulated that it was the cumulation of material information

and omissions that led to its conclusion that the:

> Haiyan Group had the ultimate discretion to determine whether Scioto
> would receive Chinese-origin or Malaysia-origin WCV. When this level of
> discretion is tied together with Scioto's and Alno's insufficient tracking of
> raw materials, inventory, and finished merchandise, it leaves Scioto with no
> way of knowing the country of origin of the WCV it received or for Alno to
> know which customer received Malaysian-origin versus Chinese-origin
> merchandise.

Id. at 10.

As such, the court finds that Customs examined the entire record and articulated

a satisfactory explanation for its action. While Defendant-Intervenor disagrees with

Customs' relied-upon evidence, it is "Customs, not the court, [that] is in the best position

to determine the reliability of the documentation and information submitted to it." Catfish

Farmers of Am., 2016 WL 1268196, at *6. Just as the court held in its prior decision that

"AKCA would prefer Customs to find otherwise," so now too would Scioto prefer

Customs to find otherwise; "but 'the possibility of drawing two inconsistent conclusions

from the evidence does not prevent an administrative agency's finding from being

supported by substantial evidence.'" AKCA I, 745 F. Supp. 3d at 1284 (quoting Consolo

v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1996)).

Implicit in Scioto's arguments is an invitation for the court to "substitute its

judgment for that of the agency." Def.-Int.'s Comments at 17, 25; Motor Vehicle Mfrs.

Ass'n of U.S., 463 U.S. at 43. The court will not.

### III.      Scioto's Due Process Challenge Fails

The final issue is whether Customs violated Defendant-Intervenor's due process rights by not affording Scioto's and Alno's counsel access to business confidential information during the investigation. Def.-Int.'s Comments at 28. Scioto argues that "the lack of access to confidential information until this appeal began hindered Scioto, Alno, and their counsel from adequately responding to CBP's concerns during the investigation and hindered CBP in asking direct questions … thereby precluding them from rectifying any purported deficiencies during the investigatory stage." Id.

The Fifth Amendment provides that "[n]o person shall be … deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. In the EAPA context, importers "enjoy rights to procedural due process." Royal Brush Mfg. v. United States, 75 F.4th 1250, 1257 (Fed. Cir. 2023). When an agency bases a determination on confidential information not provided to the adverse party, "a procedural due process violation occurs." Skyview Cabinet USA, Inc. v. United States ("Skyview II"), 745 F. Supp. 3d 1326, 1333 (CIT 2024). However, "when an agency cures the procedural due process error by providing the affected party with notice and an opportunity to respond, the court is then left to consider the underlying substantive validity of the agency's action." Id. For a procedural due process violation to amount to a substantive due process violation, the affected party must show that it was prevented from either: "(1) introducing evidence into the record that that would have proven exculpatory; or (2) making an argument in its own defense before the agency." Id. Without a showing of

"new evidence or a new substantive argument, correction of the <u>Royal Brush</u> procedural error will not result in ultimate victory for the accused evader." <u>Id</u>.

It is undisputed that a due process procedural error occurred, as "TRLED's initial determination of evasion and R&R's final negative evasion determination relied on factual evidence not provided to Scioto." Def.'s Comments at 22. However, despite counsel receiving access to the business confidential administrative record and opportunity to provide comments, Scioto did not introduce new exculpatory evidence. TRLED Administrative Protective Order, Appx03944–Appx03950; Def.-Int.'s Resp. Brief at 30–33; Def.-Int.'s Comments at 14–25. Scioto argues that Customs uses "this procedural loophole to its advantage by relying on alleged gaps in the record that Scioto and Alno were prevented from curing at the outset." Def.-Int.'s Comments at 28–29. Yet, Scioto does not explain why the procedural violation was not cured and instead restates its previous arguments with nearly identical language. <u>Compare, e.g.</u>, Def.-Int.'s Resp. Brief at 31–32, <u>with</u> Def.-Int.'s Comments at 20. Repeated argumentation is not new exculpatory evidence.

Because Scioto does not show that it was prevented from: "(1) introducing evidence into the record that that would have proven exculpatory; or (2) making an argument in its own defense before the agency" after Customs provided it with an opportunity at remand, Scioto "has failed to shift the evidentiary balance in its favor." <u>Skyview II</u>, 745 F. Supp. 3d at 1335.

Court No. 23-00140                                                      Page 24
**PUBLIC VERSION**

## CONCLUSION

For the foregoing reasons, Customs' affirmative remand redetermination of evasion is supported by substantial evidence and complies with the court's instructions in <u>AKCA I</u>. It is hereby **ORDERED** that U.S. Customs and Border Protection's remand redetermination is sustained. Judgment will enter accordingly.


                                            /s/      Lisa W. Wang
                                            Lisa W. Wang, Judge


Dated:   September 12, 2025
            New York, New York